# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **In the Matter of:** ) | |
| ) | **CASE NO. 25-81168-CRJ-11** |
| **ACQUISITION INTEGRATION, LLC** ) | |
| ) | **CHAPTER 11** |
| **Debtor.** ) | |
| ) | |

### SECOND AMENDED EMERGENCY MOTION FOR FINAL ORDER (A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, AND (B) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL

COMES NOW, Acquisition Integration, LLC, debtor and debtor in possession (the "Debtor") and hereby files this second amended emergency motion (the "Motion") for entry of a final order approving the DIP Loan Documents (as defined herein), authorizing Debtor to obtain post-petition financing, and authorizing Debtor's use of cash collateral, and as grounds therefor, represents as follows:

### SUMMARY OF RELIEF REQUESTED

1. As explained herein Debtor is a party to a contract with the United States Army for the delivery of parts managed by the Multi-National Aviation Special Project Office (hereinafter "MASPO Contract"). While there is substantial value in the MASPO Contract, Debtor does not have the ability to pay its monthly operating expenses or to purchase the parts required under the contract. In fact, the Army had issued to Debtor a Notice to Cure an existing default under the MASPO Contract based on the delay in providing parts. The Proposed Order requested by this Motion is meant to allow Debtor to cure this default and otherwise perform under the terms of the MASPO Contract.

2. Pre-petition, Debtor acquired parts from Flight Test Aerospace ("FTA") which it then supplied to the Army under the MASPO Contract. FTA is a creditor of Debtor and is also an affiliate of the proposed Lender under this Motion.

3. By this Motion, and pursuant to §§ 363, 364(c) and 364(d) of the Bankruptcy Code and Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure, Debtor requests authorization to obtain post-petition financing on a permanent basis, to borrow under such post-petition credit facility, and to use cash collateral for the purposes described herein and grant adequate protection. Consistent with Bankruptcy Rule 4001(b)(2) and (c)(2), Debtor requests at the final hearing, authorization to borrow, on a revolving basis, the approximate sum of $544,882.27 per month, consisting of $44,882.27 in operating expenses and $500,000 for Parts, subject in all respects to the terms of the DIP Loan Agreement attached as **Exhibit A** and provided that, in each monthly period, Debtor will not borrow in excess of the amounts actually needed to purchase parts or to fund other budgeted expenses.

4. In particular, Debtor seeks approval of the DIP Loan Agreement. Pursuant to Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B), the material terms of the DIP Loan Agreement and Proposed Order are summarized as follows[1]:

| *Debtor/Borrower* | Acquisition Integration, LLC, an Alabama limited liability company |
|---|---|
| *Lender* | NOVO Tech, Inc., an Alabama corporation |
| *Type of Loan* | Revolving credit facility where subject to the terms of the DIP Loan Agreement, Lender may lend to Debtor such amounts as requested by Debtor on revolving basis (meaning Debtor may borrow, repay and reborrow) the approximate sum of $544,882.27 per month consisting of $44,882.27 in operating expenses and $500,000 for parts. |

---

[1] This summary is provided for convenience and all interested parties should refer to the terms of the DIP Loan Agreement. Unless otherwise defined, capitalized terms shall have the meanings provided in the DIP Loan Agreement, as applicable.

| | |
|---|---|
| *Maximum Principal Amount of Loan* | $3,000,000.00 |
| *Interest* | No percentage-based interest accrual unless there is an Event of Default under DIP Loan Agreement; compensation to Lender for use by Debtor of borrowed funds will be obtained through Lender's receipt of a portion of Debtor's revenues under the MASPO Contract, net of part costs. |
| *Use of Proceeds* | Loan proceeds to be used for working capital according to the budget attached as **Exhibit B,** as well as the purchase of parts to be supplied to the Army under the MASPO Contract and to the extent necessary to provide funding for a Carve-Out.[2] |
| *Maturity* | On the date(s) specified as a Termination Event as defined in the DIP Loan Agreement or as otherwise order by the Court. |
| *Events of Default* | Events of default set forth in Section 10 of DIP Loan Agreement, including:<br><br>• Debtor payment default<br><br>• Default under Financing Order<br><br>• Debtor representations or warranties prove to be untrue or inaccurate<br><br>• Debtor failure to perform covenants in DIP Loan Agreement or Documents<br><br>• Debtor seeks to amend, supplement, stay, vacate, or modify Financing Order without Lender's written consent<br><br>• Debtor contests Lender's Security Interest<br><br>• Debtor objects to Lender's claim<br><br>• Financing Order ceases to be in full force and effect without Lender's consent<br><br>• Debtor pays prepetition debts other than as allowed under Financing Order or permitted by Court or with approval of Lender |

