**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION**

**IN RE:**
**ACQUISITION INTEGRATION, LLC,**
**EIN: XX-XXX9425**
**DEBTOR.**

**CASE NO. 25-81168-CRJ11**
**CHAPTER 11**

**THIRD AMENDED DISCLOSURE STATEMENT FOR**
**CHAPTER 11 PLAN OF REORGANIZATION FOR**
**ACQUISITION INTEGRATION, LLC**

February 27, 2026

STUART M. MAPLES
THOMPSON BURTON PLLC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9752
Fax: (256) 489-9720
smaples@thompsonburton.com
Counsel for Debtor-in-Possession

**Solicitation of Votes with Respect to the**
**Chapter 11 Plan of Reorganization**
**of**
**Acquisition Integration, LLC**

**THE MANAGEMENT OF ACQUISITION INTEGRATION, LLC DEBTOR AND DEBTOR-IN-POSSESSION (THE "DEBTOR" OR THE "COMPANY"), BELIEVES THAT THE DEBTOR'S CHAPTER 11 PLAN DATED FEBRUARY 27, 2026 (THE "PLAN"), IS IN THE BEST INTERESTS OF ITS CREDITORS. ALL CREDITORS ARE PROVIDED FOR IN THIS DISCLOSURE STATEMENT. TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED, AND RECEIVED BY COUNSEL FOR THE DEBTOR, STUART M. MAPLES, THOMPSON BURTON, PLLC, 200 CLINTON AVENUE WEST, SUITE 1000, HUNTSVILLE, ALABAMA, 35801, BEFORE _____, 2026 BY 4:00 P.M. (CENTRAL STANDARD TIME) (THE "VOTING DEADLINE").**

Case 25-81168-CRJ11    Doc 154    Filed 02/27/26    Entered 02/27/26 14:01:39    Desc
Main Document        Page 1 of 36

**ALL CREDITORS ARE ENCOURAGED TO READ AND CONSIDER CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT PRIOR TO SUBMITTING BALLOTS PURSUANT TO THIS SOLICITATION. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN AND IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN.**

**ALL CAPITALIZED TERMS IN THIS DISCLOSURE STATEMENT NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE PLAN. THE SUMMARIES OF THE PLAN AND THE OTHER DOCUMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED BY REFERENCE TO THE PLAN AND SUCH OTHER DOCUMENTS THEMSELVES.**

## I. INTRODUCTION.

### A. Preliminary Statement.

On June 10, 2025, Acquisition Integration, LLC debtor and debtor-in-possession (the "Debtor"), filed a voluntary Chapter 11 under of the Bankruptcy Code before the United States Bankruptcy Court for the Northern District of Alabama, Northern Division. The Debtor is managing its assets, business, and financial affairs as a debtor-in-possession, subject to the supervision of the Bankruptcy Court and the provisions of the Bankruptcy Code.

As set forth in more detail below, the Plan provides that the Debtor shall continue as a corporate entity but shall also be allowed to liquidate the majority of its assets, which are subject to certain liens and interest, of which the Liquidating Trustee will make disbursements based on certain liens, interests, and claims provided for in the Plan.

Accompanying this Disclosure Statement are copies of the following:

1. The Order of the Bankruptcy Court dated _____, 2026, approving this Disclosure Statement and solicitation and voting procedures related to the Plan and setting the hearing on confirmation of the Plan for _____, 2026.

2. The Plan.

3. A ballot for accepting or rejecting the Plan. Ballots are provided to holders of Allowed Claims in Classes 1 through 5 so that they may vote to accept or reject the Plan under the provisions of the Bankruptcy Code. *See* ARTICLE IV ("Voting and Distributions Under the Plan") for additional information regarding ballots and voting procedures.

Case 25-81168-CRJ11    Doc 154    Filed 02/27/26    Entered 02/27/26 14:01:39    Desc
Main Document      Page 2 of 36

**B. Plan Confirmation Process.**

**1. Approval of Disclosure Statement.**

After notice and a hearing held on _____, 2026, by order _____, 2026, pursuant to § 1125 of the Bankruptcy Code, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of the holders of Claims or interests in Classes 1 through 5 to make an informed judgment whether to accept or reject the Plan. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

**2. Voting on the Plan.**

    a. Who May Vote. Pursuant to § 1126 of the Bankruptcy Code, holders of Allowed Claims or interests may vote to accept or reject the Plan, provided, however, that (i) the holders of Claims or interests in classes that are not conclusively impaired under the Plan are presumed to have accepted the Plan and solicitation of acceptances with respect to such classes is not required, and (ii) a class is deemed not to have accepted the Plan if the Plan provides that the Claims or interests of such class do not entitle the holders of such Claims or interests to receive or retain any property under the Plan on account of such Claims or interests. Accordingly, the Debtor is soliciting acceptance of the Plan only from holders of Claims or interests in the following classes, which are "impaired" under the Plan and are entitled to accept or reject the Plan:

- Class 1 – Priority Claims
- Class 2 – Allowed Secured Claim of ServisFirst Bank
- Class 3 – Allowed Secured Claim of Flight Test Aerospace
- Class 4 – General Unsecured Creditors
- Class 5 – Equity Interest Holders

Only Persons who hold Claims or interests in the foregoing impaired classes are entitled to vote to accept or reject the Plan.

**THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF HOLDERS OF CLAIMS AND INTERESTS IN ALL IMPAIRED CLASSES. THE DEBTOR RECOMMENDS THAT ALL PERSONS ENTITLED TO VOTE CAST A BALLOT TO ACCEPT THE PLAN.**

    b. Voting Deadline. The Bankruptcy Court has fixed 4:00 p.m. (Central Time) on _____, 2026, as the deadline for voting. To be counted, all ballots must be completed and received, as set forth below, before the Voting Deadline.

-3-

c. Voting Procedures. Holders of Claims in Classes 1 through 5 should complete and sign the enclosed Ballot and deliver it by mail, hand, or overnight delivery to:

Stuart M. Maples
Thompson Burton, PLLC
200 Clinton Ave. W., Suite 200
Huntsville, Alabama 35801

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY THE VOTING DEADLINE OF 4:00 P.M. CENTRAL TIME ON _____, 2026. You must ensure the receipt of the ballot before the Voting Deadline. Ballots received after the Voting Deadline will not be counted.**

d. Significance of Voting. The vote for each holder of a claim in an impaired class is important. Acceptance by each impaired class of claims is a condition to confirmation of the Plan on a consensual basis. The Bankruptcy Code defines "acceptance" of a plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan. If a class or classes of impaired Claims does not accept the Plan, the Debtor has requested confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code, which permits confirmation, notwithstanding non-acceptance by one or more impaired classes, if the Plan does not discriminate unfairly and is "fair and equitable" with respect to each non-accepting class. THESE CALCULATIONS ARE BASED ONLY ON THE CLAIM AMOUNTS AND NUMBER OF CREDITORS WHO ACTUALLY VOTE. THE VOTE OF EACH CREDITOR IS IMPORTANT.

The Debtor will prepare and file with the Court a certification of the results of the balloting with respect to the Plan. ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED. ALSO, ANY BALLOTS RECEIVED BY FACSIMILE WILL NOT BE ACCEPTED.

**3. Confirmation Hearing.**

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a confirmation hearing to consider confirmation of the Plan.

At the Confirmation Hearing, the Court will (i) determine whether the requisite vote has been obtained for each Class, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing and filed and served as required by the Court pursuant to the Order Approving Disclosure Statement. Specifically, all objections to the confirmation of the Plan must be served in a manner so as to be received on or before _____, 2026 by 4:00 p.m. (Central Time) by:

a. Clerk of the Court, United States Bankruptcy Court, Clerk's Office, 660 Gallatin St. SW, Huntsville, Alabama, 35801.

Case 25-81168-CRJ11   Doc 154   Filed 02/27/26   Entered 02/27/26 14:01:39   Desc
Main Document     Page 4 of 36

b.  Counsel to the Debtor, Stuart M. Maples, Thompson Burton, PLLC, 200 Clinton Ave. West, Suite 1000, Huntsville, Alabama, 35801; and

c.  Richard Blythe, Office of the Bankruptcy Administrator, 400 Wells Street, P.O. Box 3045, Decatur, Alabama, 35602.

## II. BUSINESS AND HISTORY OF DEBTOR.

### A. Company Structure.

The Debtor is an Alabama limited liability company formed in 2013. The sole member of the Debtor is David P. Bristol.

The Debtor is a government contactor that operates throughout the United States. As of the petition date, the Debtor had four employees, with its principal place of business located in Madison County, Alabama.

### B. History.

The Debtor is a party to a contract with the United States Army Contract No. W58RGZ21-D-0089 for the delivery of parts and equipment to support weapon systems managed by MultiNational Aviation Special Project Office (MASPO) for the Program Executive Office – Aviation (PEO AVN) in support of Foreign Military Sales (FMS) and other Security Cooperation Programs ("Parts") (hereinafter "MASPO Contract"). More specifically, Debtor is obligated to procure these Parts in accordance with the specifications outlined in the statement of work for the MASPO third-party logistics bulletin dated July 31, 2020, as revised on May 20, 2021.

### C. Assets.

The total value of Debtor's assets as of the Petition Date is $3,000,000.00. This consists of inventory, investments, and ongoing contracts with the government, and potential litigation claims.