---

[2] As used in this Motion, "Carve-Out" means funds allocated for the payment of (i) any unpaid fees of the Clerk of the Bankruptcy Court and the Office of the United States Bankruptcy Administrator pursuant to 28 U.S.C. § 1930(a) and (ii) up to $75,000 in unpaid fees and expenses payable under §§ 330 and 331 of the Bankruptcy Code to Debtor's counsel for post-petition services as approved by the Bankruptcy Court which the Debtor is unable to pay from available post-petition revenues.

3

Case 25-81168-CRJ11    Doc 78    Filed 08/01/25    Entered 08/01/25 15:11:57    Desc Main
Document      Page 3 of 13

|   |   |
|---|---|
|   | - Occurrence of any Material Adverse Deviation from the Budget<br><br>- Debtor fails to comply with terms of Financing Order and such failure continues unremedied for five (5) days<br><br>- Any DIP Loan Document ceases to be in full force and effect, or Debtor shall so assert in writing, or any DIP Loan Document shall cease to be effective to grant a perfected Security Interest and such condition shall continue to exist for five (5) days<br><br>- Occurrence of any Material Adverse Change<br><br>- Any levy, seizure, or attachment upon any Collateral by any third party<br><br>- Any of the following shall occur: (i) the Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (ii) a chapter 11 trustee, responsible officer or examiner with enlarged powers relating to the operation of Debtor's business shall be appointed; (iii) Debtor or any other party, except for Servis First Bank, shall file an application for the approval of any other super-priority claim or other claim or right to payment (other than the Carve-Out, to the extent provided for in the DIP Loan Agreement) which is *pari passu* or senior to Lender's Security Interests; (iv) there shall arise or be granted any such *pari passu* or senior super-priority claim or other claim or right to payment in revenue from the MASPO contract(other than the Carve-Out, to the extent provided for in the DIP Loan Agreement); (v) Debtor shall terminate or suspend the operation of any portion of its business as presently conducted; (vi) Debtor shall apply for or consent to the appointment of a receiver, trustee, or liquidator of itself, or of all or a substantial part of its assets; or (vii) Debtor shall be unable, or admits in writing its inability, to pay its post-petition debts as they fall due |
| *Priority Claim* | Subject only to the Carve-Out, Lender is granted a super-priority administrative expense claim under section 364(c)(1) of the Bankruptcy Code against Debtor, having priority over all administrative expense claims against Debtor or its estate at any time existing or arising, of any kind or nature ("DIP Super-Priority Claim"). |
| *Liens* | As more particularly described and defined in Section 4 of the DIP Loan Agreement, Lender shall be secured by a first priority Security Interest |

4

|  | in (i) any and all unencumbered Assets[3] of Debtor created, acquired, or arising prior to the Petition Date; (ii) the MASPO Contract and all accounts, account receivables and rights to payment from the MASPO Contract as well as all Cash Collateral (as that term is defined in the Bankruptcy Code) and proceeds relating thereto and any and all Assets of Borrower purchased, acquired, created or arising after the Petition Date from advances under the DIP Loan or from payments or proceeds received under the MASPO Contract. (collectively, the "<u>First Priority Collateral</u>"); and (iii) a junior Security Interest in (a) any and all other assets of Debtor (excluding First Priority Collateral) which were subject, as of the Petition Date, to the lien of ServisFirst Bank or an otherwise unavoidable lien, and (b) all Cash Collateral (as that term is defined in the Bankruptcy Code) and proceeds relating thereto (collectively, the "<u>Second Priority Collateral</u>").<br><br>For the avoidance of doubt, all "Accounts" generated by the Debtor's business operations on or after the Petition Date that relate to or arise from the DIP Loan or the MASPO Contract shall be First Priority Collateral. |
|---|---|
| ***Certain Waivers*** | No administrative claims, including, without limitation, fees, and expenses of professionals, shall be assessed against or attributed to Lender or its interests in the First Priority Collateral, pursuant to section 506(c) or 552 of the Bankruptcy Code or otherwise by, through, or on behalf of Debtor, without the express prior written consent of Lender. In no event shall Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral. |
| ***Modification of Automatic Stay*** | The automatic stay provisions of section 362 of the Bankruptcy Code shall be modified to the extent necessary to permit Lender to exercise, upon the occurrence and during the continuation of any Event of Default under the DIP Loan Agreement, or the occurrence of the Termination Date, all rights and remedies provided for in the DIP Loan Agreement and under applicable law. Lender shall provide five (5) business days written notice which can be delivered by email to the counsel to Debtor and the Bankruptcy Administrator, and any other party requesting notice by email, prior to exercising any enforcement rights or remedies in respect of the Collateral. Debtor and any other parties in interest may seek within such five (5) business day notice period an expedited hearing before the Court solely for the purpose of considering whether, in fact, an Event of Default or the Termination Date has not occurred and is |