### D. Debt Structure.

### 1. Administrative Expense Claims.

At Confirmation, the Debtor anticipates administrative expense claims allowable under the Plan by Thompson Burton, PLLC, in the approximate amount of $150,000.00. As described in Section VII below, Administrative Expense Claims shall be paid from the Minimum Cash Down Payment (as defined below) required from the purchaser of the Equity Interest of the Reorganized Debtor (the "Equity Interest"). Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim held pursuant to the Final Order Authorizing Debtor to Obtain Post-Petition Financing (Doc. 90) (the "Financing Order"), and any further excess purchase price remaining after satisfaction of the claim of NOVO Tech shall be paid to ServisFirst to reduce its administrative expense, also held pursuant to the Financing Order.

### 2. Tax Claims.

The Debtor currently owes the following taxes:

a.  IRS: The IRS asserts a Priority Claim for withholding taxes in the amount $516.42;

b.   Madison County Alabama: Madison County, Alabama asserts Priority Claims for Property Taxes in the amount of $3,277.69; and

c.   U.S. Dept. of Labor – Office of Labor, Wage & Hour Division: The U.S. Dept of Labor asserts a Priority Claim in the amount of $68,666.90. This will include some, if not all, of the Priority Wage and Benefit Claims to be treated in this Plan.

**3. Wage and Benefit Claims.**

As of the date of this filing, the following wage claims have been submitted:

a.  Burntex Aviation Consulting;

b.  Michelle Stephens;

c.  Sara Elizabeth Walker; and

d.  Rodney Lane Dant.

Each of these Priority Claim holders are current or former employees of the Debtor entitled to a Priority Claim pursuant to § 507(a)(5) of the Bankruptcy Code. All Priority Claims are listed in Class 1.

**4. Allowed Secured Claims.**

The Debtor has two (2) secured claims:

(a)  ServisFirst Bank, and

(b)  Flight Test Aerospace ("FTA").

The Plan places the Allowed Secured Claim of ServisFirst Bank in Class 2 and the Allowed Secured Claim of FTA in Class 3.

ServisFirst Bank ("ServisFirst") holds a prepetition perfected first-priority security interest in substantially all assets of the Debtor, including the MASPO Contract and the proceeds therefrom. In connection with the post-petition DIP Loan obtained from NOVO Tech, Inc., ServisFirst agreed to subordinate its lien in the "First Priority Collateral" (as defined in the Financing Order) to the DIP Lender's first-priority lien, but ServisFirst retained its prepetition liens and received a replacement lien on all postpetition assets of the Debtor, including a lien in the First Priority Collateral junior to that of NOVO Tech, Inc. ServisFirst has not waived or released its security interest in the MASPO Contract or the proceeds therefrom, and the Plan does not extinguish ServisFirst's prepetition or replacement liens, including on the MASPO Contract and its proceeds, all of which shall be retained post-confirmation, as further described in Sections VI and VII below.

**E. Summary of Unsecured Debt for Distribution Purposes under the Plan.**

The Plan places all Unsecured Claims in Class 4. The total amount of these claims as of the filing of this disclosure statement is approximately $2,535,803.74.

The Debtor reserves all rights, claims, and defenses with respect to the allowance, amount, and classification of all claims. Moreover, some of the claims are disputed or unliquidated. Additional claims may be unknown to the Debtor. The Debtor reserves all rights and makes no representation or warranty as to the number of Allowed Claims.

## III. EVENTS LEADING TO CHAPTER 11.

Prepetition, the Debtor had multiple judgments entered against it. Subsequently, these judgments and other significant financial matters impeded the Debtor's capacity to secure loans essential for sustaining its operations. One of those creditors, Axxeum, Inc., sought to obtain a temporary restraining order in state court prohibiting the Debtor from negotiating sale of its assets to third parties in order to grant liquidity to pay creditors per rata. In response to that attempt an emergency petition was filed.

## IV. CHAPTER 11 PROCEEDINGS.

Post-Filing Operations. After filing this Chapter 11 case, the Debtor has operated its business and managed its assets and affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. The Debtor will file monthly reports with the Bankruptcy Court summarizing its post-filing operating results. Following confirmation of the Plan, the Liquidating Trustee (as more fully outlined below) will provide required reporting to the Bankruptcy Court.

Post-petition the Debtor sought and obtained financing from NOVO Tech Inc. which is an affiliate of Flight Test Aviation, Inc. As authorized by the Bankruptcy Court in the Financing Order, the Debtor entered into a DIP Loan Agreement ("DIP Loan") under which it executed a Revolving Promissory Note which allows it to borrow up to $3,000,000.00. As of the date of this Disclosure Statement, the outstanding principal balance of the DIP Loan is approximately $750,000 which will change depending upon additional funding to the Debtor under the Revolving Promissory Note. The Revolving Promissory Note is secured by (i) a first priority Security Interest in any and all (a) unencumbered Assets of Borrower created, acquired, or arising prior to the Petition Date, and (b) the MASPO Contract and all accounts, accounts receivable, and rights to payment from the MASPO Contract as well as all Cash Collateral and proceeds relating thereto and any and all Assets of Borrower purchased, acquired, created, or arising after the Petition Date from advances under the DIP Loan, or from payments under or proceeds of the MASPO Contract (collectively, per the Financing Order, the "First Priority Collateral"); and (ii) a junior Security Interest in (a) any and all other assets (excluding First Priority Collateral) of Debtor which were subject, as of the Petition Date, to the lien of ServisFirst or an otherwise unavoidable lien; and (b) all Cash Collateral and proceeds relating thereto (collectively, per the Financing Order, the "Second Priority Collateral"). Additionally, subject only to the Carve-Out (as defined in the Financing Order), all DIP Obligations constitute allowed super-priority administrative expense claims under section 364(c)(1) of the Bankruptcy Code against the Debtor, having priority over all administrative expense claims against the Debtor or its Estate at any time existing or arising, of any kind or nature.

## V. SUMMARY OF PLAN.

**NOTE: The following is a summary of the Plan. Read the Plan itself for a full disclosure of its contents. The following summary is provided for convenience only and is not intended as a complete statement of the terms of the Plan. If the summary conflicts in any way with the Plan, the terms of the Plan shall control. REFERENCE TO THE PLAN IS NECESSARY FOR A FULL UNDERSTANDING OF ITS TERMS.**

-7-

The Plan provides a comprehensive strategy for repaying creditors through the proceeds generated from the sale of Equity Interest of the Reorganized Debtor, payments received from net revenue generated from the MASPO Contract, and other sources described herein. The Plan classifies claims into two (2) classes of Secured Claims, one (1) Priority class, one (1) general Unsecured class, and one (1) Equity Interest class, with specific treatments and payment terms for each.

This Plan will have several sources of funding, first being the sale of the Equity Interest of the Reorganized Debtor, second being the MASPO Contract and its ongoing proceeds, and third being the Liquidating Trust. The purchase price paid for the Equity Interest (the "Purchase Price") shall include, at a minimum, a cash down payment of $500,000.00 (the "Minimum Cash Down Payment") to be paid at closing, which shall be sufficient to pay in full all Allowed Administrative Expense Claims and Allowed Priority Claims on or before the Effective Date. Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. Any remaining balance of the Purchase Price above the Minimum Cash Down Payment may be structured as payments over time as provided in the Bidding Procedures and shall be distributed upon receipt in accordance with the Plan.

**A. Overview.**

The Plan provides for the payment of secured and unsecured debt.

**B. Disclosure of Unclassified Claims.**

1. Administrative Expense Claims. This class shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code. This class is divided into the following sub-classes:

> a. Thompson Burton, PLLC: Debtor has incurred legal fees with the law firm of Thompson Burton, PLLC relating to the firm's representation of the Debtor in this Chapter 11 case. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim that is unimpaired and shall be paid in full on the Effective Date from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor (as further described in Sections VII(A)(c) and VII(A)(e) below). The amount of professional compensation due at confirmation is estimated to be approximately $150,000.00.

> b. Tax Claims.

>> a. The Allowed Tax Claim of the IRS.

>> b. The Allowed Tax Claim of Madison County Alabama.

>> c. The Allowed Tax Claim of the U.S. Department of Labor.

3. NOVA Tech DIP Loan. The Nova Tech DIP loan, as was approved by this Court [Doc. 90], is drawn in the amount of $368,363.75. This DIP advance shall constitute an Administrative Expense Claim that is unimpaired and shall be paid in full on the Effective Date from the Minimum Cash

Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor (as further described in Sections VII and VII below).

## C. Judgment Lien Creditors.

The following creditors have judgment liens against Debtor:

1. TMT Services, LLC
2. Edward Jay Pollock
3. Libertas Funding, LLC

Following the hearing on this disclosure statement, Debtor expects to file adversary proceedings seeking to reduce these judgment liens to unsecured claims.

## D. Disclosure of Unimpaired Classes.

### Unclassified Claims

All Allowed Tax Claims shall be paid in full on the Effective Date from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor. Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. The Debtor will ensure that the Minimum Cash Down Payment required in the Bidding Procedures is sufficient to cover all Administrative Expense Claims and all Allowed Priority Claims in full. Further, if any Allowed Tax Claim of Madison County survives any sale of estate assets, the lien of Madison County, Alabama shall attach to the proceeds of such a sale.

### Class 1 – Allowed Priority Claims.

Class 1 shall consist of the Wage and Benefit Claims. All Wage and Benefit Claims in Class 1 shall be paid in full on the Effective Date from the Minimum Cash Down. Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. The Debtor will ensure that the Minimum Cash Down Payment required in the Bidding Procedures is sufficient to cover all Administrative Expense Claims and all Allowed Priority Claims in full. Further, if any Allowed Tax Claim of Madison County survives any sale of estate assets, then lien of Madison County, Alabama shall attach to the proceeds of such a sale.