---

[3] "Assets" is defined in paragraph 4(a) of the Loan Agreement.

| | |
|---|---|
| | continuing. At the expiration of such five (5) business day period or the determination by this Court that an Event of Default or the Termination Date has occurred or is continuing, Lender shall be entitled to pursue all of its rights and remedies. |
| ***Adequate Protection of Pre-Petition Lenders*** | Any Secured Creditor (*See* Exhibit C) whose liens are not subject to dispute shall be granted the following forms of adequate protection to the extent of any diminution in value of its interests in Cash Collateral resulting from Debtor's use of Cash Collateral in accordance with the terms of this Motion:<br><br>• Replacement lien in and on Debtor's assets to the same extent and priority as Secured Creditor's liens existing as of the Petition Date; provided, for sake of clarity, as set forth herein, (a) the DIP Security Interests granted to Lender shall be senior and prior to the Secured Creditors Replacement Liens with respect to all First Priority Collateral. .<br><br>• Secured Creditors are granted an administrative claim equal to the amount of any diminution in value of such Secured Creditors' collateral as a result of Lender's priming First Priority Collateral or Debtor's use of Secured Creditors' Cash Collateral, , (the "Secured Creditor Administrative Claim") that shall have priority (except with respect to the Carve-Out and DIP Super-Priority Claim) under sections 503(b) and 507(b) of the Bankruptcy Code over all unsecured claims against Debtor and its estates, now existing or hereafter arising; provided, the DIP Super-Priority Claim shall be senior and prior to the Secured Creditor Administrative Claim for all purposes. |

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6. On June 10, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Court").

6

7. Since the Petition Date, Debtor has continued to operate and manage its business as debtor-in-possession under §§ 1107(a) and 1108 of the Bankruptcy Code. To date, this Court has not appointed a trustee or examiner, nor has any official committee been established in this bankruptcy case.

8. Debtor is a government contactor which operates throughout the United States. As of the petition date, Debtor had four employees and its principal place of business located in Madison County, Alabama. For more detail on the factual background of Debtor, its operations, and the events leading up to the Petition Date, the parties are referred to the Declaration of Maura Staten, Manager of Debtor (the "<u>Declaration</u>") which is hereby incorporated by reference.

9. As explained in the Declaration, Debtor is a party to a contract with the United States Army, Contract No. W58RGZ-21-D-0089 ("MASPO Contract"), for the delivery of parts and equipment ("Parts") to support weapon systems. Those systems are managed by the Army's Multi-National Aviation Special Project Office (MASPO) for the Program Executive Office – Aviation (PEO AVN) in support of Foreign Military Sales (FMS) and other Security Cooperation Programs. Under the MASPO Contract, Debtor must procure these Parts according to the statement of work in MASPO's May 20, 2021 third-party logistics bulletin.

10. The MASPO Contract has substantial value that can help to pay Debtor's creditors. To reap that value, however, Debtor must perform under the MASPO Contract, which it cannot do currently without additional funding. Debtor, in its business judgment, has therefore determined that it is necessary and reasonable to enter into the DIP Loan Agreement to pay its operating overhead, including payroll, and to acquire the Parts to be supplied to the Government under the MASPO Contract, until such time when a plan is confirmed or Termination Event occurs.