## E. Disclosure of Impaired Classes.
### Class 2 – Allowed Secured Claim of ServisFirst.

Class 2 shall consist of the Allowed Secured Claim of ServisFirst. ServisFirst has filed a proof of claim in this case, in the amount of $1,297,252.38. ServisFirst holds a prepetition perfected first-

priority security interest in substantially all assets of the Debtor, including the MASPO Contract and the proceeds therefrom, senior in priority to all other creditors except the DIP Lender with respect to the First Priority Collateral and replacement liens on all post-petition assets of the Debtor, including a junior lien on the First Priority Collateral and a first-priority lien on the Second Priority Collateral.

### Class 3 – Allowed Secured Claim of Flight Test Aerospace ("FTA").

Class 3 shall consist of the Allowed Secured Claim of FTA. FTA's claim is secured by a blanket lien on the Debtor's personal property as represented by claim 26 in the amount of $254,373.01. FTA's security interest in the Debtor's assets is junior in priority to the security interest of ServisFirst. FTA shall not receive payment from the Debtor, the Liquidating Trust or otherwise on account of its Secured Claim until ServisFirst's Allowed Secured Claim has been paid in full or ServisFirst otherwise consents.

### Class 4 – Allowed Unsecured Claims.

Class 4 shall consist of the Allowed Unsecured Claims of all unsecured creditors.

### Class 5 – Equity Interest Holders.

Class 5 shall consist of the equity interest of David P. Bristol as sole Member in the Debtor. Such equity interest in the Debtor shall be divested and terminated under this Plan pursuant to 11 U.S.C. § 1141(d)(1)(B).

## VI. IMPAIRMENT AND TREATMENT OF CLASSES UNDER THE PLAN

### A. Treatment of Unclassified Claims.

Treatment of all claims and interests shall be in accordance with the Plan.

### 1. UNCLASSIFIED CLAIMS.

Administrative Expense Claims: This class shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code.

> a. Thompson Burton, PLLC: Debtor has incurred legal fees with the law firm of Thompson Burton, PLLC relating to the firm's representation of the Debtor in this Chapter 11 case. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim that is unimpaired and shall be paid in full on the Effective Date from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor. The amount of professional compensation due at confirmation is estimated to be approximately $150,000.00.

Case 25-81168-CRJ11 Doc 154 Filed 02/27/26 Entered 02/27/26 14:01:39 Desc Main Document Page 10 of 36

## 2. CLASSIFIED CLAIMS.

### Class 1 – Allowed Priority Claims.

Class 1 shall consist of the Wage and Benefit Claims of Burntex Aviation Consulting, Michelle Stephens, Sara Elizabeth Walker, and Rodney Lane Dant in the combined approximate total amount of $99,612.01. The Allowed Priority Claims shall be paid in full on the Effective Date from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor, as further provided in Section VII(A)(c) below. Except to the extent the Reorganized Debtor or the Liquidating Trustee, as applicable, and the holder of an Allowed Priority Claim agree to a different and less favorable treatment, all Allowed Priority Claims shall be paid, in full satisfaction and release of such Claim, to each holder of a Priority Claim in an amount equal to such Allowed Priority Claim, on the later of: (a) the Effective Date, (b) the first Business Day after the date that is 30 calendar days after the date on which such Priority Claim becomes an Allowed Priority Claim, or as soon thereafter as is practicable.

### Class 2 – Allowed Secured Claim of ServisFirst.

Class 2 consists of the Allowed Secured Claim of ServisFirst and is impaired. ServisFirst has filed a claim in the amount of $1,297,252.83. The Allowed Secured Claim of ServisFirst is secured by a prepetition perfected first-priority lien upon all assets of the Debtor except for the First Priority Collateral, upon which its lien is subordinate to that of NOVO Tech, Inc., and replacement liens on all other assets of the Debtor, including a junior lien in the First Priority Collateral and a first-priority lien in the Second Priority Collateral. ServisFirst's lien upon the Debtor's assets, including the MASPO Contract and the proceeds therefrom, shall be retained post-confirmation and shall not be extinguished by confirmation of the Plan or the transfer and sale of the Equity Interest of the Reorganized Debtor. The Allowed Secured Claim of ServisFirst shall be paid (i) from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor, to the extent any excess funds remain after payment of Allowed Administrative Expense Claims, Allowed Priority Claims, and the Allowed Claim of NOVO Tech, Inc.; (ii) from the proceeds of a sale pursuant to § 363 of the Bankruptcy Code of the Debtor's inventory that secures the ServisFirst Claim; (iii) by the Reorganized Debtor pursuant to a stream of payments from the net revenue generated through the MASPO Contract, payable on a periodic basis as described in Section VII(A)(i) below, with ServisFirst retaining all liens, including its lien upon the MASPO Contract and proceeds therefrom, until ServisFirst's Allowed Secured Claim is paid in full; and (iv) by the Liquidating Trustee from funds accumulated in the Liquidated Trust, or pursuant to such other treatment as may be agreed upon by the Reorganized Debtor, the Liquidating Trustee and ServisFirst. Any deficiency claim of ServisFirst after its receipt of a portion of the Minimum Cash Down Payment (if any) and the proceeds of all ServisFirst collateral, including, but not limited to, proceeds of the sale of the Debtor's inventory and net revenue of the Reorganized Debtor under the MASPO Contract (after satisfaction of the Allowed Claim of NOVO Tech, Inc. from such revenues), shall become a Class 4 General Unsecured Claim.

Until ServisFirst's Allowed Secured Claim is paid in full, ServisFirst shall retain and may enforce its lien upon the MASPO Contract, the accounts receivable generated therefrom, and all proceeds thereof, subject only to the super-priority of the DIP Lender's claim. The Reorganized Debtor shall not encumber, transfer, assign, or otherwise dispose of its interest in the MASPO Contract without

-11-

the prior written consent of ServisFirst until ServisFirst's Allowed Secured Claim is paid in full or the lien is otherwise released by ServisFirst.

As further consideration for the treatment provided to ServisFirst under the terms of a confirmed Plan, ServisFirst shall forbear from the exercise of its rights and remedies under its Loan Documents against the Debtor or the First Priority Collateral, from the Effective Date until the earliest to occur of the following (i) the occurrence or discovery of a default under the terms of the Plan which is not cured within five business days after written notice of default is provided to the Reorganized Debtor and the Liquidating Trustee; or (ii) payment in full of the Obligations. Nothing herein shall limit the exercise by ServisFirst of any rights or remedies it holds under its Loan Documents or applicable law against any non-debtor obligor or against any of its collateral that is not First Priority Collateral, including collateral that is not property of the estate in this proceeding.

Holders of Allowed Secured Claims in Class 2 are impaired under the Plan. Each holder of an Allowed Secured Claim is entitled to vote to accept or reject the Plan.

**Class 3 – Allowed Secured Claim of Flight Test Aerospace ("FTA").**

Class 3 consists of the Allowed Secured Claim of Flight Test Aerospace ("FTA") and is impaired. FTA has filed a claim in this case in the amount of $254,373.01. FTA holds a prepetition perfected security interest in substantially all assets of the Debtor, including the MASPO Contract and the proceeds therefrom. FTA's security interest in the Debtor's prepetition assets is junior in priority to ServisFirst's prior-perfected first-priority security interest in the same collateral. FTA's lien upon the Debtor's prepetition assets, including the MASPO Contract and the proceeds therefrom, shall be retained post-confirmation and shall not be extinguished by confirmation of the Plan or the transfer and sale of the Equity Interest of the Reorganized Debtor.

The Allowed Secured Claim of FTA shall be paid (i) from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor, to the extent such payment is available after payment of Allowed Administrative Expense Claims, Allowed Priority Claims, the Allowed Claim of NOVO Tech, Inc., and ServisFirst's Allowed Secured Claim; (ii) by the Reorganized Debtor pursuant to a stream of payments of the net revenue generated through the MASPO Contract, payable on a periodic basis as described in Section VII(A)(i) below, with FTA retaining its junior lien upon the MASPO Contract and proceeds therefrom, subject to ServisFirst's senior lien, until FTA's Allowed Secured Claim is paid in full; and (iii) by the Liquidating Trustee from funds accumulated in the Liquidating Trust, but only after ServisFirst's Allowed Secured Claim has been paid in full or ServisFirst otherwise consents in writing; or pursuant to such other treatment as may be agreed upon by the Reorganized Debtor, the Liquidating Trustee, and FTA, provided that FTA will not receive any treatment in derogation of the prior security interests of ServisFirst. Any deficiency claim of FTA after liquidation of all FTA Collateral shall become a Class 4 General Unsecured Claim.

Until FTA's Allowed Secured Claim is paid in full, FTA shall retain and may enforce its junior lien upon the MASPO Contract, the accounts receivable generated therefrom, and all proceeds thereof, subject to the senior lien of ServisFirst and the super-priority of the DIP Lender's claim. The Reorganized Debtor shall not encumber, transfer, assign, or otherwise dispose of its interest in the MASPO Contract without the prior written consent of FTA (in addition to the consent of

Case 25-81168-CRJ11    Doc 154    Filed 02/27/26    Entered 02/27/26 14:01:39    Desc
Main Document      Page 12 of 36

ServisFirst) until FTA's Allowed Secured Claim is paid in full or the lien is otherwise released by FTA.

FTA does not hold a security interest in the Equity Interest of the Reorganized Debtor. Accordingly, while FTA may submit a bid to purchase the Equity Interest of the Reorganized Debtor, any such bid must be in the form of a cash bid. FTA may not credit bid its Class 3 Secured Claim in connection with the sale of the Equity Interest of the Reorganized Debtor.