7
Case 25-81168-CRJ11   Doc 78   Filed 08/01/25   Entered 08/01/25 15:11:57   Desc Main
Document      Page 7 of 13

11. Debtor has been unable to obtain financing from any alternative lender for several reasons. Namely, there are multiple judgments that have been entered against Debtor, prepetition. These judgments and other significant financial issues limit Debtor's ability to obtain an unsecured loan from a lender on the basis of Section 503(b) alone. Debtor has accordingly concluded that Lender has presented the best proposal for meeting Debtor's financial needs through its chapter 11 case and seeks approval of the DIP Loan Agreement and related relief.

12. Based upon a review of the existing liens, ServisFirst Bank is believed to have a lien with the highest priority on the MASPO Contract and the Debtor's remaining assets. See, Exhibit C.[4]

**RELIEF REQUESTED**

13. Debtor requests authorization pursuant to §§ 363, 364(c) and (d) of the Bankruptcy Code and Rule 4001(b) and (c) of the Bankruptcy Rules to obtain post-petition financing on a permanent basis to borrow under such post-petition credit facility, and to use cash collateral. Debtor specifically requests authorization to execute the DIP Loan Documents[5] to borrow, on a revolving basis, the approximate sum of $544,882.27 per month consisting of $44,882.27 in operating expenses and $500,000 for parts; provided that, in each monthly period, Debtor will not borrow in excess of the amounts actually needed to purchase parts or to fund other budgeted expenses. In order to purchase the parts, Debtor will issue a purchase order to NOVO including the part numbers for the needed parts and NOVO will purchase the parts for Debtor and deliver them at cost. Debtor further requests as part of this authority the ability to use cash collateral and grant adequate protection, as set forth in the proposed order.

---

[4] While the SBA is shown to have a superior lien, it has been represented to the Debtor and the potential lender that the SBA has subordinated its lien to that of ServisFirst Bank.

[5] "DIP Loan Documents" means the DIP Loan Agreement and the Revolving Promissory Note.

8

14. Pursuant to the Revolving Promissory Note, Debtor seeks the further authority to pay Lender, on a revolving basis, upon Debtor's receipt of payment from the Defense Finance Accounting Service ("DFAS") from each invoice issued under the MASPO Contract an amount equal to i) the monies loaned to purchase the parts sold to Debtor in connection with the MASPO Contract; plus ii) 50% of each payment received from DFAS on invoices relating to the MASPO Contract after subtracting for the parts, in order to pay outstanding advances made under the revolving DIP Loan Documents.

15. A debtor's ability to obtain post-petition financing is governed by section 364 of the Bankruptcy Code which provides, in pertinent part:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--
>
> > (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> > (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> > (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior lien on property of the estate that is subject to a lien only if —
>
> > (A) the trustee is unable to obtain such credit otherwise; and
> >
> > (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364.

16. Debtor's ability to meet the requirements of the Army under the MASPO Contract can only be satisfied if Debtor is authorized to obtain the loan proceeds under the DIP Loan Agreement and to use such proceeds to fund the ongoing operations. The funds provided under

9
Case 25-81168-CRJ11    Doc 78    Filed 08/01/25    Entered 08/01/25 15:11:57    Desc Main
Document    Page 9 of 13

the DIP Loan Agreement will also enable Debtor to finance its business operations, including the ability perform under the MASPO Contract and pay its employees, thereby preserving the ability of Debtor to successfully restructure its debts for the benefit of all parties in interest. It is expected that the availability of credit under the DIP Loan Agreement will provide Debtor's primary customer (the Army) with the necessary confidence to continue its ongoing relationship with Debtor. Finally, it is believed that the implementation of the DIP Loan Agreement will be viewed favorably by Debtor's creditors, permitting Debtor to continue to operate its business until either a plan is confirmed or a Termination Event occurs.

17. Debtor is unable to obtain unsecured credit or debt as allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code in an amount sufficient and readily available to maintain ongoing operations, and Debtor has been unable to obtain post-petition financing from an alternative lender on more favorable terms and conditions than those provided by Lender.