As further consideration for the treatment provided to FTA under the terms of a confirmed Plan, FTA shall forbear from the exercise of its rights and remedies under its Loan Documents against the Debtor or the First Priority Collateral, from the Effective Date until the earliest to occur of the following (i) the occurrence or discovery of a default under the terms of the Plan which is not cured within five business days after written notice of default is provided to the Reorganized Debtor and the Liquidating Trustee; or (ii) payment in full of the Obligations.

Holders of Allowed Secured Claims in Class 3 are impaired under the Plan. Each holder of an Allowed Secured Claim is entitled to vote to accept or reject the Plan.

### Class 4 – Allowed Unsecured Claims.

Class 4 consists of all Allowed General Unsecured Claims. Claims in Class 4 are impaired. The total amount of unsecured claims exceeds $2,535,803.74. Allowed General Unsecured Claims in this class shall be paid by the Liquidating Trustee from funds accumulated in the Liquidated Trust. This class shall also include all Claims of Classes 2 and 3 to the extent that the liens which secure those Claims have no remaining value, meaning the balance of such Claims are unsecured. Provided that the holder of a Class 4 Claim has not yet been paid, such holder of each such Allowed General Unsecured Claim shall receive a Pro Rata distribution from the Liquidating Trust on the later of (i) 30 days from the Effective Date, or (ii) the Liquidating Trust's receipt of sufficient funds from which a distribution can be made or as soon as is reasonably practicable thereafter. Holders of an Allowed General Unsecured Claims shall not be entitled to receive post-petition interest on their Allowed Claims.

### Class 5 – Equity Interest Holders.

Class 5 shall consist of the equity interest of David P. Bristol in the Debtor. Upon entry of the Confirmation Order, the equity interest of David P. Bristol shall be deemed divested and terminated pursuant to Section 5.06 of the Plan, and David P. Bristol shall not receive or retain any property under the Plan on account of such Equity Interest.

## VII. IMPLEMENTATION OF THE PLAN

### A. Means of Executing the Plan.

The Debtor proposes to implement the Plan as follows:

> a. Funding for this Plan. There are several sources for funding this Plan. The first source for funding this Plan comes from the sale of the Equity Interest in the Reorganized Debtor. The purchaser of the Equity Interest shall be required, as a condition of closing, to pay a Minimum Cash Down Payment in an amount sufficient to pay in full: (i) all Allowed

Administrative Expense Claims, including without limitation the professional fees of Thompson Burton, PLLC; and (ii) all Allowed Priority Claims in Class 1. Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. The Minimum Cash Down Payment shall be set forth in the Bidding Procedures as a minimum closing condition and will be disclosed in the sale motion filed by the Debtor. Structured payment offers for any amounts above the Minimum Cash Down Payment may be considered as provided in the Bidding Procedures. A second funding source for the payment of secured claims are the net revenues generated from the MASPO contract. A third funding source are the assets held by the Liquidating Trust.

b. Continuing Existence. From and after the Effective Date, the Reorganized Debtor shall continue in existence for all purposes to the same extent as it existed and operated pre-petition. However, except as set forth expressly in the Plan, the Reorganized Debtor shall not be liable for or responsible to pay any Claim against the Debtor and the holders of all Claims shall be enjoined from taking legal action against the Reorganized Debtor, provided that the Reorganized Debtor remains in compliance with the provisions of the confirmed Plan and such Claim holders receive all treatment to which they are entitled under the Plan. Pursuant to the Plan, (i) ServisFirst shall retain its lien upon the MASPO Contract and the proceeds therefrom, and such lien shall remain enforceable against the Reorganized Debtor until ServisFirst's Allowed Secured Claim is paid in full; (ii) FTA shall retain its junior lien upon the MASPO Contract and the proceeds therefrom, and such lien shall remain enforceable against the Reorganized Debtor, subject to ServisFirst's senior lien, until FTA's Allowed Secured Claim is paid in full; and (iii) the Reorganized Debtor shall remain obligated to make payments to ServisFirst, FTA, and to the Liquidating Trust from MASPO Contract proceeds as described in Section VII(A)(i) hereof.

c. Divestiture of Equity Interest in Debtor.

i. "Equity Interest holders" are parties who hold an ownership interest in the Debtor. In a limited liability company, the equity interest holders are its members who have a membership interest in the Debtor. In this case, the pre-confirmation equity interest holder is David P. Bristol, who owns all membership interests in the Debtor. Pursuant to the terms of this Plan, the equity interest of Mr. Bristol in the Debtor is being extinguished pursuant to 11 U.S.C. §1141(d)(1)(B).

ii. Transfer of Equity Interest in Reorganized Debtor. Either prior to or in conjunction with the confirmation of the Plan, the Debtor shall seek the approval from the Court of the sale of the Equity Interest of the Reorganized Debtor pursuant to the terms of the Bidding Procedures attached hereto and incorporated herein as **Exhibit A**. Bids shall be required to include a Minimum Cash Down Payment sufficient to pay all Allowed Administrative Expense Claims and all Allowed Priority Claims in Class 1 in full on the Effective Date, with any excess of the Minimum Cash Down Payment remaining after such payments to be paid to NOVO

-14-

Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. Such bids may contemplate structured payments over time for any portion of the Purchase Price above the Minimum Cash Down Payment. The Equity Interest in the Reorganized Debtor shall be sold free and clear of any such interest or claims from any other entity.

iii. Subject to the approval from the Court and the confirmation of the Debtor's Plan, at closing, the entity acquiring the Equity Interest in the Reorganized Debtor shall have the full power and authority to transfer unto itself, its successors, and its assigns, the Equity Interest in the Reorganized Debtor and to substitute itself as the owner of record of all outstanding equity on the corporate books and records of the Debtor without further action being taken by any former equity interest holder. Moreover, the purchaser of the Equity Interest in the Reorganized Debtor shall be further authorized to execute and deliver all documents, instruments, or records and take all actions as may be necessary or appropriate to consummate its acquisition of the Debtor, including but not limited to the election of new managers, directors, or officers.

iv. The transfer and sale of the Equity Interest in the Reorganized Debtor shall also be exempt from registration and the requirements of all federal and state securities laws in accordance with section 1145 of the Bankruptcy Code.

v. Proceeds from Sale of Equity Interest in Reorganized Debtor. The proceeds generated from the sale of the Equity Interest, following the payment of all costs associated with the sale, shall be first used to pay the Minimum Cash Down Payment to satisfy in full all outstanding Allowed Administrative Expense Claims and all Allowed Priority Claims in Class 1. Any excess of the Minimum Cash Down Payment remaining after such payments shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. The remaining proceeds above the Minimum Cash Down Payment shall then be distributed to holders of Allowed Claims according to the priorities set forth in the Debtor's Plan, with ServisFirst's Allowed Secured Claim paid in priority to the Allowed Secured Claim of FTA. If proceeds remain following the full payment of Class 2 and 3 claimants, any remaining funds will become assets of the Liquidating Trust pursuant to Article V of the Plan.

vi. DIP Claim and Loan. The DIP Claim in favor of the DIP Lender shall remain secured by the MASPO Contract, and all liabilities and obligations associated with the DIP Claim shall remain an obligation of the Reorganized Debtor subsequent to the transfer and sale of the Equity Interest of the Reorganized Debtor. Similarly, ServisFirst shall retain its lien upon the MASPO Contract and all proceeds therefrom subsequent to the transfer and sale of the Equity Interest of the Reorganized Debtor, and FTA shall retain its junior lien upon the MASPO Contract and all proceeds therefrom subject to ServisFirst's senior lien. The Reorganized

-15-

Debtor's obligation to make payments to ServisFirst and to FTA from the proceeds of the MASPO Contract shall continue until each respective Allowed Secured Claim is paid in full, as provided in Section VII(A)(i) below.

d. Solicitation. The Debtor expects that Flight Test Aerospace Inc. will participate in the auction of the Equity Interest with a cash bid. FTA does not hold a security interest in the Equity Interest of the Reorganized Debtor and accordingly may not credit bid its claim in connection with the sale of the Equity Interest. Even so, the Debtor plans to solicit new bidders throughout the U.S. commercial and defense aerospace industry to purchase both the MASPO Contract and related assets.

e. Liquidating Trust. As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all of the Debtor's remaining assets not subject to a lien in favor of NOVO Tech, Inc., ServisFirst, and/or FTA, including causes of action held by the Debtor, will be placed into a Liquidating Trust. Upon the Effective Date all right, title, and interests in the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charge and other interests, subject only to (i) the Allowed Claims of the holders of Liquidating Trust Assets as set forth in the Plan and (ii) the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement. For the avoidance of doubt, however, Liquidating Trust Assets shall not include (i) the MASPO Contract and all accounts, account receivables, and rights to payment from the MASPO Contract and proceeds relating thereto, or (ii) any and all Assets of Debtor purchased, acquired, created, or arising after the Petition Date from advances under the DIP Loan, or from payments under or proceeds of the MASPO Contract. The Plan will include a minimum contribution from the sale of the Equity Interest, carved out from any Allowed Secured Claims, in the amount of $50,000. The Liquidating Trustee shall also be the dispersing agent under the Liquidating Trust.

f. Appointment of the Liquidating Trustee. On the Effective Date, the Liquidating Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure.

Notwithstanding the foregoing or terms contained in the Liquidating Trust, the Liquidating Trustee shall have no power, authority, or control over any aspect of the Reorganized Debtor or its business affairs or governance, including but not limited to (i) the MASPO Contract and proceeds relating thereto; (ii) any and all Assets of Debtor purchased, acquired, created, or arising after the Petition Date from advances under the DIP Loan, or from payments under or proceeds of the MASPO Contract; (iii) any tax matters including the filing of any tax returns; or (iv) the performance of any obligations the Reorganized Debtor may have under the Plan.