18. Furthermore, the terms of the DIP Loan Agreement are consistent with section 364. Lender is entitled to a super-priority claim under section 364(c)(1) because it is providing critical working capital to Debtor to enable ongoing operations with the goal of implementing a plan. Debtor's grant of liens to Lender is also necessary and appropriate. Under the DIP Loan Agreement, Lender shall be secured by a first priority Security Interest in (i) any and all unencumbered Assets of Debtor created, acquired or arising prior to the Petition Date; (ii) the MASPO Contract and all accounts, account receivables and rights to payment from the MASPO Contract as well as all Cash Collateral (as that term is defined in the Bankruptcy Code) and proceeds relating thereto and any and all Assets of Borrower purchased, acquired, created or arising after the Petition Date from advances under the DIP Loan, or from payments or proceeds

received under the MASPO Contract; and (iii) a junior Security Interest in and lien upon (a) any and all other assets of Debtor (excluding First Priority Collateral) which were subject, as of the Petition Date, to the lien of ServisFirst Bank or an otherwise unavoidable lien; and (b) all Cash Collateral and proceeds relating thereto.

19. Debtor believes that the financing arrangements provided by Lender are the best available at this time. The terms and conditions of the DIP Loan Agreement are fair and reasonable and were negotiated by the parties in good faith and at arms' length. No consideration is being provided to any party to the DIP Loan Agreement other than as disclosed therein. Lender is thus entitled to all protections of a good faith lender under section 364(e) of the Bankruptcy Code.

20. Finally, the use of cash collateral as set forth in the Proposed Order and Budget are necessary and appropriate and consistent with section 363 of the Bankruptcy Code. Based upon Debtor's review of its books and records and publicly available records, the creditors shown on Exhibit C assert a lien on Debtor's pre-petition receivables. However, as discussed above, ServisFirst has the senior secured lien on the Debtor's accounts and accounts receivable in connection with the MASPO Contract and it has agreed to subordinate its interest in the receivables generated in connection with the MASPO Contract, including its Replacement Lien therein, to Lender's lien created hereunder.

21. Moreover, the Debtor is providing such Secured Creditors adequate protection of such interests to the extent of any diminution in value of its interests in Cash Collateral resulting from Debtor's use of Cash Collateral. Specifically, Debtor proposes to give such creditors a replacement lien in and on Debtor's assets to the same extent and priority as Secured Creditor's liens existing as of the Petition Date; provided that (a) the DIP Security Interests granted to Lender shall be senior and prior to the Secured Creditors Replacement Liens with respect to the MASPO

11

Contract and all accounts, account receivables and rights to payment from the MASPO Contract as well as all Cash Collateral and proceeds relating thereto and any and all Assets of Borrower purchased, acquired, created or arising after the Petition Date that are funded from advances under the DIP Loan, or from payment or proceeds received under the MASPO Contract  Furthermore, Debtor agrees that such Secured Creditors hold an administrative claim equal to the amount of diminution in value of such Secured Creditors collateral as a result of Leder's priming First Priority Collateral or Debtor's use of Secured Creditors' Cash Collateral , which shall have priority (except with respect to the Carve-Out and DIP Super-Priority Claim) under sections 503(b) and 507(b) of the Bankruptcy Code over all unsecured claims against Debtor, now existing or hereafter arising; *provided, as set forth herein*, the DIP Super-Priority Claim shall be senior and prior to the Secured Creditors' Administrative Claim for all purposes.

22. Upon approval of the DIP Loan Agreement, Lender and ServisFirst will be the only parties with an interest in Cash Collateral resulting from post-petition receivables and it is believed that both consent to the use of Cash Collateral on the terms set forth set forth in the DIP Loan Agreement.

## CONCLUSION

For these reasons, the Court should authorize Debtor to obtain the DIP Loan and execute the DIP Loan Documents on a final basis, authorize Debtor's use of Cash Collateral , and grant adequate protection as requested herein.  Debtor respectfully requests, at the final hearing, this Cour to enter a final order approving Debtor's ability to obtain the DIP Loan Agreement in accordance with the terms hereof and of the DIP Loan Documents.

12

WHEREFORE, PREMISES CONSIDERED, Debtor, Acquisition Integration, LLC respectfully requests that this Court authorize it to execute the DIP Loan Documents, plus grant it such further and additional relief as this Court deems just and proper.

Respectfully submitted this 1st day of August, 2025.

/s/ Stuart M. Maples
STUART M. MAPLES
(ASB-1974-S69S)

THOMPSON BURTON PLLC
REGIONS CENTER
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@thompsonburton.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of August, 2025, I have served a copy of the foregoing on those parties requesting notice by depositing the same in the United States Mail, postage prepaid and properly addressed, or if the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures.

/s/ Stuart M. Maples
STUART M. MAPLES