-16-

g.   Governance of Liquidating Trust. The Liquidating Trust shall be governed and administered by the Liquidating Trustee subject to the terms of the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall direct all litigation brought on behalf of the Liquidating Trust.

h.   Tax Treatment. Except to the extent allocable to Disputed Claims, consistent with the principles of Revenue Procedure 94-45, 1994-2 C.B. 684, as of the Effective Date, for federal income tax purposes (i) the Debtor will be deemed to transfer the Liquidating Trust Assets to the holders of Allowed Claims in proportion to their respective beneficial interests in the Liquidating Trust; (ii) the holders of Allowed Claims will be deemed to transfer such Assets to the Liquidating Trust; (iii) the Liquidating Trust will be treated as a "liquidating trust," as defined in Treasury Regulation section 301.7701-4(d), and as a "grantor trust" within the meaning of Internal Revenue Code sections 671-679; and (iv) the holders of Allowed Claims will be treated as the "grantors" of the Liquidating Trust. Notwithstanding the foregoing, because all Assets of the Debtor that secure payment of the DIP Loan Agreement, including the MASPO contract itself, are not being transferred to the Liquidating Trust, this subsection does not apply to the Reorganized Debtor.

Net Profits Payments to NOVO Tech, Inc., ServisFirst and FTA.   For purposes of this Plan, "Net Profits" or "net revenue"  shall mean the gross revenues received by the Reorganized Debtor from the MASPO Contract during any applicable payment period, less (i) direct costs of contract performance, including without limitation procurement costs, labor, parts and materials; and (ii) ordinary and necessary operating expenses of the Reorganized Debtor  directly attributable to performance of the MASPO Contract.  The Net Profits shall be distributed first to NOVO Tech, Inc., then to ServisFirst, and then to FTA, each in order of priority until each party's Allowed Claim is paid in full.  Net Profits payments shall be made periodically as agreed by the Reorganized Debtor and ServisFirst but no less frequently than semiannually, with the first payment due on a date to be determined by the Reorganized Debtor and ServisFirst. Each distribution shall be accompanied by an interim income and expense statement prepared by the Reorganized Debtor explaining the calculation of the Net Profits available for Distribution in form acceptable to the secured creditors. In addition to this stream of payments, an annual true-up,  the process and procedures of which will be established by the Reorganized Debtor, NOVO Tech, Inc., ServisFirst, and FTA on or before the Effective Date of the Plan, shall be conducted within ninety (90) days after the close of each calendar year, reconciling actual Net Profits for the full year (or partial year in which distributions were made, as applicable) against the payments made during that period, with any shortfall paid promptly to NOVO Tech,. Inc., ServisFirst or FTA), as applicable,  and  overpayment credited against future obligations; provided, that any distribution from the Reorganized Debtor to a secured creditor that satisfied the Allowed Claim of such creditor shall be final when made and shall not be subject to any later true-up. The obligation of the Reorganized Debtor to distribute Net Profits shall end upon the earlier of (i) full payment of ServisFirst's and FTA's Allowed Secured Claims; and (ii) termination of the MASPO Contract, including any renewal periods, extensions and/or replacements  thereof; provided, that if the MASPO Contract terminates prior to the satisfaction of the

-17-

Allowed Secured Claims, any Net Profits generated to that point shall be distributed immediately, and on a final basis, to NOVO Tech, Inc., ServisFirst and FTA in order of priority to apply against such creditor's Allowed Claim. To the extent any Allowed Secured Claim remains unpaid upon termination of the MASPO Contract and after the final distribution of Net Profits, any such deficiency shall be treated as a Class 4 General Unsecured Claim.

Except as set forth in the Plan, the Reorganized Debtor will be released from any liability for the payment of any Claim asserted by the Debtor's pre-petition creditors, including but not limited to Administrative, Priority, Secured, Unsecured, Allowed, Disallowed, Contingent, Unliquidated, or Disputed Claims. Additionally, the Reorganized Debtor may assert its compliance with the provisions of the Plan as an affirmative defense to any action brought against it seeking recovery of a pre-petition Claim. Furthermore, the Reorganized Debtor shall also be entitled to plead the Release, Injunction and Exculpation provisions of Article VI of the Plan in any action brought against it by the holder of a Claim. Moreover, upon confirmation of the Plan, all Claim holders will be permanently barred from pursuing or asserting any liability, claim, or cause of action of any kind against the Reorganized Debtor except pursuant to the provisions of the Plan, in accordance with Article VI of the Plan.

Notwithstanding the preceding paragraph, ServisFirst shall receive a direct stream of net revenue payments from the proceeds of the MASPO Contract generated by the Reorganized Debtor. Specifically, from and after the Effective Date, and until ServisFirst's Allowed Secured Claim is paid in full, the Reorganized Debtor shall remit to ServisFirst, on periodic basis, as agreed to by ServisFirst and the Reorganized Debtor, but no less frequently than semi-annually, payments of the Net MASPO Contract Revenues, in amounts consistent with the lien priority of ServisFirst and as agreed upon between the Reorganized Debtor and ServisFirst, or as otherwise ordered by the Court. ServisFirst shall retain its lien upon the MASPO Contract and all proceeds therefrom until its Allowed Secured Claim is paid in full. Such payments shall be credited against ServisFirst's Allowed Secured Claim. Following full payment of ServisFirst's Allowed Secured Claim, FTA shall then receive a direct stream of net revenue payments from the proceeds of the MASPO Contract on a on periodic basis, as agreed to by FTA and the Reorganized Debtor, but no less frequently than semi-annually, in amounts consistent with FTA's junior lien priority and as agreed upon between the Reorganized Debtor and FTA, or as otherwise ordered by the Court, until FTA's Allowed Secured Claim is paid in full. The obligation of the Reorganized Debtor to make payments to ServisFirst and FTA shall end upon the earlier of (i) full payment of the respective Allowed Secured Claim or (ii) termination of the MASPO Contract, including any renewal periods, extensions and/or replacements thereof. For the avoidance of doubt, the "Net MASPO Contract Revenues" shall be all revenues generated from the MASPO Contract, less any actual, ordinary and necessary operating expenses of the Reorganized Debtor related exclusively to its performance under the MASPO Contract, as evidenced by a monthly income and expense statement in form and substance acceptable to NOVO Tech, Inc., ServisFirst and FTA, each of whom shall receive such income and expense statement for so loan as any portion of its respective Claim remains unpaid.

j. Creditors' Committee. No creditors' committee was formed in this matter.

k. Liquidating Trustee. Prior to Plan confirmation, the Debtor shall, with authorization of the Court as appropriate, identify and engage as Liquidating Trustee a professional holding suitable credentials and experience in similar engagements to perform the duties of the Liquidating Trustee and administer all assets held within the Liquidating Trust, whether liquidated or unliquidated, in a manner consistent with the Liquidating Trustee's obligations under the Liquidating Trust agreement.

l. De Minimis Distributions. Notwithstanding anything to the contrary contained in the Plan, the Debtor shall not be required to transmit Cash to the holder of an Allowed Claim in an impaired class of claims if the amount of Cash otherwise due is less than $25.00. All Cash not so distributed shall be deposited into the Unpaid Claims Reserve, and such Cash shall become the sole and exclusive property of the Debtor.

## B. Treatment of Executory Contracts and Unexpired Leases.

The Debtor intends to reject all leases, in which it has control, on the Effective Date. Pursuant to § 1123(b)(2) of the Bankruptcy Code, except for those executory contracts and unexpired leases, if any, assumed pursuant to the Plan or as to which the Debtor has filed prior to the Confirmation Date a motion to assume and assign or a motion to reject, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, including, without limitation, all executive and employee severance, vacation, benefit and retirement plans, contracts, and agreements, are deemed rejected pursuant to § 364(a) of the Bankruptcy Code as of the Effective Date.

**Notwithstanding the foregoing, the Debtor shall assume the MASPO Contract pursuant to the terms of a Confirmed Plan and shall not reject any portion of the MASPO Contract.**

Each party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such entities) asserting a claim for damages arising from such rejection shall file, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; provided, however, that (1) the Bar Date established for rejection damages claims in this Section of the Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by the Debtor before Confirmation for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely file a proof of claim in accordance with the Plan shall be forever enjoined and barred from asserting such Claim against the Debtor, the Estate, or any property of the Estate.

## C. Provisions Governing Distributions.

## 1. Procedure for Determination of Claims.

a. Objections to Claims. Notwithstanding the occurrence of the Confirmation Date, and except as to any Claim that has been Allowed prior to such date or pursuant to this Plan,

Case 25-81168-CRJ11    Doc 154    Filed 02/27/26    Entered 02/27/26 14:01:39    Desc
Main Document      Page 19 of 36

the Debtor, or any other Person authorized under § 502(a) of the Bankruptcy Code, may object to the allowance of any Claim against the Debtor or seek estimation thereof on any grounds permitted by the Bankruptcy Code; provided, however, that after the Effective Date, the Bankruptcy Court shall have exclusive authority and responsibility to adjudicate objections to Claims.

b. Disputed Claims. Payments or Distributions under the Plan on account of disputed claims shall be held in reserve pending the allowance or disallowance of the Claim. To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall promptly be returned to the Liquidating Trustee for deposit in the Unpaid Claims Reserve. To the extent that a disputed claim ultimately becomes an Allowed Claim, payments and distributions on account of such Allowed Claim shall be made in accordance with the provisions of the Plan.

**D. Distributions.**

1. Undeliverable Distributions. Except as otherwise provided herein, distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective proofs of Claim filed by such holders; (b) at the addresses set forth in any written notice of address change delivered to the Debtor after the date of the filing of any related proof of Claim; or (c) at the address reflected in the Schedules or the Debtor's records if no proof of Claim has been filed and if the Debtor has not received written notice of a change of address.

2. Manner of Payment. Distributions by the Liquidating Trustee may be made, at the option of the Liquidating Trustee, in cash, by wire transfer, or by check drawn on such accounts established by the Liquidating Trustee as necessary to effectuate the Plan.

3. Interest. Unless otherwise required by Final Order of the Bankruptcy Court or applicable bankruptcy law, interest shall not accrue or be paid after the Filing Date on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Filing Date on any Claim.

4. Fractional Dollars; De Minimis Distributions.

a. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

b. No interim distribution will be made on account of any Allowed Class 4 Claim to the holder of any such Allowed Class 4 Claim if the amount of such distribution for the Allowed Claim is less than $25.00. Immediately before the last distribution date on Unsecured Claims, the Liquidating Trustee shall (i) aggregate the amount of all distributions that would have been made on account of an Allowed Claim but for this de minimis provision and (ii) on the last distribution date, make a distribution on account of such Allowed Claim in accordance with the Plan.

5. Reserve for Disputed Claims. Except as otherwise provided in the Plan, no distributions shall be made on account of a disputed claim until such claim becomes an Allowed Claim. In making

-20-

any distribution on Allowed Claims, the Liquidating Trustee shall calculate the amount of such distribution (for purposes of making a Pro Rata calculation) as if each disputed claim were an Allowed Claim, unless the Bankruptcy Court enters an order specifying that the disputed claim should be treated as being a different amount for purposes of such calculation.

6.  Setoffs. Subject to § 553 of the Bankruptcy Code, in the event the Debtor has a claim of any nature whatsoever against a holder of a Claim, the Liquidating Trustee may, but is not required to, set off the Debtor's claim against such Claim (and any distributions or other rights to receive property arising out of such Claim under the Plan) unless any such claim of the Debtor is or will be released under the Plan.

7.  Reliance on Claims Register. In making distributions under the Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained by the Bankruptcy Court or its designee as claims agent in the case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

### E. Reservation of the Rights of the Estate.

All claims, rights to payment, causes of action, cross-claims, and counterclaims of the Debtor of any kind or nature whatsoever including, without limitation, causes of action and avoidance actions against third parties arising before the Confirmation Date that have not been disposed of prior to the Effective Date shall be preserved, treated in accordance with the Plan, and transferred to the Liquidating Trust. Without limitation of the foregoing, pursuant to § 1123(b) of the Bankruptcy Code, the Liquidating Trustee or the Reorganized Debtor may enforce, for the benefit of the holders of Allowed Class 1, 2, 3, 4, and 5 Claims (a) the Causes of Action and avoidance actions; (b) all Claims, causes of action, and related recoveries against any person; and (c) all other claims, rights to payment and causes of action, cross claims, and counterclaims of any nature or type whatsoever, at law or in equity, against any person.

### VIII. TAX CONSEQUENCES OF PLAN.

The following summary discusses the material federal income tax consequences expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code"), applicable Treasury Regulations, judicial authority, and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS").

**EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN.**

**A. Federal Income Tax Consequences to the Debtor.**

NOTHING STATED IN THE DISCUSSION WHICH FOLLOWS IS OR SHOULD BE CONSTRUED AS TAX ADVICE TO ANY CREDITOR OF THE DEBTOR. CREDITORS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.

The following is intended to be only a summary of certain tax considerations under current law that may be relevant to the creditors of the Debtor.

CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS WITH REFERENCE TO THEIR OWN TAX SITUATION.

1. The Plan. The terms of the Plan provide for payment provisions which should be analyzed individually for each creditor with its tax advisor.

2. Creditors.

> a. To the extent that creditors receive payments under the Plan as interest, such Creditors will recognize interest income under § 51(a)(4) of the Code.

> b. To the extent that, pursuant to the Plan, creditors receive cash payments from the Liquidating Trustee in satisfaction of their claims, such creditors may recognize gain or loss, as the case may be, equal to the difference between the amount of the cash so received and their adjusted basis in such claim.

> c. The gain or loss to be recognized by such creditors will be either ordinary income or capital gain depending on, among other factors, the status of the creditor and the nature of the Claim in the hands of the creditor.

3. Bad Debt Deduction. Section 166 of the Code permits the deduction of debts which have become totally or partially worthless.

4. Income from the Discharge of Indebtedness. As a general rule, § 61(a)(12) of the Code requires that gross income for federal income tax purposes include income from the discharge of indebtedness. However, § 108(a)(1) of the Code specifically excludes discharge of indebtedness income from gross income if the discharge occurs in a Title 11 (bankruptcy) case. Therefore, the Debtor, the Reorganized Debtor, or the Liquidating Trust will not recognize income on the discharge of indebtedness pursuant to the Plan.

5. State and Local Taxes. In addition to the federal income tax consequences described above, creditors should consider potential state and local tax consequences. In general, the State of Alabama imposes a tax against income of residents and non-residents of Alabama who have income from sources within the state of Alabama. The Alabama income tax is imposed on taxable income at a graduated rate of up to five percent (5%).

-22-

## IX. PLAN CONFIRMATION PROCESS.

### A. Confirmation.

At the Confirmation Hearing, the Bankruptcy Court shall confirm the Plan if the Plan satisfies all requirements of § 1129(a) include the following: (1) the Plan must be accepted by all impaired classes, (2) the Plan must be feasible, and (3) with respect to each holder of a Claim or Interest that does not vote to accept the Plan, the Plan must be in the "best interests" of such holder in that the Plan provides for a distribution to the holder that is not less than the amount such holder would receive in a hypothetical Chapter 7 liquidation of the Debtor.

### B. Acceptance of Plan by Voting.

For the Plan to be accepted by an impaired class of claims, it must be accepted by holders of Claims in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims in such Class held by creditors that actually vote. Classes 2, 3, 4, and 5 in this Plan are impaired and entitled to vote.

If any impaired Class does not accept the Plan, and at least one impaired Class accepts the Plan, the Debtor may seek confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code.

1. Unfair Discrimination. A plan does not discriminate unfairly with respect to a non-accepting Class if it protects the rights of such Class in a manner consistent with the treatment of other Classes with similar rights.

2. Fair and Equitable. A plan does not discriminate unfairly if either (a) each holder of a Claim or Interest in the non-accepting Class receives or retains under the Plan property of a value equal to the Allowed amount of such Claim or Interest; or (b) the holders of Claims or interests that are junior to such Class receive or retain nothing under the Plan on account of such Claims or interests (the "Absolute Priority Rule").

If necessary, the Debtor intends to seek confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code.

### C. Feasibility.

As a condition to confirmation of the Plan, § 1129(a) of the Bankruptcy Code requires that Confirmation is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization. This Plan provides for the liquidation of the Debtor's assets except for the MASPO Contract. Since, however, the Reorganized Debtor shall continue to operate the corporate entity post confirmation, the Debtor is not expected to need further financial reorganization. Accordingly, the Plan is feasible.

### D. Best Interests of Creditors Test.

Confirmation requires that each holder of an Allowed Claim and interest that is included in an Impaired Class (a) accept the Plan or (b) receive or retain under the Plan, property of a value, as

of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

The proposed Plan meets the best-interests-of-creditor's test. The Plan creates a mechanism whereby not only are a percentage of Net Profits from the MASPO Contract paid to the Liquidating Trust and then Allowed Claims (which would not happen in a Chapter 7 liquidation), but also Trust Assets are marshalled and liquidated for the benefit of Allowed Claims. Based on the foregoing, holders of Allowed Claims and interests in Classes 1 through 3 would not receive full distribution in Chapter 7, and Classes 4 and 5 would not receive any distribution. The Plan, therefore, provides for distributions not less than the value that such holders would receive in Chapter 7.

## X. ALTERNATIVES TO PLAN.

As an alternative to confirming the Plan, the Bankruptcy Court could convert the case to a case under Chapter 7 of the Bankruptcy Code, dismiss the case, or consider another Chapter 11 plan.

### A. Liquidation under Chapter 7.

If the Plan is not confirmed, and no other alternative plan is proposed, the Bankruptcy Court could find cause to convert the case to a case under Chapter 7 of the Bankruptcy Code. In Chapter 7, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to the Debtor's creditors in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that conversion of the case to a case under Chapter 7 of the Bankruptcy Code would result in lower distributions to all Creditors. The majority of the assets of the Debtor, are subject to liens of the holder of ServisFirst. In a Chapter 7 case, ServisFirst likely would be able to obtain relief from automatic stay under § 362(d) to foreclose on its liens. Moreover, post-petition the DIP Lender obtained a lien upon the MASPO Contract and all proceeds from the operation of that contract. Consequently, there are no unencumbered assets which would be available to a Chapter 7 Trustee to liquidate for the benefit of the Estate and its creditors, so unsecured creditors would not receive a distribution in the event of a conversion to Chapter 7.

As disclosed on the Debtor's Summary of Assets and Liabilities, the total assets of the Debtor are $5,888,069.12 and the total liabilities are $14,937,691.22.

### B. Comparison of Plan.

The Debtor is of the opinion that the proposed Plan provides more for each class of creditors and represents the statutorily mandated payment of priority claims.

### C. Dismissal of Case.

Dismissal of the case likely would have a disastrous result on the value of the Debtor's assets and the return to holders of Claims and interests. Without limitation, dismissal of the case would terminate the automatic stay and allow Secured Creditors to immediately foreclose its liens on substantially all of the Debtor's assets. Moreover, dismissal of the case would leave the Debtor without sufficient funding to continue to service the MASPO Contract, which is the largest source of the Debtor's income. The Debtor believes that dismissal of the case is not a viable alternative to the Plan.

-24-

**D. Alternative Chapter 11 Plan.**

If the Plan is not confirmed, the Debtor and other parties in interest, including, without limitation, holders of Claims and interests and any official statutory committee could propose an alternative plan. The Debtor believes, however, that the Plan will provide the greatest and most expeditious return to holders of Claims and interests.

## XI. CONCLUSION/RECOMMENDATION.

Based on the foregoing, the Debtor believes that the Plan is the best alternative to maximize the value of the Debtor's assets and to maximize the return to creditors and equity security holders. The Debtor believes confirmation of the Plan is in the best interests of all parties in interest in the case.

**The Debtor recommends that all parties entitled to cast ballots vote to ACCEPT the Plan.**

Respectfully submitted February 27, 2026.

Debtor and Debtor-in-possession
ACQUISITION INTEGRATION, LLC

*/s/ David Bristol*
DAVID BRISTOL, MEMBER

*/s/ Maura Staten*
MAURA STATEN, MANAGER

/*s/ Stuart M. Maples*
STUART M. MAPLES
(ASB-1974-S69S)
COUNSEL FOR DEBTOR IN
POSSESSION
THOMPSON BURTON, PLLC
200 Clinton Avenue West, Suite
1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
smaples@thompsonburton.com

-25-

**CERTIFICATE OF SERVICE**

I hereby certify that, on the same date as this filing, I have served a copy of the foregoing on those parties requesting notice by depositing the same in the United States Mail, postage prepaid and properly addressed, or if the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures.

*/s/ Stuart M. Maples*
*STUART M.* MAPLES

Case 25-81168-CRJ11    Doc 154    Filed 02/27/26    Entered 02/27/26 14:01:39    Desc
Main Document    Page 26 of 36

**EXHIBIT A**

**Bidding Procedures**

-27-

Main Document        Page 27 of 36

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | |
| | **)** | |
| ACQUISITION INTEGRATION, LLC, | **)** | CASE NO. 25-81168-CRJ11 |
| | **)** | CHAPTER 11 |
| | **)** | |
| Debtor. | **)** | |

## BIDDING PROCEDURES

By its Chapter 11 Plan of Reorganization[1] (the "Plan"), Acquisition Integration, LLC (the "Debtor"), which is a debtor and a debtor in possession in the Chapter 11 case pending in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division (the "Bankruptcy Court"), seeks approval of, among other things, the procedures through which it will determine the highest or otherwise best offer for the sale of the Equity Interest in the Debtor, including the MASPO Contract (the "Offered Assets").

## Offered Assets To Be Sold

Pursuant to the terms of its Plan, Debtor is selling the Equity Interest in the Debtor (the "Offered Assets"), which have been cancelled and terminated as provided for in the Plan and which includes all membership interests held by David P. Bristol and the right to operate the Debtor's business, including performance of the MASPO Contract (U.S. Army Contract No. W58RGZ21-D-0089). The Equity Interest shall be sold in conjunction with confirmation of the Plan pursuant to 11 U.S.C. § 1141(d)(1)(B) and shall be transferred to the Successful Bidder free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "Interests"), **except that the following Interests shall survive the sale and shall remain obligations of the Reorganized Debtor:** (i) the first-priority DIP lien of NOVO Tech, Inc. upon the MASPO Contract and all proceeds therefrom; (ii) the first-priority lien of ServisFirst Bank ("SFB") upon substantially all assets of the Debtor, including the MASPO Contract and proceeds therefrom (subordinate only to the DIP lien); and (iii) the junior lien of Flight Test Aerospace ("FTA") upon the MASPO Contract and proceeds therefrom (subordinate to both the DIP lien and SFB's lien). The Successful Bidder, as the new equity owner of the Reorganized Debtor, shall be bound by and assume all obligations of the Reorganized Debtor under the Plan, including without limitation the obligation to make semiannual Net Profits payments to SFB, FTA, and the Liquidating Trust as provided in the Plan. For the avoidance of doubt, all other Interests shall attach to the net proceeds of the sale with the same extent, validity, and priority as such Interests had against the Offered Assets.

1

**Bidding Process**

The Debtor shall (a) determine whether any person is a Qualified Bidder (as defined below), (b) coordinate the efforts of Preliminarily Interested Investors (as defined below) in conducting their due diligence investigations, (c) receive offers from Bidders (defined below), and (d) negotiate any offers made to purchase the Offered Assets.

**Marketing and Solicitation of Bids**

The Debtor shall conduct an active marketing and solicitation process for the Offered Assets consistent with the requirements of the Plan. The Debtor's marketing and solicitation efforts shall include:

(a) Contacting identified industry participants in the U.S. commercial and defense aerospace industry, including existing government contractors with knowledge of Foreign Military Sales (FMS) programs; and

(d) Running the Auction for a period of at least _____ days after Court approval of these Bidding Procedures to allow adequate time for potential bidders to conduct due diligence.

The Debtor expects that Flight Test Aerospace Inc. ("FTA") will participate in the Auction with a cash bid.

**Key Dates For Bidders.**

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in an auction to be conducted by the Debtor (the "Auction") and to submit bids for the Offered Assets. The Debtor shall assist Preliminarily Interested Investors in conducting their due diligence investigations and shall accept Bids (as defined below) until _____, 2026 at 4:00 p.m. (Central Standard Time) (the "Bid Deadline").

| | |
|---|---|
| _____, 2026, 4:00 p.m. (CST) | Bid Deadline – Due Date for Bids |
| _____, 2026, 10:00 a.m. (CST) | Auction (if necessary) |
| TBD | Closing |

All due diligence requests must be directed to Debtor's counsel, Thompson Burton, PLLC, 200 Clinton Avenue, Suite 1000, Huntsville, Alabama, 35801, Attn: Stuart M. Maples, smaples@thompsonburton.com. All requests for diligence must be made by _____, 2026 at 4:00 p.m. (Central Standard Time).

**Auction Qualification Process**

To be eligible to participate in the Auction, each offer (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be reasonably determined by the Debtor, with advice of the Liquidating Trustee, to satisfy each of the following conditions:

Case 25-81168-CRJ11    Doc 154    Filed 02/27/26    Entered 02/27/26 14:01:39    Desc Main Document      Page 29 of 36

(a) <u>Minimum Bid and Minimum Cash Down Payment</u>: Each Bid must provide for a total purchase price no less than the minimum bid amount to be set by the Debtor in the sale motion (the "<u>Minimum Bid</u>"). Each Bid must also include, as a condition of closing, a cash payment at closing (the "<u>Minimum Cash Down Payment</u>") in an amount sufficient to pay in full, on or before the Effective Date of the Plan: (i) all Allowed Administrative Expense Claims, including without limitation the professional fees of Thompson Burton, PLLC (estimated at approximately $150,000.00); and (ii) all Allowed Priority Claims in Class 1 (estimated at approximately $99,612.01). Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim (estimated outstanding balance approximately $750,000). Any remaining balance of the total purchase price above the Minimum Cash Down Payment may be structured as payments over time as set forth in the Bid, subject to the requirements of the Plan. The Minimum Cash Down Payment amount shall be set forth in the Debtor's sale motion and will be disclosed to all Qualified Bidders.

(b) <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Transaction by the equity holder(s) of such Bidder.

(c) <u>Disclosure of Identity of Bidder</u>: Bid must fully disclose the identity and contact information of each entity that will be bidding for or purchasing the Offered Assets or otherwise participating in connection with such Bid.

(d) <u>Proof of Financial Ability to Perform</u>: The Debtor may require any Bidder to provide written evidence that the Debtor may reasonably conclude that the Bidder has the necessary financial ability to: (i) pay the Minimum Cash Down Payment in full at closing; (ii) satisfy any remaining structured payment obligations above the Minimum Cash Down Payment; and (iii) continue operating the Reorganized Debtor and performing the MASPO Contract post-closing, including meeting all obligations to ServisFirst Bank and FTA under the Plan.

(e) <u>Contingencies</u>: Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(f) <u>Cash Bids Required; No Credit Bidding</u>: All Bids for the Equity Interest must be cash bids. No Bidder may credit bid any prepetition or post-petition claim in connection with the sale of the Equity Interest of the Debtor.

(g) <u>Acknowledgment of Surviving Obligations</u>: Each Bid must include a written acknowledgment, in form and substance acceptable to the Debtor, that the Successful Bidder, as the new equity owner of the Reorganized Debtor, shall be bound by and expressly assumes all obligations of the Reorganized Debtor under the confirmed Plan, including without limitation:

(i) The obligation to make semiannual Net Profits payments to SFB, then to FTA (after SFB is paid in full), and thereafter to the Liquidating Trust, from the net proceeds of the MASPO Contract, no less than semiannually, with the first payment due six (6) months after the Effective Date, and an annual true-up within ninety (90) days after each calendar year end;

(ii) The DIP Lender (NOVO Tech, Inc.) retains a first-priority lien on the MASPO Contract and all proceeds; SFB retains its senior lien upon the MASPO Contract and proceeds (subordinate only to the DIP lien); and FTA retains a junior lien upon the MASPO Contract and proceeds (subordinate to the DIP lien and SFB's lien), each of which remains enforceable against the Reorganized Debtor until the respective claims are paid in full;

(iii) The obligation to prepare and deliver semiannual Periodic Accountings to SFB, FTA, and the Liquidating Trustee no later than forty-five (45) days after each semiannual payment period, and annual true-up accountings within ninety (90) days after each calendar year end, in the form required by the Plan; and

(iv) The obligation not to encumber, transfer, assign, or otherwise dispose of the Reorganized Debtor's interest in the MASPO Contract without the prior written consent of SFB (and FTA until FTA's claim is paid in full).

(h) <u>Irrevocable</u>: Each Bid must be irrevocable until the later of (i) closing of the Sale, and (ii) _____, 2026.

(i) <u>Compliance with Information Requests</u>: The Bidder submitting the Bid must have complied with reasonable request for additional information from the Debtor (as described above) to the reasonable satisfaction of the Debtor.

(j) <u>Bid Deadline</u>: The following parties must receive a Bid in writing, on or before _____, 2026 at 4:00 p.m. (Central Standard Time) (the "<u>Bid Deadline</u>"): (1) Debtor's counsel, Thompson Burton, PLLC, 200 Clinton Avenue West, Suite 1000, Huntsville, Alabama, 35801, Attn: Stuart M. Maples, smaples@thompsonburton.com.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>", and such Bidder shall constitute a "<u>Qualified Bidder</u>", provided that if the Debtor receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Debtor may provide the Bidder with the opportunity to remedy any deficiencies prior to the Auction; <u>provided</u>, <u>further</u>, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtor to the satisfaction of

4

the Debtor, the Debtor may disqualify any Qualified Bidder and Qualified Bid, in the Debtor's discretion, and such Bidder shall not be entitled to attend or participate in the Auction unless such Bidder is also a creditor of the Debtor.

The Debtor shall inform each Bidder whether the Debtor will consider such Bidder's Bid to be a Qualified Bid no later than two (2) business days (to the extent practicable) before the Auction. The Debtor shall further provide at that time a copy of all Qualified Bids (if any) to all Qualified Bidders (if any).

## Application of Sale Proceeds

The sale proceeds generated from the sale of the Equity Interest, following the payment of all costs associated with the sale, shall be applied in the following order of priority:

First: The Minimum Cash Down Payment shall be used to pay in full all outstanding Allowed Administrative Expense Claims and all Allowed Priority Claims in Class 1 on or before the Effective Date.

Second: Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim.

Third: The remaining sale proceeds above the Minimum Cash Down Payment shall be distributed to holders of Allowed Claims according to the priorities set forth in the Plan, with ServisFirst Bank's Allowed Secured Claim ($1,297,252.83) paid in priority to the Allowed Secured Claim of FTA ($254,373.01).

Fourth: If proceeds remain following full payment of Class 2 and Class 3 claimants, any remaining funds will become assets of the Liquidating Trust for distribution to Class 4 General Unsecured Creditors. Additionally, the Plan provides for a minimum contribution of $50,000 to the Liquidating Trust, carved out from any Allowed Secured Claims, from the proceeds of the sale of the Equity Interest.

## Structured Payment Bids

Bids may include structured payment offers for any amounts above the Minimum Cash Down Payment, subject to the following requirements:

(a) Any structured payment component must be supported by adequate assurance of the Successful Bidder's financial ability to meet all payment obligations;

(b) Structured payments must not impair the Reorganized Debtor's ability to make semiannual Net Profits payments to SFB, FTA, and the Liquidating Trust as required by the Plan; and

(c) The terms of any structured payment arrangement are subject to approval by the Bankruptcy Court at the Sale Hearing.

**<u>Auction</u>**

If more than one Qualified Bid is received by the Bid Deadline, the Debtor will conduct an auction (the "<u>Auction</u>") to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including the amount of the Minimum Cash Down Payment offered, the terms of any structured payment arrangement, and the financial ability of the Bidder to perform all Plan obligations.

If only one Qualified Bid is received by the Bid Deadline, the Debtor shall not conduct the Auction and shall accept the Qualified Bid received by the Bid Deadline, in which case such Qualified Bid shall be the Successful Bid and the applicable Qualified Bidder shall be the Successful Bidder.

**Time and Place for Auction.**

The Auction shall take place on _____, 2026, commencing at 10:00 a.m. (Central Standard Time) at the office of counsel for the Debtor, Thompson Burton, PLLC, 200 Clinton Avenue West, Suite 1000, Huntsville, Alabama, 35801, or virtually at such time and place as the Debtor shall notify all Qualified Bidders and their counsel. The Auction shall be conducted according to the following procedures:

**Participation in Auction.**

Only the Debtor and any Qualified Bidder, in each case, along with their representatives and counsel, or such other parties as the Debtor shall determine, shall participate at the Auction and only such Qualified Bidders will be entitled to make any Bids at the Auction. Subject to the foregoing participation limitations, the Auction will be conducted openly and all creditors of the Debtor will be permitted to attend.

**The Debtor Shall Conduct the Auction.**

The Debtor and its professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Debtor may conduct the Auction in the manner it reasonably determines will result in the highest or otherwise best offer for any of the Debtor's assets. The Debtor shall use its best efforts to provide each Qualified Bidder participating in the Auction with the highest or otherwise best Qualified Bid received before the Bid Deadline (such highest or otherwise best Qualified Bid the "<u>Auction Baseline Bid</u>"). In addition, at the start of the Auction, the Debtor shall describe the terms of the Auction Baseline Bid. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures and (c) has consented to the core jurisdiction of the Bankruptcy Court.

6

**Terms of Overbids.**

An "<u>Overbid</u>" is any bid made at the Auction subsequent to the Debtor's announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a) <u>Minimum Overbid Increments</u>: Any Overbid shall be made in increments of Ten Thousand and No/100 Dollars ($10,000.00) at the Auction (the "<u>Minimum Overbid</u>"). The Debtor reserves the right to announce reductions in the Minimum Overbids at any time during the Auction.

(b) <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions and requirements (including the time that such Bid must be irrevocable) for a Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline and any additional deposit shall not apply. Any Overbid must include a Minimum Cash Down Payment at least equal to the Minimum Cash Down Payment required for Qualified Bids.

At the Debtor's discretion, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) reasonably demonstrating such Bidder's ability to close the Transaction proposed by such Overbid.

**Announcement and Consideration of Overbids.**

(a) <u>Announcement of Overbids</u>: The Debtor shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, the Minimum Cash Down Payment component, and any structured payment terms, and such other terms as the Debtor reasonably determines will facilitate the Auction.

(b) <u>Consideration of Overbids</u>: Subject to the deadlines set forth herein, the Debtor reserves the right, in its reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussion between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount.

(c) <u>Closing the Auction</u>: The Auction shall continue until there is one Qualified Bid for the Offered Assets that the Debtor determines in its reasonable business judgment is the highest or best Qualified Bid at the Auction. Thereafter, the Debtor shall select such Qualified Bid which produces the highest or best recovery to the estate, as the overall highest or best Qualified Bid (such Bid, the "<u>Successful Bid</u>", and the Bidder submitting such Successful Bid, the "<u>Successful Bidder</u>"). In making this decision, the Debtor shall consider the total net recovery to the estate, the Minimum Cash Down Payment, the ability of the Bidder to perform all Plan obligations (including semiannual Net Profits payments to SFB, FTA, and the Liquidating Trust), and all other relevant criteria and information.

(d) The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.

(e) Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder. The Successful Bidder shall have the Bid Price (including the full Minimum Cash Down Payment) delivered to the Debtor's Counsel by wire on or before _____, 2026, at 3:00 p.m. (Central Standard Time).

**Backup Bidder.**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid at the Auction, as determined by the Debtor, in the exercise of its business judgment, will be designated as the backup bidder (the "Backup Bidder").

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, the Backup Bidder will be deemed to have the new prevailing bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Bidder, and the Backup Bidder shall consummate the transaction described in the Plan. The Backup Bidder shall have the Bid Price (including the full Minimum Cash Down Payment) delivered to the Debtor's Counsel by wire on or before the next Business Day after notice by the Debtor, by 3:00 p.m. (Central Standard Time).

The Debtor, on its behalf and on behalf of its estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

**Additional Procedures.**

The Debtor may announce at the Auction procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures.

**Consent to Jurisdiction and Authority as Condition to Bidding.**

Each Qualified Bidder shall be deemed to have (a) consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the Bidding Procedures, its Asset Purchase Agreement, the Auction or the construction and enforcement of documents relating to any Transaction, (b) waived any right to a jury trial in connection with any disputes relating to the Debtor, the Bidding Procedures, its Asset Purchase Agreement, the Auction or the construction and enforcement of documents relating to any Transaction and (c) consented to the entry of a final order or judgment in any way related to the Debtor, the Bidding Procedures, its Asset Purchase Agreement, the Auction or the construction and enforcement of documents relating to any Transaction if it is determined that the Bankruptcy

Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

**<u>Reservation of Rights of the Debtor</u>**

Except as otherwise provided in the Bidding Procedures or the Plan and Disclosure Statement, the Debtor further reserves the right to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, (3) does not include the required Minimum Cash Down Payment, (4) attempts to credit bid any claim against the Equity Interest, or (5) contrary to the best interest of the Debtor and its estate; (e) waive terms and conditions set forth herein with respect to any or all Bidders; (f) impose additional terms and conditions with respect to any or all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (i) modify the Bidding Procedures and implement additional procedural rules that the Debtor determines, in its reasonable business judgment, will better promote the goals of the bidding process and discharge the Debtor's fiduciary duties and are not inconsistent with any Bankruptcy Court order.

*/s/ Stuart M. Maples*
STUART M. MAPLES
(ASB-1974-S69S)

THOMPSON BURTON PLLC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
smaples@thompsonburton.com
Tel: (256) 489-9779
Fax: (256) 489-9720

¹ All capitalized terms not specifically defined herein shall have the defined meaning outlined in the Debtor's Plan.

9
