IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| IN RE: | **)** |
| ACQUISITION INTEGRATION, LLC, | **)** |
| | **)** CASE NO. 25-81168-CRJ11 |
| EIN: XX-XXX9425 | **)** CHAPTER 11 |
| | **)** |
| DEBTOR. | **)** |

# THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
# FOR ACQUISITION INTEGRATION, LLC

# DATED FEBRUARY 27, 2026

**THOMPSON BURTON PLLC**
Stuart M. Maples
200 Clinton Avenue West, Suite 1000
Huntsville, AL 35801
Tel:     256.489.9752
smaples@thompsonburton.com

*Counsel for Debtor in Possession*

**TABLE OF CONTENTS**

ARTICLE I DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION ......... 5

    **Section 1.01 Defined Terms**............................................................................................. 5

    **Section 1.02 Other Terms.**............................................................................................. 12

    **Section 1.03 Rules of Construction.**............................................................................. 12

    **Section 1.04 Exhibits, Supplements, Appendices, and Schedules.**................................. 13

    **Section 1.05 Controlling Document.**............................................................................. 13

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ...................................................... 13

    **Section 2.01 Administrative Claims** .............................................................................. 13

    **Section 2.02 Administrative Claim Bar Date.** ................................................................ 13

ARTICLE III CLASSIFICATION ANDTREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS.................................................................................................... 14

    **Section 3.01  Special Provision Governing Unimpaired Claims**.......................................... 14

ARTICLE IV VOTING AND DISTRIBUTIONS UNDER THE PLAN .................................. 18

    **Section 4.01  Voting of Claims and Interests**................................................................. 18

    **Section 4.02  Distributions Under the Plan**.................................................................... 19

    **Section 4.03  Distribution Deadlines**............................................................................. 19

    **Section 4.04  Manner of Payment Under the Plan**......................................................... 19

    **Section 4.05  De Minimis Distributions**.......................................................................... 19

    **Section 4.06  Unclaimed Property** ................................................................................. 19

    **Section 4.07  Time Bar to Cash Payments** .................................................................... 19

ARTICLE V IMPLEMENTATION OF PLAN ......................................................................... 20

    **Section 5.01  Implementation**...................................................................................... 20

    **Section 5.02  Funding for this Plan**............................................................................. 20

    **Section 5.03  Funding from Reorganized Debtor**......................................................... 20

    **Section 5.04  Continuing Existence**.............................................................................. 21

    **Section 5.05  Closing of the Chapter 11 Case** ............................................................. 21

    **Section 5.06  Divestiture of Equity of Interest in Debtor** ............................................. 21

    **Section 5.07 Rights, Powers and Duties of the Liquidation Trust and the Liquidation Trustee.** .................................................................................................................... 24

    **Section 5.08 Liquidation Trust Interests.** ..................................................................... 25

    **Section 5.09 Implementation**....................................................................................... 26

    **Section 5.10 Funding for the Plan.** ............................................................................... 26

2

**Section 5.11 Cancellation of Liens.** .................................................................................. 26

**Section 5.12 General Settlement of Claims.** ....................................................................... 26

**Section 5.13 Notice of Effective Date.** .............................................................................. 26

**Section 5.14 Confidentiality, Privilege.** ............................................................................. 26

**Section 5.15 Liquidation Trust Accounts.** .......................................................................... 27

**Section 5.16 Retention of Professionals.** ........................................................................... 27

**Section 5.17 Distributions to Holders of Claims and Equity Interests.** ............................. 27

**Section 5.18 Disputed Claims** ........................................................................................... 28

**Section 5.19 Miscellaneous Distribution Provisions** ......................................................... 29

**Section 5.20  Allocation of Payments** ............................................................................... 29

**Section 5.21  Setoffs** ........................................................................................................ 29

**Section 5.22 Exemption from Transfer Taxes.** .................................................................. 29

**Section 5.23 Disputed Payments.** ..................................................................................... 30

**Section 5.24 Withholding Taxes.** ...................................................................................... 30

**Section 5.25 Request for Expedited Determination of Taxes** ............................................ 30

**Section 5.26 Resignation or Removal of Liquidation Trustee.** .......................................... 30

**Section 5.27 Liability; Indemnification; No Agency Relationship.** .................................... 30

ARTICLE VI EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION  31

**Section 6.01  Binding Effect** ............................................................................................ 31

**Section 6.02  Term of Injunctions or Stays** ...................................................................... 31

**Section 6.03  Retention of Rights and Causes of Action** .................................................. 31

**Section 6.04 Releases by the Debtor[s] and [its]their Estate.** ............................................ 32

**Section 6.05 Injunction.** .................................................................................................. 32

**Section 6.06 Compromise of Controversies** ..................................................................... 33

**Section 6.07  Solicitation of Plan** .................................................................................... 33

**Section 6.08  Post-Confirmation Activity** ........................................................................ 34

**Section 6.09. Avoidance Actions** ..................................................................................... 34

ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 34

**Section 7.01  Executory Contract and Unexpired Leases** .................................................. 34

**Section 7.02  Rejection Damages Bar Date** ...................................................................... 34

**Section 7.03  Effect of Post-Confirmation Rejection** ....................................................... 34

ARTICLE VIII CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE
DATE .................................................................................................................................. 35

3

**Section 8.01  Conditions to Confirmation**..................................................................35

**Section 8.02  Conditions to Occurrence of Effective Date**...................................35

ARTICLE IX CONFIRMABILITY AND SEVERABILITY OF THE PLAN...........................36

ARTICLE X ADMINISTRATIVE PROVISIONS ........................................................................36

**Section 10.01 Retention of Jurisdiction.**..................................................................36

**Section 10.02 Courts of Competent Jurisdiction.**.................................................38

**Section 10.03 Governing Law.** .................................................................................38

**Section 10.04 Continuing Effect of Sale Order.** ..................................................38

**Section 10.05 Effectuating Documents and Further Transactions.**....................38

**Section 10.06 Waiver of Bankruptcy Rule 7062.**..................................................38

**Section 10.07 No Admissions.**..................................................................................38

**Section 10.08 Payment of Statutory Fees.**.............................................................38

**Section 10.09 Abandonment of Certain Assets.** ...................................................38

**Section 10.10 Books and Records.** ..........................................................................39

**Section 10.11 Amendments** ......................................................................................39

**Section 10.12 Successors and Assigns.**...................................................................39

**Section 10.13 Confirmation Order and Plan Control.**..........................................39

**Section 10.14 Notices.**...............................................................................................40

**Section 10.15 Post-Effective Date Notice.** .............................................................40

**Section 10.16 Substantial Consummation.**.............................................................41

**Section 10.17 Post-Confirmation Fees and Reports.**............................................41

**Section 10.18 Deemed Acts.**.....................................................................................41

## INTRODUCTION

Debtor Acquisition Integration, LLC proposes the following plan of reorganization (the "**Plan**") pursuant to Chapter 11 of title 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, as well as a summary and analysis of the Plan and other related matters, including distributions to be made under the Plan. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Only holders of certain Claims and Equity Interest specified in Article III are entitled to vote on the Plan.

**ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR EQUITY INTEREST ARE URGED TO CAREFULLY READ THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE VI. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

**Section 1.01     Defined Terms**. For the purpose of the Plan, the following terms set forth in this Article I shall have the respective meanings set forth below.

**"Administrative Claim"** means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Professional Fee Claims; (c) Bankruptcy Administrator Fees; and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court, including the DIP Claim.

**"Allowed**," with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by the Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); (d) is determined to be valid by the Liquidating Trustee; or (e) is otherwise allowed by Final Order,

5

including, without limitation, the Confirmation Order, after notice and a hearing. A Claim that is not timely filed (or not deemed timely filed) shall not be Allowed for purposes of distribution under the Plan.

"**Assets**" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash (including proceeds from the sale of the Equity Interest), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds from all of the foregoing.

"**Available Cash**" means, as of any given Distribution Date, all of the Debtor's Cash, less the remaining balances in the Disputed Claims Reserve Account, and the Administrative Claims Fund.

"**Avoidance Action**" means all avoidance actions including all Causes of Action under Chapter 5 of the Bankruptcy Code.

"**Ballot**" means the ballots accompanying the Disclosure Statement upon which holders of Impaired Claims entitled to vote may indicate their acceptance or rejection of the Plan, which must be actually received on or before the Voting Deadline in accordance with the procedures governing the solicitation process.

"**Bankruptcy Administrator**" means the office of the Bankruptcy Administrator for the Northern District of Alabama

"**Bankruptcy Administrator Fees**" means all fees and charges assessed against the Estate by the Bankruptcy Administrator and due pursuant to section 1930 of title 28 of the United States Code.

"**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or as hereafter amended, as applicable to the Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for Northern District of Alabama, Northern Division, which has jurisdiction over the Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any applicable rules of the Bankruptcy Court, as amended, from time to time and as applicable to the Chapter 11 Case.

"**Bar Date**" means the deadline established by the Bankruptcy Court as the last date for all creditors to file a Proof of Claim in this case, which date was September 30, 2025.

"**Bidding Procedures Order**" means the bidding procedures for the sale of the shares of stock of Debtor outlined in Article V. Bidding Procedures are attached as **Exhibit A** of this Plan.

"**Business Day**" means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document      Page 6 of 62

**"Cash"** means cash and cash equivalents denominated in U.S. dollars.

**"Causes of Action"** means any and all claims, rights, defenses, offsets, recoupments, and causes of action that could have been brought or can be brought now by or on behalf of the Debtor or of the Estate under the Bankruptcy Code or federal, state, common, or other law arising before, on, or after the Petition Date, whether they are known or unknown, direct or indirect, reduced or not reduced to judgment, disputed or undisputed, suspected or unsuspected, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to: (a) those referred to in the Disclosure Statement; (b) Avoidance Actions; (c) derivative claims; (d) rights of setoff or recoupment; and (e) claims on contracts or breaches of duty imposed by law.

**"Chapter 11 Case"** means the case commenced under Chapter 11 of the Bankruptcy Code by the Debtor, Chapter 11 Case No. 25-81168-CRJ11, currently pending before the Bankruptcy Court.

**"Claim"** means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor or the Reorganized Debtor, whether or not asserted, whether or not the facts or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim.

**"Class"** means a category of Claims or Equity Interest set forth in Article III of the Plan.

"**Collateral**" means any Assets or interest in Assets of the Estate subject to an unavoidable Lien to secure the payment or performance of a Claim.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Case.

**"Confirmation Hearing"** means the hearing or hearings conducted by the Bankruptcy Court to consider confirmation of the Plan as it may be modified hereafter from time to time.

**"Confirmation Order"** means the order(s) confirming the Plan.

**"Debtor"** means Acquisition Integration, LLC.

**"DIP Claim"** means a Claim of the DIP Lender arising under the DIP Orders.

**"DIP Lender"** means NOVO Tech, Inc.

**"DIP Loan Agreement"** means Loan Agreement, dated as of June 20, 2025, approved by the Bankruptcy Court pursuant to the DIP Orders, as amended, supplemented, restated, or otherwise modified, by and among, Debtor and DIP Lender.

**"DIP Orders"** means the interim and final order(s) of the Bankruptcy Court authorizing, among other things, the Debtor to enter into and make borrowings under the DIP Loan Agreement, and granting certain rights, protections, and Liens to and for the benefit of the DIP Lender.

**"Disclosure Statement"** means the disclosure statement for the Plan filed with the Bankruptcy Court by the Debtor in accordance with section 1125 of the Bankruptcy Code, including all exhibits and schedules thereto, as it may be amended from time to time.

**"Disclosure Statement Order"** means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**"Disputed Claim"** means a Claim that is not an Allowed Claim nor a disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim a Debtor or the Liquidating Trustee has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a Claim was not timely or properly filed (or deemed timely or properly filed).

**"Disputed Claims Reserve Account"** means an account or accounts established by the Liquidating Trustee for payment of Disputed Claims that become Allowed Claims after the Effective Date, and which shall hold Cash and/or other Assets as applicable, for the benefit of the holders of Disputed Claims.

**"Distribution"** means the distribution to holders of Allowed Claims in accordance with the Plan of any Assets, or other consideration distributed under Article IV herein.

**"Distribution Address"** means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of claim is or has been filed in respect of a particular Claim, "Distribution Address" means the address set forth in the Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

**"Distribution Date"** means any date on which the Liquidating Trustee determines that a Distribution, under or in accordance with the Plan, should be made to holders of Allowed Claims (or to a particular holder of an Allowed Claim) in light of, for example, resolutions of Disputed Claims, liquidation of Assets (including aggregate recoveries on account of Causes of Action), and the administrative costs of such a Distribution.

**"District Court"** means the United States District Court for the Northern District of Alabama.

**"Effective Date"** means a Business Day, selected by the Plan Proponent, which is thirty (30) days after the Confirmation Date, or as soon thereafter as practicable, on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Plan Proponent, and on which no stay of the Confirmation Order shall be pending.

**"Equity Interest"** means interest of David P. Bristol who is the sole member of the Debtor and owner of all membership interests in the Debtor, which interest is believed to be uncertificated, as well as any Equity Interest or proxy related thereto, direct or indirect, in the Debtor, and

8

represented by duly authorized, validly issued, and outstanding shares of preferred stock or common stock, stock appreciation rights, membership interests, partnership interests, or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in the Debtor, or right to convert into such an Equity Interest or acquire any Equity Interest of the Debtor, whether or not transferable, or an option, warrant, or right, contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Petition Date.

"**Estate**" means the estate of the Debtor as created under section 541 of the Bankruptcy Code.

"**Excluded Assets**" has the meaning ascribed in the Plan.

"**Exhibit Filing Date**" means the last date by which forms of the exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be not later than three (3) days prior to the date of commencement of the Confirmation Hearing.

"**Face Amount**" means (a) with respect to any Claim for which a proof of claim is filed, an amount equal to: (i) the liquidated amount, if any, set forth therein, and (ii) any other amount estimated by the Bankruptcy Court in accordance with section 502(c) of the Bankruptcy Code and the relevant provisions of the Plan; (b) if no proof of claim is filed and such Claim is scheduled in the applicable Debtor's Schedules, the amount of the Claim scheduled as undisputed, fixed, and liquidated; or (c) if a proof of claim has been filed in an unliquidated amount, or the applicable Debtor's Schedules reflect a Claim in an unliquidated amount, the amount estimated by the Debtor or Liquidating Trustee to be the amount for which such claim may ultimately be Allowed.

"**Final Order**" means an order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Claim.

"**Impaired**" means any Class of Claims or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Lien**" means any charge against, security interest in, encumbrance upon, or other interest in Assets to secure payment of a debt or performance of an obligation.

"**Liquidating Trust**" means the trust described in Article V of the Plan to be established under Alabama trust law that shall make Distributions of the Assets pursuant to the terms of the Plan. With respect to any action required or permitted to be taken by the Liquidating Trust, the

9

term includes the Liquidating Trustee or any other person authorized to take such action in accordance with the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means the agreement between the Debtor and the Liquidating Trustee to be entered into as of the Effective Date, substantially in form and substance as that filed as part of the Plan and approved by the Bankruptcy Court as it may be amended from time to time in accordance with its terms. The Liquidating Trust Agreement is attached hereto as **Exhibit B**.

"**Liquidating Trust Assets**" means from and after the Effective Date (a) all legal and equitable interests of the Debtor in Causes of Action, including the Avoidance Actions, and the proceeds thereof; (b) all legal and equitable defenses or counterclaims of the Debtor to Claims; and (c) any other Assets to be vested in the Liquidating Trust pursuant to this Plan and the Liquidating Trust Agreement. For the avoidance of doubt, the Liquidating Trust Assets specifically *do not include* (i) the MASPO Contract (defined below) and all accounts, account receivables and rights to payment from the MASPO Contract and proceeds relating thereto, or (ii) any and all Assets of Debtor purchased, acquired, created, or arising after the Petition Date from advances under the DIP Loan, or from payments under or proceeds of the MASPO Contract and all other Assets of Debtor which were subject, as of the Petition Date, to the Lien of ServisFirst Bank.

"**Liquidating Trust Priority Claim Interests**" means the uncertificated beneficial interests in the Liquidating Trust representing the right of each holder of an Allowed Priority Claim to receive Distributions from the Liquidating Trust in accordance with Articles V of this Plan and the Liquidating Trust.

"**Liquidating Trust General Unsecured Creditor Interests**" means the uncertificated beneficial interests in the Liquidating Trust representing the right of each holder of an Allowed General Unsecured Claim to receive Distributions from the Liquidating Trust in accordance with Article V of this Plan and the Liquidating Trust.

"**Liquidating Trust Interests**" means the Liquidating Trust General Unsecured Interests and the Liquidating Trust Secured Lender Interests.

"**Liquidating Trust Secured Lender Interests**" means the uncertificated beneficial interests in the Liquidating Trust representing the right of each holder of an Allowed Secured Claim to receive Distributions from the Liquidating Trust in accordance with Article V of this Plan and the Liquidating Trust Agreement.

"**Liquidating Trustee**" means a person who is subsequently approved by the Bankruptcy Court to serve as Liquidating Trustee.

"**MASPO Contract**" means that certain contract between the Debtor and the United States Army Contract No. W58RGZ-21-D-0089 for the delivery of parts and equipment to support weapon systems managed by Multi-National Aviation Special Project Office (MASPO) for the Program Executive Office – Aviation (PEO AVN) in support of Foreign Military Sales (FMS) and other Security Cooperation Programs including all amendments, modifications, task orders, addendums, add-ons, and supplementations thereto to which the Debtor is a party

**"Member"** means David P. Bristol, prepetition until the Effective Date. After the Effective Date, member shall be referred to as "Old Equity" or "Old Member."

**"Person"** means an individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint venture, trust, estate, unincorporated organization, governmental authority, governmental unit or any agency or political subdivision thereof, or any entity of whatever nature.

**"Petition Date"** means June 10, 2025, the date upon which the Chapter 11 petition of the Debtor was filed with the Bankruptcy Court.

**"Plan"** means this plan under Chapter 11 of the Bankruptcy Code, including, without limitation, the exhibits, appendices, and schedules hereto to be filed with the Plan Supplement, as such may be altered, amended, or otherwise modified from time to time.

**"Plan Proponent"** means the Debtor.

**"Plan Supplement"** means the supplemental documents, schedules, and exhibits to the Plan, to be filed by the Debtor no later than the Exhibit Filing Date, containing substantially final forms of, among other things, a schedule of rejected executory contracts and unexpired leases, a list of retained Causes of Action, and the Liquidating Trust Agreement. The Debtor shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**"Prepetition Claim"** means any Claim arising prior to the Petition Date.

**"Priority Claim"** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim or (b) a Priority Tax Claim.

**"Priority Tax Claim"** means any Claim entitled to priority pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**"Priority Wage and Benefit Claim"** means any Claim entitled to priority pursuant to section 11 U.S.C. § 507(a)(4) of the Bankruptcy Code.

**"Pro Rata"** means the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class.

**"Professional Fees"** means any unpaid fees and expenses of Professionals, as such fees and expenses are allowed by the Bankruptcy Court.

**"Professional Fee Claim"** means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case incurred on or after the Petition Date and prior to the Effective Date.

11

**"Professionals"** mean the attorneys, accountants, financial advisors, and other professionals whose retention in the Chapter 11 Case has been approved by the Bankruptcy Court, excluding the Liquidating Trustee.

**"Released Party"** means each of the following in its capacity as such: (a) the Debtor; (b) the DIP Lender; (c) the Reorganized Debtor, and (d ) such entities' current and former subsidiaries, predecessors, successors, assigns, heirs, agents, equity holders, principals, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and their current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

**"Reorganized Debtor"** means the corporate entity that exists subsequent to the divestiture of the pre-petition Equity Interest in the Debtor and its acquisition by a new owner upon confirmation of the Debtor's Plan as approved by the Bankruptcy Court.

**"Schedules"** means, unless otherwise specified, the respective schedules of Assets and liabilities, the list of holders of Equity Interest, and the statements of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

**"Secured Claim"** means a Claim that is secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in Assets of the Estate securing such Claim.

**"Tax Code"** means the Internal Revenue Code of 1986, as amended from time to time.

**"Unencumbered Assets"** means Assets owned by the Debtor which are not subject to valid, enforceable, and perfected Liens.

**"Unimpaired"** means any Class of Claims or Equity Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**"Voting Deadline"** means _____, 2026 at 4:00 p.m., prevailing Central time.

**Section 1.02    Other Terms.** Any capitalized term used in the Plan and not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**Section 1.03    Rules of Construction.** The meanings set forth herein shall be equally applicable to the singular and plural forms of the terms defined, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender. Unless otherwise stated, the words "herein," "hereof," "hereto," "hereunder," and other similar

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document        Page 12 of 62

words refer to the Plan as a whole and not to any particular article, section, subsection, clause, paragraph, or portion contained therein. All of the definitions and provisions contained in this Article I are and shall be regarded as integral, substantive, and operative provisions of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to all of the provisions of the Plan.

**Section 1.04  Exhibits, Supplements, Appendices, and Schedules.** All exhibits, Supplements, appendices, and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth herein. To the extent that any exhibit, Schedule, or Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

**Section 1.05  Controlling Document.** The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined any inconsistency between a Plan provision and a provision of the Confirmation Order, the Confirmation Order provision shall govern and such provision shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**Section 2.01  Administrative Claims**.

(a)  General. Subject to the Bar Date and other provisions herein and except to the extent the Debtor or the Liquidating Trustee, as applicable, and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Debtor shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, and (iii) the Debtor receives funds from the sale of Equity Interest of the Debtor. Allowed Administrative Claims shall be paid (a) *first*, from the funds resulting from the sale of the Equity Interest of the Debtor, and (b) *second*, if not satisfied under (a) from funds generated by the Liquidating Trust. For the avoidance of doubt, Professional Fee Claims shall be Allowed Administrative Claims.

**Section 2.02  Administrative Claim Bar Date.**

(a)  General Administrative Claim Bar Date Provisions. Except as provided below for (i) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (ii) Bankruptcy Administrator Fees, requests for payment of Administrative Claims must be filed no later than thirty (30) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by Order

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 13 of 62

of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date, shall be forever barred from asserting such Claims against the Debtor or its Assets, and the holder thereof shall be enjoined from commencing or continuing any action; employment of process; or act to collect, offset, or recover such Administrative Claim.

(b)    Professional Fee Claim Bar Date. All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than one hundred twenty (120) days after the Effective Date (the "Fee Claim Deadline"). Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application. All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Liquidating Trustee to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are allowed.

(c)    Bankruptcy Administrator Fees. The Debtor or the Liquidating Trustee (as applicable) shall pay all Bankruptcy Administrator Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters a final decree closing the Chapter 11 Case.

**Section 2.03   Priority Tax Claims.** Except to the extent the holder of an Allowed Priority Tax Claim agrees to a different and less favorable treatment, all Allowed Priority Tax Claims shall be paid by the Liquidating Trustee from funds accumulated in the Liquidated Trust. All Allowed Priority Tax Claims shall be paid in full satisfaction and release of such Claim to each holder of an Allowed Priority Tax Claim, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (c) the first Business Day after the date that is 30 calendar days after the date on which the Liquidating Trustee has sufficient funds available to pay an Allowed Priority Tax Claim. Notwithstanding the foregoing the Allowed Priority Tax Claim of Madison. County, Alabama shall be paid in full as provided in Section 5.03.

**ARTICLE III**
**CLASSIFICATION AND**
**TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTEREST**

**Section 3.01   Special Provision Governing Unimpaired Claims.** Except as otherwise provided in the Plan, nothing in the Plan shall be construed as a waiver of any legal or equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

14

| Class | Treatment | Entitled to Vote |
|---|---|---|
| Class 1 - Allowed Priority Wage and Benefit Claims | Unimpaired | No (Deemed to accept) |
| Class 2 – Allowed Secured Claim of ServisFirst Bank | Impaired | Yes (Entitled to vote to accept or reject |
| Class 3 – Allowed Secured Claim of Flight Test Aerospace ("FTA") | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 4 – Allowed Unsecured Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 5 - Equity Interest Holders | Impaired | To be divested and sold as part of this Plan. |

(a) **Class 1: Priority Claims.**

(i) **Class 1 Treatment.** Class 1 shall consist of the Allowed Priority Claims of the U.S. Dept of Labor; and Allowed Wage and Benefit Claims of Burntex Aviation Consulting, Michelle Stephens, Sara Elizabeth Walker, and Rodney Lane Dant in the combined approximate total amount of $99,612.01. The Allowed Priority Claims shall be paid in full on the Effective Date from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor, as further provided in Section VII(A)(c) below. Except to the extent the Reorganized Debtor or the Liquidating Trustee, as applicable, and the holder of an Allowed Priority Claim agree to a different and less favorable treatment, all Allowed Priority Claims shall be paid, in full satisfaction and release of such Claim, to each holder of a Priority Claim in an amount equal to such Allowed Priority Claim, on the later of: (a) the Effective Date from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor, as further provided in Section VII(A)(c) below or (b) the first Business Day after the date that is 30 calendar days after the date on which such Priority Claim becomes an Allowed Priority Claim, or as soon thereafter as is practicable.

(ii) **Class 1 Voting.** Holders of Allowed Priority Claims in Class 1 are not Impaired under the Plan. Each holder of an Allowed Priority Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(b) **Class 2: Secured Claims of ServisFirst Bank.**

(i) **Class 2 Treatment.** Class 2 consists of the Allowed Secured Claim of ServisFirst Bank and is Impaired. Class 2 consists of the Allowed Secured Claim of ServisFirst and is impaired. SFB has filed a claim in the amount of $1,297,252.83. The Allowed Secured Claim of ServisFirst is secured by a

prepetition perfected first-priority lien upon all assets of the Debtor except for the First Priority Collateral, upon which its lien is subordinate to that of NOVO Tech, Inc., and replacement liens on all other assets of the Debtor, including a junior lien in the First Priority Collateral and a first-priority lien in the Second Priority Collateral. ServisFirst's lien upon the Debtor's assets, including the MASPO Contract and the proceeds therefrom, shall be retained post-confirmation and shall not be extinguished by confirmation of the Plan or the transfer and sale of the Equity Interest of the Reorganized Debtor. The Allowed Secured Claim of ServisFirst shall be paid (i) from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor, to the extent any excess funds remain after payment of Allowed Administrative Expense Claims, Allowed Priority Claims, and the Allowed Claim of NOVO Tech, Inc.; (ii) from the proceeds of a sale pursuant to § 363 of the Bankruptcy Code of the Debtor's inventory that secures the ServisFirst Claim; (iii) by the Reorganized Debtor pursuant to a stream of payments from the net revenue generated through the MASPO Contract, payable on a periodic basis as described in Section VII(A)(i) below, with ServisFirst retaining all liens, including its lien upon the MASPO Contract and proceeds therefrom, until ServisFirst's Allowed Secured Claim is paid in full; and (iv) by the Liquidating Trustee from funds accumulated in the Liquidated Trust, or pursuant to such other treatment as may be agreed upon by the Reorganized Debtor, the Liquidating Trustee and ServisFirst. Any deficiency claim of ServisFirst after its receipt of a portion of the Minimum Cash Down Payment (if any) and the proceeds of all ServisFirst collateral, including, but not limited to, proceeds of the sale of the Debtor's inventory and net revenue of the Reorganized Debtor under the MASPOMASPO Contract (after satisfaction of the Allowed Claim of NOVO Tech, Inc. from such revenues), shall become a Class 4 General Unsecured Claim.

Until ServisFirst's Allowed Secured Claim is paid in full, ServisFirst shall retain and may enforce its lien upon the MASPO Contract, the accounts receivable generated therefrom, and all proceeds thereof, subject only to the super-priority of the DIP Lender's claim. The Reorganized Debtor shall not encumber, transfer, assign, or otherwise dispose of its interest in the MASPO Contract without the prior written consent of ServisFirst until ServisFirst's Allowed Secured Claim is paid in full or the lien is otherwise released by ServisFirst.

(ii) **Class 2 Voting.** Holders of Allowed Claims in Class 2 are Impaired under the Plan. Each holder of an Allowed Secured Claim is entitled to vote to accept or reject the Plan.

(c) **Class 3: Secured Claims of Flight Test Aerospace ("FTA").**

(i) **Class 3 Treatment.** Class 3 consists of the Allowed Secured Claim of Flight Test Aerospace ("FTA") and is Impaired. FTA has filed a claim in this case in the amount of $254,373.01. FTA holds a prepetition perfected security interest

16

in substantially all assets of the Debtor, including the MASPO Contract and the proceeds therefrom. FTA's security interest in the Debtor's prepetition assets is junior in priority to ServisFirst's prior-perfected first-priority security interest in the same collateral. FTA's lien upon the Debtor's prepetition assets, including the MASPO Contract and the proceeds therefrom, shall be retained post-confirmation and shall not be extinguished by confirmation of the Plan or the transfer and sale of the Equity Interest of the Reorganized Debtor.

The Allowed Secured Claim of FTA shall be paid (i) from the Minimum Cash Down Payment received from the purchaser of the Equity Interest of the Reorganized Debtor, to the extent such payment is available after payment of Allowed Administrative Expense Claims, Allowed Priority Claims, the Allowed Claim of NOVO Tech, Inc., and ServisFirst's Allowed Secured Claim; (ii) by the Reorganized Debtor pursuant to a stream of payments of the net revenue generated through the MASPO Contract, payable on a periodic basis as described in Section VII(A)(i) below, but only after SFB's Allowed Secured Claim has been paid in full, with FTA retaining its junior lien upon the MASPO Contract and proceeds therefrom, subject to ServisFirst's senior lien, until FTA's Allowed Secured Claim is paid in full; and (iii) by the Liquidating Trustee from funds accumulated in the Liquidating Trust, but only after ServisFirst's Allowed Secured Claim has been paid in full or ServisFirst otherwise consents in writing; or pursuant to such other treatment as may be agreed upon by the Reorganized Debtor, the Liquidating Trustee, and FTA, provided that FTA will not receive any treatment in derogation of the prior security interests of ServisFirst. Any deficiency claim of FTA after liquidation of all FTA Collateral shall become a Class 4 General Unsecured Claim.

Until FTA's Allowed Secured Claim is paid in full, FTA shall retain and may enforce its junior lien upon the MASPO Contract, the accounts receivable generated therefrom, and all proceeds thereof, subject to the senior lien of ServisFirst and the super-priority of the DIP Lender's claim. The Reorganized Debtor shall not encumber, transfer, assign, or otherwise dispose of its interest in the MASPO Contract without the prior written consent of FTA (in addition to the consent of ServisFirst) until FTA's Allowed Secured Claim is paid in full or the lien is otherwise released by FTA.

FTA does not hold a security interest in the Equity Interest of the Reorganized Debtor. Accordingly, while FTA may submit a bid to purchase the Equity Interest of the Reorganized Debtor, any such bid must be in the form of a cash bid. FTA may not credit bid its Class 3 Secured Claim in connection with the sale of the Equity Interest of the Reorganized Debtor.

(ii) **Class 3 Voting.** Holders of Allowed Claims in Class 3 are Impaired under the Plan. Each holder of an Allowed Secured Claim in Class 3 is entitled to vote to accept or reject the Plan.

(d) **Class 4: General Unsecured Claims.**

    (i) **Class 4 Treatment.** This Class consists of all Allowed General Unsecured Claims. Claims in Class 4 are Impaired. The total amount of unsecured claims exceeds $2,535,803.74. Allowed General Unsecured Claims in this class shall be paid by the Liquidating Trustee from funds accumulated in the Liquidated Trust. This class shall also include all Claims of Classes 2 and 3 to the extent that the liens which secure those Claims have no remaining value, meaning the balance of such Claims are unsecured. Provided that the holder of a Class 4 Claim has not yet been paid, such holder of each such Allowed General Unsecured Claim shall receive a Pro Rata distribution from the Liquidating Trust on the later of (i) 30 days from the Effective Date, or (ii) the Liquidating Trust's receipt of sufficient funds from which a distribution can be made or as soon as is reasonably practicable thereafter. Holders of an Allowed General Unsecured Claims shall not be entitled to receive post-petition interest on their Allowed Claims.

    (ii) **Class 4 Voting.** Class 4 is Impaired under the Plan. Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

    (iii) **Class 4 Priority of Payment.** Notwithstanding any other provision of the Plan, holders of Allowed General Unsecured Claims shall not be entitled to receive any payment of Cash on account of Allowed General Unsecured Claims until (a) the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority Claims have received payment on account of such Allowed Claims; or (b) such Allowed Claims have been reserved for in accordance with the Plan and any Disputed Claims have been reserved for in accordance with the Plan.

(e) **Class 5: Equity Interest Holders.**

    (i) **Class 5 Treatment.** This Class consists of the equity interest of David P. Bristol in the Debtor. Upon entry of the Confirmation Order, the equity interest of David P. Bristol shall be deemed divested and terminated pursuant to Section 5.06 of the Plan, and David P. Bristol shall not receive or retain any property under the Plan on account of such Equity Interest.

    (ii) **Class 5 Voting.** Equity Interest Holders are Impaired under the Plan and, thus, holders of such interests are entitled to vote to accept or reject the Plan.

**ARTICLE IV**
**VOTING AND DISTRIBUTIONS UNDER THE PLAN**

    **Section 4.01   Voting of Claims and Interests.** Only Classes 2-5 are Impaired and entitled to vote to accept or reject the Plan. Class 1, as Unimpaired, is presumed to have accepted the Plan. All classes of Claims and Equity Interest Holders are permitted to object to the Plan or

18

the adequacy of the Disclosure Statement. Objections to the Plan and to the adequacy of the Disclosure Statement must be filed no later than _____, 2026 at 4:00 p.m. (Central Time).

**Section 4.02    Distributions Under the Plan.**  The Liquidating Trustee will make all Distributions under the Plan from the Liquidating Trust Assets.  Whenever any Distribution to be made pursuant to the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made on the immediately succeeding Business Day, and shall be deemed to have been made on the date due. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of Distributions under the Plan. The Reorganized Debtor and the Liquidating Trustee shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

**Section 4.03    Distribution Deadlines.** Any Distribution to be made by the Liquidating Trustee pursuant to the Plan shall be deemed to have been timely made if made within 30 days after the time therefor specified in the Plan or such other agreements. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the date specified therefor herein.

**Section 4.04    Manner of Payment Under the Plan.** Distributions by the Liquidating Trustee may be made, at the option of the Liquidating Trustee, in cash, by wire transfer, or by check drawn on such accounts established by the Liquidating Trustee as necessary to effectuate the Plan.

**Section 4.05    De Minimis Distributions.** Notwithstanding anything to the contrary contained in the Plan, the Debtor shall not be required to transmit Cash to the holder of an Allowed Claim in an impaired class of claims if the amount of Cash otherwise due is less than $25.00. All Cash not so distributed shall be deposited into the Unpaid Claims Reserve, and such Cash shall become the sole and exclusive property of the Debtor.

**Section 4.06    Unclaimed Property.** All Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtor or the Liquidating Trustee, as applicable, have been notified in writing of a change of address. If any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidating Trustee is notified of such holder's then current address, at which time all eligible missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before 60 days after the date such undeliverable Distribution was initially made. Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Liquidating Trust and be treated as Available Cash. Any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

**Section 4.07    Time Bar to Cash Payments.** Checks issued by the Liquidating Trust in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Requests for reissuance of any check shall be in writing to the Liquidating Trustee by the holder of the Allowed Claim to whom such check originally was issued. Any such written Claims in respect of such a voided check must be received by the Liquidating Trustee on or before 60 days after the expiration of the 60-day period following the date of issuance of such check.

Thereafter, the amount represented by such voided check shall be treated as Available Cash. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Liquidating Trust.

## ARTICLE V
## IMPLEMENTATION OF PLAN

**Section 5.01 Implementation.** This Plan will be implemented by the Liquidating Trustee in a manner consistent with the terms and conditions set forth in this Plan and in the Confirmation Order. The Liquidating Trustee shall also be the dispersing agent under the Plan.

**Section 5.02 Funding for this Plan.** Funding for this Plan. There are several sources for funding this Plan. The first source for funding this Plan comes from the sale of the Equity Interest in the Reorganized Debtor. The purchaser of the Equity Interest shall be required, as a condition of closing, to pay a Minimum Cash Down Payment in an amount sufficient to pay in full: (i) all Allowed Administrative Expense Claims, including without limitation the professional fees of Thompson Burton, PLLC; and (ii) all Allowed Priority Claims including unclassified Allowed Priority Tax Claim of Madison County, Alabama and Allowed Priority Class 1 claims. Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. The Minimum Cash Down Payment shall be set forth in the Bidding Procedures as a minimum closing condition and will be disclosed in the sale motion filed by the Debtor. Structured payment offers for any amounts above the Minimum Cash Down Payment may be considered as provided in the Bidding Procedures. A second funding source is the MASPO Contract and the accounts receivable and proceeds generated thereunder. A third source is the Causes of Action held by the Liquidating Trust.

**Section 5.03 Funding from Reorganized Debtor.** From and after the Effective Date, the Reorganized Debtor shall continue in existence for all purposes to the same extent as it existed and operated pre-petition. However, except as set forth expressly in the Plan, the Reorganized Debtor shall not be liable for or responsible to pay any Claim including any Allowed Claim and the holders of all Claims that receive all treatment to which they are entitled under the Plan shall be enjoined from taking any legal action against the Reorganized Debtor in accordance with the terms of Article VI of the Plan. Pursuant to the Plan, (i) ServisFirst shall retain its lien upon the MASPO Contract and the proceeds therefrom, and such lien shall remain enforceable against the Reorganized Debtor until ServisFirst's Allowed Secured Claim is paid in full; (ii) FTA shall retain its junior lien upon the MASPO Contract and the proceeds therefrom, and such lien shall remain enforceable against the Reorganized Debtor, subject to ServisFirst's senior lien, until FTA's Allowed Secured Claim is paid in full; and (iii) the Reorganized Debtor shall remain obligated to make payments to ServisFirst, FTA, and to the Liquidating Trust from MASPO Contract proceeds as described in Section VII(A)(i) hereof.

**To the extent the Reorganized Debtor makes any payment to the holder of an Allowed Claim that is otherwise payable from the Liquidating Trust, the Reorganized Debtor shall have the right to reimbursement from the Liquidating Trust.**

**Section 5.04    Continuing Existence.**  From and after the Effective Date, the Reorganized Debtor shall continue in existence for all purposes to the same extent as it existed and operated pre-petition. However, except as set forth expressly in the Plan, the Reorganized Debtor shall not be liable for or responsible to pay any Claim including any Allowed Claim and the holders of all Claims that receive all treatment to which they are entitled under the Plan shall be enjoined from taking any legal action against the Reorganized Debtor in accordance with the terms of Article VI of the Plan. Pursuant to the Plan, (i) ServisFirst shall retain its lien upon the MASPO Contract and the proceeds therefrom, and such lien shall remain enforceable against the Reorganized Debtor until ServisFirst's Allowed Secured Claim is paid in full; (ii) FTA shall retain its junior lien upon the MASPO Contract and the proceeds therefrom, and such lien shall remain enforceable against the Reorganized Debtor, subject to ServisFirst's senior lien, until FTA's Allowed Secured Claim is paid in full; and (iii) the Reorganized Debtor shall remain obligated to make payments to ServisFirst, FTA, and to the Liquidating Trust from MASPO Contract proceeds as described in Section VII(A)(i) hereof.

**Section 5.05    Closing of the Chapter 11 Case.**  When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed, and Distributions under this Plan have commenced (substantial consummation), the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**Section 5.06    Divestiture of Equity Interest in Debtor.**

(a) "Equity Interest Holders" are parties who hold an ownership interest in the Debtor. In a limited liability company, the equity interest holders are its members who have a membership interest in the Debtor. In this case, the pre-confirmation equity interest holder is David P. Bristol, who owns all membership interests in the Debtor. Pursuant to the terms of this Plan, the equity interest of Mr. Bristol in the Debtor is being extinguished pursuant to 11 U.S.C. §1141(d)(1)(B).

(b) Transfer of Equity Interest in Reorganized Debtor. In conjunction with the confirmation of the Plan, the Debtor shall seek the approval from the Court of the sale of the Equity Interest of the Reorganized Debtor pursuant to the terms of the Bidding Procedures attached hereto and incorporated herein as **Exhibit A**. Bids shall be required to include a Minimum Cash Down Payment sufficient to pay all Allowed Administrative Expense Claims and all Allowed Priority Claims in Class 1 in full on the Effective Date, with any excess of the Minimum Cash Down Payment remaining after such payments to be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. Such bids may contemplate structured payments over time for any portion of the Purchase Price above the Minimum Cash Down Payment. The Equity Interest in the Reorganized Debtor shall be sold free and clear of any such interest or claims from any other entity.

(c) Subject to the approval from the Court and the confirmation of the Debtor's Plan, at closing, the entity acquiring the Equity Interest in the Reorganized Debtor shall have the full power and authority to transfer unto itself, its successors, and its assigns, the Equity Interest in the Reorganized Debtor and to substitute itself as the owner of record

21

of all outstanding equity on the corporate books and records of the Debtor without further action being taken by any former equity interest holder. Moreover, the purchaser of the Equity Interest in the Reorganized Debtor shall be further authorized to execute and deliver all documents, instruments, or records and take all actions as may be necessary or appropriate to consummate its acquisition of the Debtor, including but not limited to the election of new managers, directors, or officers.

(d) The transfer and sale of the Equity Interest in the Reorganized Debtor shall also be exempt from registration and the requirements of all federal and state securities laws in accordance with section 1145 of the Bankruptcy Code.

(e) **Proceeds from Sale.** The proceeds generated from the sale of the Equity Interest, following the payment of all costs associated with the sale, shall be first used to pay the Minimum Cash Down Payment to satisfy in full all outstanding Allowed Administrative Expense Claims and all Allowed Priority Claims in Class 1. Any excess of the Minimum Cash Down Payment remaining after such payments shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim. The remaining proceeds above the Minimum Cash Down Payment shall then be distributed to holders of Allowed Claims according to the priorities set forth in the Debtor's Plan, with ServisFirst's Allowed Secured Claim paid in priority to the Allowed Secured Claim of FTA. If proceeds remain following the full payment of Class 2 and 3 claimants, any remaining funds will become assets of the Liquidating Trust pursuant to Article V of the Plan.

(f) **DIP Claim and Loan.** The DIP Claim in favor of the DIP Lender shall remain secured by the MASPO Contract, and all liabilities and obligations associated with the DIP Claim shall remain an obligation of the Reorganized Debtor subsequent to the transfer and sale of the Equity Interest of the Reorganized Debtor. Similarly, ServisFirst shall retain its lien upon the MASPO Contract and all proceeds therefrom subsequent to the transfer and sale of the Equity Interest of the Reorganized Debtor, and FTA shall retain its junior lien upon the MASPO Contract and all proceeds therefrom subject to ServisFirst's senior lien. The Reorganized Debtor's obligation to make payments to ServisFirst and to FTA from the proceeds of the MASPO Contract shall continue until each respective Allowed Secured Claim is paid in full, as provided in Section VII(A)(i) below.

(g) **Creation of Liquidating Trust.** On or prior to the Effective Date, the Liquidating Trustee and the Reorganized Debtor shall execute the Liquidating Trust Agreement. The Liquidating Trust shall become effective on the Effective Date. On the Effective Date, the Liquidating Trust shall be deemed to be valid, binding, and enforceable in accordance with the terms and provisions of the Plan and the Liquidating Trust Agreement. After the Effective Date, the Liquidating Trust Agreement may be amended in accordance with its terms without further order of the Court. *See* The Liquidating Trust Agreement attached as **Exhibit B**.

(h) **Purpose of the Liquidating Trust.** The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its Assets, with no objective to continue or

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 22 of 62

engage in the conduct of a trade or business. It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d).

(i) **Transfer of Liquidating Trust Assets to the Liquidating Trust**. As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all of the Debtor's remaining assets not subject to a lien in favor of NOVO Tech, Inc., ServisFirst, and FTA, including causes of action held by the Debtor, will be placed into a Liquidating Trust. Upon the Effective Date all right, title, and interests in the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charge and other interests, subject only to (i) the Allowed Claims of the holders of Liquidating Trust Assets as set forth in the Plan and (ii) the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement. For the avoidance of doubt, however, Liquidating Trust Assets shall not include (i) the MASPO Contract and all accounts, account receivables, and rights to payment from the MASPO Contract and proceeds relating thereto, or (ii) any and all Assets of Debtor purchased, acquired, created, or arising after the Petition Date from advances under the DIP Loan, or from payments under or proceeds of the MASPO Contract. The Plan will also include a minimum contribution from the sale of the Equity Interest, carved out from any Allowed Secured Claims, in the amount of $50,000.00. The Liquidating Trustee shall also be the dispersing agent under the Liquidating Trust.

(j) **Appointment of the Liquidating Trustee**. On the Effective Date, the Liquidating Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure.

Notwithstanding the foregoing or terms contained in the Liquidating Trust, nothing in this Plan is intended and the Liquidating Trustee shall have no power, authority, or control over any aspect of the Reorganized Debtor or its business affairs or governance, including but not limited to (i) the MASPO Contract and proceeds relating thereto; (ii) any and all Assets of Debtor purchased, acquired, created, or arising after the Petition Date from advances under the DIP Loan, or from payments under or proceeds of the MASPO Contract; (iii) any tax matters including the filing of any tax returns; or (iv) the performance of any obligations it may have under the Plan.

**It is anticipated that Joe Bulgarella will be the Liquidating Trustee.**

(k) **Governance of Liquidating Trust.** The Liquidating Trust shall be governed and administered by the Liquidating Trustee subject to the terms of the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall direct all litigation brought on behalf of the Liquidating Trust.

(l) **Tax Treatment.** Except to the extent allocable to Disputed Claims, consistent with the principles of Revenue Procedure 94-45, 1994-2 C.B. 684, as of the Effective Date, for

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc Main Document    Page 23 of 62

federal income tax purposes (i) the Debtor will be deemed to transfer the Liquidating Trust Assets to the holders of Allowed Claims in proportion to their respective beneficial interests in the Liquidating Trust; (ii) the holders of Allowed Claims will be deemed to transfer such Assets to the Liquidating Trust; (iii) the Liquidating Trust will be treated as a "liquidating trust," as defined in Treasury Regulation section 301.7701-4(d), and as a "grantor trust" within the meaning of Internal Revenue Code sections 671-679; and (iv) the holders of Allowed Claims will be treated as the "grantors" of the Liquidating Trust. Notwithstanding the foregoing, because all Assets of the Debtor that secure payment of the DIP Loan Agreement, including the MASPO contract itself, are not being transferred to the Liquidating Trust, this subsection does not apply to the Reorganized Debtor.

**Section 5.07     Rights, Powers and Duties of the Liquidating Trust and the Liquidating Trustee.**

The Liquidating Trustee will act for the benefit of holders of Liquidating Trust Interests in a fiduciary capacity and shall have comparable authority as a bankruptcy trustee of the Debtor, as the exclusive representative of the Estate under section 1123(a)(5)(B) of the Bankruptcy Code or any corresponding federal or state laws solely with respect to the Liquidating Trust Assets and shall succeed to all of the Debtor's and the Estate's rights with respect thereto, subject to the provisions of the Plan and the Liquidating Trust Agreement. The powers, rights, and duties of the Liquidating Trustee shall arise on the Effective Date and shall include the following:

(a) having the power and authority to collect, liquidate, and distribute the Liquidating Trust Assets for the benefit of holders of Liquidating Trust Interests holding Allowed Claims under the jurisdiction of the Bankruptcy Court;

(b) investing Cash in accordance with section 345 of the Bankruptcy Code, and withdrawing and making Distributions of Cash to holders of Liquidating Trust Interests holding Allowed Claims and paying taxes and other obligations incurred by the Liquidating Trustee in the operation of the Liquidating Trust, from the Available Cash in accordance with the Plan;

(c) engaging attorneys, consultants, agents, employees, and any other professional persons to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities;

(d) executing and delivering all documents and taking all actions necessary to consummate the Plan and liquidate the Liquidating Trust Assets;

(e) winding up the Bankruptcy;

(f) coordinating the turnover of Assets, if any, subject to rejected executory contracts or abandonment or Liquidating of any Liquidating Trust Assets;

(g) the completion of any sale of encumbered Assets, including but not limited to, inventory not transferred prior to confirmation;

24

(h) coordinating the collection of outstanding pre-petition accounts receivable, but *not* for the accounts receivable for MAPSO Contract generated post-confirmation;

(i) overseeing compliance with the accounting, finance, and reporting obligations of the Trust;

(j) preparing financial statements and Bankruptcy Administrator post-confirmation quarterly reports, and filing such reports on the docket of the Chapter 11 Case until such time as a final decree has been entered;

(k) paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional persons engaged by the Liquidating Trust and to pay all other expenses, subject to the terms of the Plan;

(l) disposing of, and delivering title to others of, or otherwise realizing the value of, all the Liquidating Trust Assets.

(m) acting on behalf of the Liquidating Trust in all adversary proceedings and contested matters (including, without limitation, any Cause of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving the Liquidating Trust Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan. Notwithstanding the foregoing, if an adversary proceeding affects the MASPO Contract post-confirmation or the Assets securing repayment of the DIP Loan Agreement, then the Reorganized Debtor shall control such litigation;

(n) implementing and enforcing all provisions of the Plan relating solely to the Liquidating Trust or Trust Assets; and

(o) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Liquidating Trust Agreement, or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

**Section 5.08    Liquidating Trust Interests.** On the Effective Date, each holder of an Allowed General Unsecured Claim shall, by operation of the Plan, receive its Pro Rata share of the Liquidating Trust General Unsecured Creditor Interests; each holder of an Allowed Priority Claim or Priority Tax Claim shall, by operation of the Plan, receive its Pro Rata share of the Liquidating Trust Priority Claim Interests; and the secured lenders shall, by operation of the Plan, receive their Pro Rata share of the Liquidating Trust Prepetition Secured Lender Interests. Liquidating Trust General Unsecured Creditor Interests shall be reserved for holders of Disputed General Unsecured Claims, and held by the Liquidating Trustee pending allowance or disallowance of such Claims. No other Person or Entity shall have any interest (legal, beneficial, or otherwise) in the Liquidating Trust Assets upon the assignment and transfer of such Assets to the Liquidating Trust. As set forth in the Liquidating Trust Agreement, Distributions from the Liquidating Trust on account of Liquidating Trust Interests shall be made from the Liquidating Trust Assets after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the Liquidating Trust, including but not limited to all costs, expenses,

25

and obligations incurred by the Liquidating Trustee (or Professionals who may be employed by the Liquidating Trustee in administering the Liquidating Trust) in carrying out their responsibilities under the Liquidating Trust Agreement, or in any manner connected, incidental or related thereto.

**Section 5.09    Implementation**. The Liquidating Trustee will implement the Liquidating Trust in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order. On and after the entry of the Confirmation Order,  except as otherwise provided in the Plan, the Liquidating Trustee or the Debtor, as applicable, may use, acquire, or dispose of Assets and compromise or settle any Claims, interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**Section 5.10    Funding for the Plan.** The Plan shall be funded from the proceeds generated from the pursuit and/or liquidation of the Liquidating Trust Assets, including recoveries from any retained Causes of Action, and any surplus funds from the sale of Equity Interest.

**Section 5.11    Cancellation of Liens.** Except as otherwise specifically provided herein, upon the payment of a Secured Claim in accordance with the Plan, any Lien securing such Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other Assets of the Debtor held by such holder and to take such actions as may be requested by the  Liquidating Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Liquidating Trustee. Additionally, any Lien held by any creditor deemed unsecured shall be canceled upon confirmation of the Plan.

**Section 5.12    General Settlement of Claims.** Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interest, and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of all compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings in the Confirmation Order shall constitute its determination that such compromises and settlements are fair and equitable.

**Section 5.13    Notice of Effective Date.** Not later than 10 Business Days following the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date of the Plan in accordance with the Bankruptcy Rules and orders of the Bankruptcy Court.

**Section 5.14    Confidentiality & Privilege.** On and after the Effective Date, any confidentiality obligations, attorney-client privilege, or other privilege or immunity attaching to any documents or communications shall vest in the Reorganized Debtor and its representatives, and the Reorganized Debtor and its representatives shall not otherwise waive such confidentiality, privilege, or immunity without prior notice and a hearing before the Bankruptcy Court. The Debtor is authorized to take all actions they deem necessary to effectuate the transfer of such privilege, and any documents or communications that would otherwise be protected from discovery by virtue of any applicable privilege or immunity shall remain so protected. The Confirmation Order shall

26

provide that the Liquidating Trustee's receipt of transferred privileges shall be without waiver in recognition of the joint and successorship interest in prosecuting claims on behalf of the Estate. If any privileged documents are inadvertently produced to third parties, such production shall not be deemed to destroy any privilege or be deemed a waiver of any confidentiality protections afforded to such privileged documents.

**Section 5.15    Liquidating Trust Accounts.** The Liquidating Trustee shall deposit and maintain any and all funds in the Disputed Claims Reserve Account in one or more segregated accounts for distribution solely in accordance with the Plan and Liquidating Trust Agreement.

**Section 5.16    Retention of Professionals.** The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that are necessary to assist the Liquidating Trustee in the performance of its duties as Liquidating Trustee or otherwise under this Plan. The reasonable fees and expenses of such professionals and the additional expenses of the Liquidating Trustee incurred in the performance of its duties under this Plan shall not be subject to the approval of the Bankruptcy Court. If there are insufficient funds available to pay all fees and expenses of such professionals and compensation in full, such professionals and the Liquidating Trustee shall share Pro Rata in the available funds until payment in full is made.

**Section 5.17    Distributions to Holders of Claims and Equity Interest.**

(a) **Estimation of Claims.** The Liquidating Trust may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

(b) **No Recourse.** Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Reorganized Debtor, the Estate, the Liquidating Trustee, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property.

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc Main Document    Page 27 of 62

Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

(c) **Automatic Disallowance and Expungement of Certain Claims.** On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed on or in advance of such Bar Date under its terms shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 5.18    Disputed Claims**.

(a) **Objections to Claims.** Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Liquidating Trustee shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the Liquidating Trustee shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) 120 days after the Effective Date; (ii) 30 days after a request for payment or proof of claim is timely filed and properly served upon the Liquidating Trustee; or (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Liquidating Trustee effects service in any of the following manners (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) by first-class mail, postage prepaid, on the signatory of the proof of claim or other representative identified in the proof of claim or any attachment thereto at the address of the creditor set forth therein, or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim or retained Cause of Action pursuant to the terms of the Plan without further order of the Bankruptcy Court.

(b) **Resolution of Disputed Claims.** No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(c) **Duties in Connection with Disputed Claims.** On and before the Effective Date, the Debtor, and after the Effective Date, the Liquidating Trustee shall (i) object to, settle, or otherwise resolve Disputed Claims, and (ii) make Distributions to holders of

28

Disputed Claims that subsequently become Allowed Claims in accordance with the Plan.

(d) **Distributions when Disputed Claim Is Resolved.** On the next Distribution Date following the date upon which a Disputed Claim is ultimately Allowed, the holder of such Claim shall receive any amounts attributable to such Claim, in accordance with the Plan. Any Cash Distributions held for the benefit of a holder of a Disputed Claim, which is subsequently disallowed, in whole or in part, shall be treated as Available Cash.

**Section 5.19    Miscellaneous Distribution Provisions**.

(a) **Method of Cash Distributions.** All Distributions shall be made by the Liquidating Trust or a duly-appointed disbursing agent to the holders of Allowed Claims. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire transfer from a domestic bank, at the option of the Liquidating Trustee; provided, however, that Cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Liquidating Trustee in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b) **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

(c) **Minimum Cash Distributions.** The Liquidating Trustee shall not be required to make any distribution of Cash less than $25.00 to any holder of an Allowed Claim.

**Section 5.20    Allocation of Payments.** Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to any interest that has accrued on such Claims, as allowed by this Plan, but remains unpaid.

**Section 5.21    Setoffs.** The Liquidating Trustee is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and against the Distributions to be made on account of such Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Debtor or the Liquidating Trustee, as applicable, may hold against the holder of such Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Liquidating Trustee of any such Claims, rights, and Causes of Action the Debtor or the Liquidating Trustee, as applicable, may have against such holder.

**Section 5.22    Exemption from Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security, under the Plan, including any deeds, bills of sale, or assignments executed in connection with the sale of Equity Interest or any other disposition of Assets contemplated by the

29

Plan or the Final Order approving the sale of the Equity Interest, shall not be subject to any stamp, real estate transfer, mortgage, recording, or other similar tax to the maximum extent covered by section 1146 of the Bankruptcy Code.

**Section 5.23    Disputed Payments.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidating Trustee may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute Assets of the Debtor or the Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

**Section 5.24    Withholding Taxes.** The Liquidating Trustee shall not be required to withhold taxes or comply with any applicable reporting requirements related to any Distribution. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Liquidating Trustee will issue an IRS Form 1099.

**Section 5.25    Request for Expedited Determination of Taxes**. The Debtor or the Liquidating Trustee, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending between the Petition Date and the Effective Date**.**

**Section 5.26    Resignation or Removal of Liquidating Trustee.** If the Liquidating Trustee resigns or is removed, dies, dissolves, or is incapacitated, the Bankruptcy Administrator, in conjunction with the Reorganized Debtor, shall designate another Person to become the Liquidating Trustee.  Thereupon the successor Liquidating Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, including the accrued but unpaid compensation of the predecessor Liquidating Trustee. No successor Liquidating Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

**Section 5.27    Liability; Indemnification; No Agency Relationship.** The Liquidating Trustee shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Liquidating Trustee and any professional person, representative, director, officer, employee, or agent of the Liquidating Trust (collectively, the **"Indemnified  Parties"**) shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind for acts or omissions related to the Plan and the Liquidating Trust unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty. The Indemnified Parties shall be indemnified and held harmless, including the cost of defending such Claims and attorney's fees in seeking indemnification, by the Liquidating Trust against any and all Claims arising out of his or her duties under the Plan and the Liquidating Trust, except to the extent his or her actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Indemnified Parties may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Indemnified   Parties may rely upon information

30

previously generated by the Debtor and such additional information provided to him or her by former employees of the Debtor. The Liquidating Trustee shall not be required to give any bond for the faithful performance of his or her duties but may do so, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

## ARTICLE VI
## EFFECT OF PLAN ON CLAIMS,
## INTERESTS, AND CAUSES OF ACTION

**Section 6.01    Binding Effect.** Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim or interest against the Debtor who held such Claim or interest at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim or interest of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**Section 6.02    Term of Injunctions or Stays.** Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

**Section 6.03    Retention of Rights and Causes of Action.** Except as provided in the Plan, all present or future rights, Claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor held on behalf of the Estate or of the Debtor in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law against any Person and have not been released or sold on or prior to the Effective Date are preserved for the Liquidating Trust. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trust shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, Claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any Person and with respect to any rights of the Debtor or the Estate that arose before or after the Petition Date. The Liquidating Trust retains, reserves, and shall be entitled to assert and pursue all such Claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtor and the Estate not expressly released under the Plan that may be asserted after the Effective Date. The Debtor or the Liquidating Trustee, as applicable, may abandon, settle, or release any or all such Claims, rights, or Causes of Action as it deems appropriate without further order of the Bankruptcy Court. In pursuing any Claim, right, or Cause of Action, the Liquidating Trustee shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. Notwithstanding the foregoing, the Debtor shall not retain any Claims or Causes of Action released pursuant to sections 6.04, 6.05, 6.06, or 6.07 of the Plan against the Released Parties. Notwithstanding the reservation of claims and defenses provided for in this paragraph, in the event any claim is made against the Reorganized Debtor, whether individually or jointly with the Debtor or Liquidating Trust, the Reorganized Debtor shall have the right to assert any setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtor and the Estate not expressly released under the Plan.

31

**Section 6.04    Releases by the Debtor and its Estate.** Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtor, Liquidating Trust, and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Equity Interest before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date; provided, however, that the foregoing release shall not prohibit the Debtor, the Liquidating Trust, or the Liquidating Trustee from asserting any and all defenses in respect of any Disputed Claim asserted by any Released Party.

**Section 6.05    Injunction.**

(a) **Satisfaction of Claims.** The treatment to be provided for all Claims including Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

(b) **Scope of Injunction.** Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Reorganized Debtor, the Estate the Liquidating Trust, the Liquidating Trustee, or any present and former directors, officers, trustees, agents, attorneys, advisors, members, or employees of the Reorganized Debtor, the Estate, the Liquidating Trust or the Liquidating Trustee, or any of their respective successors or assigns, or any of their respective Assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory of recovery which arises out of or relates to such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim; (iii) creating, perfecting, or enforcing any Lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim, the Assets, or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed from seeking discovery in actions against third parties other than those parties identified in this paragraph, or from pursuing third-party insurance that does not cover Claims against the Debtor or the Reorganized Debtor. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document      Page 32 of 62

(c) **Cause of Action Injunction.** Except as provided in Section 6.03, on and after the Effective Date, all Persons other than the Liquidating Trustee will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any Claim, debt, right, or Cause of Action that the Liquidating Trustee retains authority to pursue in accordance with the Plan.

(d) **Exculpation.** Except as otherwise set forth in the Plan, neither the Debtor, nor any Released Party, nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, attorneys, nor representatives of any Professional employed by any of them shall have or incur any liability to any Person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or Assets to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtor during the Chapter 11 Case, and the Liquidating Trustee shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estate, except for (i) intentional fraud, gross negligence, or willful misconduct, and (ii) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Disciplinary Rule 6-102 of the Code of Professional Conduct.

Section 6.06 **Compromise of Controversies.** Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of all compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings in the Confirmation Order shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

Section 6.07 **Solicitation of Plan.** As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtor and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan. Therefore, on account

of such offer, issuance, and solicitation, those parties will not be liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**Section 6.08    Post-Confirmation Activity.** As of the Effective Date, the Liquidating Trustee may conclude the implementation of the Plan and winding down this Chapter 11 Case. Without limiting the foregoing, the Liquidating Trustee may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

**Section 6.09    Avoidance Actions.** On the Effective Date, the Liquidating Trustee shall be deemed the successor to any and all Avoidance Actions that a trustee, debtor-in-possession, or other appropriate party in interest would be able to assert on behalf of the Debtor under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code sections 502, 506, 541 through 551, and 553.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.01    Executory Contract and Unexpired Leases.** To the extent not previously rejected or listed on the schedule of rejected executory contracts and unexpired leases filed with the Plan Supplement, on the Effective Date all of the Debtor's executory contracts and unexpired leases entered into prior to the Petition Date that have not previously been assumed or rejected, and have not been assumed and assigned during the Chapter 11 Case, except for the MASPO Contract, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code. For the avoidance of doubt, pursuant to the terms of this Plan and in accordance with Section 1123(b)(2) of the Bankruptcy Code, the MASPO Contract shall be assumed by the Debtor and shall not be rejected.

**Section 7.02    Rejection Damages Bar Date.** If rejection, pursuant to the Plan, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its Assets or the Liquidating Trustee unless a Claim is filed with the Bankruptcy Court and served upon the Liquidating Trustee not later than 30 days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court. Any such Claim, to the extent Allowed, shall be classified as a Class 4 General Unsecured Claim.

**Section 7.03    Effect of Post-Confirmation Rejection.** The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 34 of 62

## ARTICLE VIII
## CONDITIONS TO CONFIRMATION
## AND OCCURRENCE OF EFFECTIVE DATE

**Section 8.01    Conditions to Confirmation.** The Plan may not be confirmed unless the Confirmation Order is entered in a form reasonably acceptable to the Plan Proponent.

**Section 8.02    Conditions to Occurrence of Effective Date.** The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of the following conditions may be waived in whole or in part at any time by the Plan Proponent:

(a) The Bankruptcy Court shall have entered the Confirmation Order and it shall not have been stayed, modified, or vacated on appeal.

(b) Joe Bulgarella shall have been appointed as Liquidating Trustee and shall have accepted to act in such capacity in accordance with the terms and conditions of the Plan.

(c) All actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto.

(d) The Equity Interest of the Debtor are sold.

(e) All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

**Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date.** If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after 60 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor or of any other party in interest.

# ARTICLE IX
## CONFIRMABILITY AND
## SEVERABILITY OF THE PLAN

**Section 9.01**    The Plan Proponent reserves the right to alter, amend, modify, revoke, or withdraw the Plan. If the Plan Proponent revokes or withdraws from the Plan, then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Plan Proponent or any persons in any further proceedings involving the Plan Proponent. A determination by the Bankruptcy Court that the Plan, as it applies to the Debtor, is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Plan Proponent's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

**Section 9.02**    The Plan Proponent shall have the right to request the Bankruptcy Court to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code ("Cramdown").

# ARTICLE X
## ADMINISTRATIVE PROVISIONS

**Section 10.01  Retention of Jurisdiction.** Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, for the following purposes:

(a) to determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b) to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, estimation, or payment of Claims and cure disputes resulting therefrom;

(c) to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(d) to hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document      Page 36 of 62

(e) to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f) to enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g) to determine any matter in connection with the sale of Equity Interest including but not limited to the bid procedures;

(h) to issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other Order of the Bankruptcy Court;

(i) to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j) to hear and determine all Professional Fee Claims;

(k) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or any transactions or payments contemplated herein, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l) to take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or the Liquidating Trust Agreement, , including any release or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(m) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o) to enter a final decree closing the Chapter 11 Cases;

(p) to recover all Assets of the Debtor, the Liquidating Trust, and the Estate, wherever located;

(q) to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Reorganized Debtor, the Estate, or the Liquidating Trust pursuant to the Plan, Confirmation Order or Bankruptcy Code or pursuant to any statute or legal theory;

37

(r) to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior Orders; and

(s) to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**Section 10.02  Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising jurisdiction, declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**Section 10.03  Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of Alabama shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of the State of Alabama.

**Section 10.04  Continuing Effect of Sale Order.** Notwithstanding anything in the Plan to the contrary, the Final Order approving the sale of the Equity Interest and any and all related documents shall not be modified, limited, or amended by the Plan.

**Section 10.05  Effectuating Documents and Further Transactions.** The Reorganized Debtor or the Liquidating Trustee, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. THIS INCLUDES THE FILING OF ANY RELEASES, SATISFACTION OF JUDGMENTS; UCC-3 TERMINATIONS of Secured Creditors whose Claim paid, settled or provided for under the terms of the Plan.

**Section 10.06  Waiver of Bankruptcy Rule 7062.** The Plan Proponent may request that the Confirmation Order include (a) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order and the Plan be immediately binding and enforceable, and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

**Section 10.07  No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

**Section 10.08  Payment of Statutory Fees.** All Bankruptcy Administrator Fees, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date, or as soon as practicable thereafter by the Debtor. Any Bankruptcy Administrator Fees that may be owed by the Debtor after the Confirmation Date shall be paid by the Debtor or, if the Debtor has been dissolved, shall be deemed satisfied by the Debtor's payment of Bankruptcy Administrator fees on its disbursement of funds to the Liquidating Trust on the Effective Date.

**Section 10.09  Abandonment of Certain Assets.** The Plan shall constitute a motion for authorization to abandon, pursuant to section 554 of the Bankruptcy Code, all of the Debtor's rights, interest, and title to any and all real or personal property, if any, designated on a notice of

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 38 of 62

abandonment filed by the Debtor on or before the Confirmation Date. Such notice will specify the Debtor's Assets that the Debtor seeks to abandon with reasonable particularity and shall be served upon those parties entitled to notice under Bankruptcy Rule 2002. Any Assets owned by the Debtor and provided for under the Plan as designated on a notice of abandonment filed by the Debtor with the Bankruptcy Court on or before the Confirmation Date shall be deemed abandoned as of the Effective Date pursuant to Bankruptcy Code section 554 without further order of the Bankruptcy Court, unless a party files an objection to such notice no later than 10 days following the service of such notice.

**Section 10.10  Books and Records.** To the extent not already transferred on the Effective Date, the Debtor shall transfer dominion and control over all of its books and records to the Liquidating Trustee in whatever form, manner, or media those books and records existed immediately prior to the transfer thereof to the Reorganized Debtor.

**Section 10.11  Amendments**.

(a) **Pre-Confirmation Amendment.** The Plan Proponent may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

(b) **Post-Confirmation Amendment Not Requiring Resolicitation.** After the entry of the Confirmation Order, the Plan Proponent may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Plan Proponent obtains approval of the Bankruptcy Court for such modification after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment of any Class under the Plan.

(c) **Post-Confirmation Amendment Requiring Resolicitation.** After the Confirmation Date and before the Effective Date of the Plan, the Plan Proponent may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Plan Proponent obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Plan Proponent complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

**Section 10.12  Successors and Assigns.** The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**Section 10.13  Confirmation Order and Plan Control.** To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement, the Liquidating Trust Agreement,

Case 25-81168-CRJ11   Doc 155   Filed 02/27/26   Entered 02/27/26 14:07:04   Desc
Main Document    Page 39 of 62

or any other agreement entered into between the Debtor and any third party, the Plan shall control the Disclosure Statement and any previous agreements, and the Confirmation Order shall control the Plan.

**Section 10.14  Notices.** Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; or (c) overnight delivery service, postage prepaid, and addressed as follows:

For the Debtor:
Acquisition Integration, LLC
PO Box 147
Capshaw, AL 35742
Attn:   Maura Staten

with copies to:

Stuart M. Maples
THOMPSON BURTON PLLC
200 Clinton Avenue West, Suite 1000
Huntsville, AL 35801
Telephone: (256) 489-9752
Email: smaples@thompsonburton.com

*Counsel for Debtor in Possession*

For the Liquidating Trustee:

[COMPANY NAME]
[STREET ADDRESS]
[CITY, STATE ZIP CODE]
Attn:   [CONTACT NAME]

[LAW FIRM NAME]
Attorneys for the Liquidating Trustee
[STREET ADDRESS]
[CITY, STATE ZIP CODE]
Telephone: [(xxx) xxx-xxxx]
Facsimile: [(xxx) xxx-xxxx]
Attn:   [ATTORNEY NAME], Esq.

**Section 10.15  Post-Effective Date Notice.** Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the Bankruptcy Administrator's Office, counsel to the Liquidating Trustee, and any creditor that has a direct pecuniary interest in the relief sought by the pleading. With the exception of the Bankruptcy Administrator, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee.

Parties who do not file a request for continued service shall be removed from the Debtor's Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading. Notice of the requirement to file a request for continued service will be provided in the notice sent to all creditors regarding the confirmation of the Plan.

**Section 10.16  Substantial Consummation.** Subsequent to the Effective Date, when all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed, and Distributions under this Plan have commenced and Liquidating Trust Assets are held by the Liquidating Trust the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**Section 10.17  Post-Confirmation Fees and Reports.** Unless otherwise ordered by the Bankruptcy Court, the Debtor shall be responsible for the timely payment of all fees incurred pursuant to section 1930 of Title 28 of the United States Code. Unless ordered by the Bankruptcy Court, the Debtor or the Liquidating Trustee, as applicable, also shall file with the Bankruptcy Court, and serve on the Bankruptcy Administrator, a quarterly financial report for each quarter (or portion thereof) that this Chapter 11 Case remains open, in a format prescribed by the US Trustee.

**Section 10.18  Deemed Acts.** Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

*/s/ Stuart M. Maples*
STUART M. MAPLES
(ASB-1974-S69S)

THOMPSON BURTON PLLC
200 Clinton Ave. W, Suite 1000
Huntsville, Alabama 35801
(256) 489-9752 - Telephone
(256) 489-9720 – Facsimile
smaples@thompsonburton.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the same day as this filing, I have served a copy of the foregoing on those parties requesting notice by depositing the same in the United States Mail, postage prepaid and properly addressed, or if the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures.

*/s/ Stuart M. Maples*
STUART M. MAPLES

41

**EXHIBIT A**

**<u>Bidding Procedures</u>**

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | |
| | **)** | |
| ACQUISITION INTEGRATION, LLC, | **)** | CASE NO. 25-81168-CRJ11 |
| | **)** | CHAPTER 11 |
| | **)** | |
| Debtor. | **)** | |

## BIDDING PROCEDURES

By its Chapter 11 Plan of Reorganization[1] (the "Plan"), Acquisition Integration, LLC (the "Debtor"), which is a debtor and a debtor in possession in the Chapter 11 case pending in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division (the "Bankruptcy Court"), seeks approval of, among other things, the procedures through which it will determine the highest or otherwise best offer for the sale of the Equity Interest in the Debtor, including the MASPO Contract (the "Offered Assets").

## Offered Assets To Be Sold

Pursuant to the terms of its Plan, Debtor is selling the Equity Interest in the Debtor (the "Offered Assets"), which have been cancelled and terminated as provided for in the Plan and which includes all membership interests held by David P. Bristol and the right to operate the Debtor's business, including performance of the MASPO Contract (U.S. Army Contract No. W58RGZ21-D-0089). The Equity Interest shall be sold in conjunction with confirmation of the Plan pursuant to 11 U.S.C. § 1141(d)(1)(B) and shall be transferred to the Successful Bidder free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "Interests"), **except that the following Interests shall survive the sale and shall remain obligations of the Reorganized Debtor:** (i) the first-priority DIP lien of NOVO Tech, Inc. upon the MASPO Contract and all proceeds therefrom; (ii) the first-priority lien of ServisFirst Bank ("SFB") upon substantially all assets of the Debtor, including the MASPO Contract and proceeds therefrom (subordinate only to the DIP lien); and (iii) the junior lien of Flight Test Aerospace ("FTA") upon the MASPO Contract and proceeds therefrom (subordinate to both the DIP lien and SFB's lien). The Successful Bidder, as the new equity owner of the Reorganized Debtor, shall be bound by and assume all obligations of the Reorganized Debtor under the Plan, including without limitation the obligation to make semiannual Net Profits payments to SFB, FTA, and the Liquidating Trust as provided in the Plan. For the avoidance of doubt, all other Interests shall attach to the net proceeds of the sale with the same extent, validity, and priority as such Interests had against the Offered Assets.

1

**Bidding Process**

The Debtor shall (a) determine whether any person is a Qualified Bidder (as defined below), (b) coordinate the efforts of Preliminarily Interested Investors (as defined below) in conducting their due diligence investigations, (c) receive offers from Bidders (defined below), and (d) negotiate any offers made to purchase the Offered Assets.

**Marketing and Solicitation of Bids**

The Debtor shall conduct an active marketing and solicitation process for the Offered Assets consistent with the requirements of the Plan. The Debtor's marketing and solicitation efforts shall include:

(a) Contacting identified industry participants in the U.S. commercial and defense aerospace industry, including existing government contractors with knowledge of Foreign Military Sales (FMS) programs; and

(d) Running the Auction for a period of at least _____ days after Court approval of these Bidding Procedures to allow adequate time for potential bidders to conduct due diligence.

The Debtor expects that Flight Test Aerospace Inc. ("FTA") will participate in the Auction with a cash bid.

**Key Dates For Bidders.**

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in an auction to be conducted by the Debtor (the "Auction") and to submit bids for the Offered Assets. The Debtor shall assist Preliminarily Interested Investors in conducting their due diligence investigations and shall accept Bids (as defined below) until _____, 2026 at 4:00 p.m. (Central Standard Time) (the "Bid Deadline").

| | |
|---|---|
| _____, 2026, 4:00 p.m. (CST) | Bid Deadline – Due Date for Bids |
| _____, 2026, 10:00 a.m. (CST) | Auction (if necessary) |
| TBD | Closing |

All due diligence requests must be directed to Debtor's counsel, Thompson Burton, PLLC, 200 Clinton Avenue, Suite 1000, Huntsville, Alabama, 35801, Attn: Stuart M. Maples, smaples@thompsonburton.com. All requests for diligence must be made by _____, 2026 at 4:00 p.m. (Central Standard Time).

**Auction Qualification Process**

To be eligible to participate in the Auction, each offer (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be reasonably determined by the Debtor, with advice of the Liquidating Trustee, to satisfy each of the following conditions:

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document      Page 44 of 62

(a) <u>Minimum Bid and Minimum Cash Down Payment</u>: Each Bid must provide for a total purchase price no less than the minimum bid amount to be set by the Debtor in the sale motion (the "<u>Minimum Bid</u>"). Each Bid must also include, as a condition of closing, a cash payment at closing (the "<u>Minimum Cash Down Payment</u>") in an amount sufficient to pay in full, on or before the Effective Date of the Plan: (i) all Allowed Administrative Expense Claims, including without limitation the professional fees of Thompson Burton, PLLC (estimated at approximately $150,000.00); and (ii) all Allowed Priority Claims in Class 1 (estimated at approximately $99,612.01). Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim (estimated outstanding balance approximately $750,000). Any remaining balance of the total purchase price above the Minimum Cash Down Payment may be structured as payments over time as set forth in the Bid, subject to the requirements of the Plan. The Minimum Cash Down Payment amount shall be set forth in the Debtor's sale motion and will be disclosed to all Qualified Bidders.

(b) <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Transaction by the equity holder(s) of such Bidder.

(c) <u>Disclosure of Identity of Bidder</u>: Bid must fully disclose the identity and contact information of each entity that will be bidding for or purchasing the Offered Assets or otherwise participating in connection with such Bid.

(d) <u>Proof of Financial Ability to Perform</u>: The Debtor may require any Bidder to provide written evidence that the Debtor may reasonably conclude that the Bidder has the necessary financial ability to: (i) pay the Minimum Cash Down Payment in full at closing; (ii) satisfy any remaining structured payment obligations above the Minimum Cash Down Payment; and (iii) continue operating the Reorganized Debtor and performing the MASPO Contract post-closing, including meeting all obligations to ServisFirst Bank and FTA under the Plan.

(e) <u>Contingencies</u>: Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(f) <u>Cash Bids Required; No Credit Bidding</u>: All Bids for the Equity Interest must be cash bids. No Bidder may credit bid any prepetition or post-petition claim in connection with the sale of the Equity Interest of the Debtor.

3

(g) Acknowledgment of Surviving Obligations: Each Bid must include a written acknowledgment, in form and substance acceptable to the Debtor, that the Successful Bidder, as the new equity owner of the Reorganized Debtor, shall be bound by and expressly assumes all obligations of the Reorganized Debtor under the confirmed Plan, including without limitation:

(i) The obligation to make semiannual Net Profits payments to SFB, then to FTA (after SFB is paid in full), and thereafter to the Liquidating Trust, from the net proceeds of the MASPO Contract, no less than semiannually, with the first payment due six (6) months after the Effective Date, and an annual true-up within ninety (90) days after each calendar year end;

(ii) The DIP Lender (NOVO Tech, Inc.) retains a first-priority lien on the MASPO Contract and all proceeds; SFB retains its senior lien upon the MASPO Contract and proceeds (subordinate only to the DIP lien); and FTA retains a junior lien upon the MASPO Contract and proceeds (subordinate to the DIP lien and SFB's lien), each of which remains enforceable against the Reorganized Debtor until the respective claims are paid in full;

(iii) The obligation to prepare and deliver semiannual Periodic Accountings to SFB, FTA, and the Liquidating Trustee no later than forty-five (45) days after each semiannual payment period, and annual true-up accountings within ninety (90) days after each calendar year end, in the form required by the Plan; and

(iv) The obligation not to encumber, transfer, assign, or otherwise dispose of the Reorganized Debtor's interest in the MASPO Contract without the prior written consent of SFB (and FTA until FTA's claim is paid in full).

(h) Irrevocable: Each Bid must be irrevocable until the later of (i) closing of the Sale, and (ii) _____, 2026.

(i) Compliance with Information Requests: The Bidder submitting the Bid must have complied with reasonable request for additional information from the Debtor (as described above) to the reasonable satisfaction of the Debtor.

(j) Bid Deadline: The following parties must receive a Bid in writing, on or before _____, 2026 at 4:00 p.m. (Central Standard Time) (the "Bid Deadline"): (1) Debtor's counsel, Thompson Burton, PLLC, 200 Clinton Avenue West, Suite 1000, Huntsville, Alabama, 35801, Attn: Stuart M. Maples, smaples@thompsonburton.com.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid", and such Bidder shall constitute a "Qualified Bidder", provided that if the Debtor receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Debtor may provide the Bidder with the opportunity to remedy any deficiencies prior to the Auction; provided, further, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtor to the satisfaction of

4

the Debtor, the Debtor may disqualify any Qualified Bidder and Qualified Bid, in the Debtor's discretion, and such Bidder shall not be entitled to attend or participate in the Auction unless such Bidder is also a creditor of the Debtor.

The Debtor shall inform each Bidder whether the Debtor will consider such Bidder's Bid to be a Qualified Bid no later than two (2) business days (to the extent practicable) before the Auction. The Debtor shall further provide at that time a copy of all Qualified Bids (if any) to all Qualified Bidders (if any).

## Application of Sale Proceeds

The sale proceeds generated from the sale of the Equity Interest, following the payment of all costs associated with the sale, shall be applied in the following order of priority:

First: The Minimum Cash Down Payment shall be used to pay in full all outstanding Allowed Administrative Expense Claims and all Allowed Priority Claims in Class 1 on or before the Effective Date.

Second: Any excess of the Minimum Cash Down Payment remaining after payment of all Allowed Administrative Expense Claims and Allowed Priority Claims shall be paid to NOVO Tech, Inc. and applied toward reduction of its post-petition super-priority administrative expense claim.

Third: The remaining sale proceeds above the Minimum Cash Down Payment shall be distributed to holders of Allowed Claims according to the priorities set forth in the Plan, with ServisFirst Bank's Allowed Secured Claim ($1,297,252.83) paid in priority to the Allowed Secured Claim of FTA ($254,373.01).

Fourth: If proceeds remain following full payment of Class 2 and Class 3 claimants, any remaining funds will become assets of the Liquidating Trust for distribution to Class 4 General Unsecured Creditors. Additionally, the Plan provides for a minimum contribution of $50,000 to the Liquidating Trust, carved out from any Allowed Secured Claims, from the proceeds of the sale of the Equity Interest.

## Structured Payment Bids

Bids may include structured payment offers for any amounts above the Minimum Cash Down Payment, subject to the following requirements:

(a) Any structured payment component must be supported by adequate assurance of the Successful Bidder's financial ability to meet all payment obligations;

(b) Structured payments must not impair the Reorganized Debtor's ability to make semiannual Net Profits payments to SFB, FTA, and the Liquidating Trust as required by the Plan; and

(c) The terms of any structured payment arrangement are subject to approval by the Bankruptcy Court at the Sale Hearing.

**Auction**

If more than one Qualified Bid is received by the Bid Deadline, the Debtor will conduct an auction (the "Auction") to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including the amount of the Minimum Cash Down Payment offered, the terms of any structured payment arrangement, and the financial ability of the Bidder to perform all Plan obligations.

If only one Qualified Bid is received by the Bid Deadline, the Debtor shall not conduct the Auction and shall accept the Qualified Bid received by the Bid Deadline, in which case such Qualified Bid shall be the Successful Bid and the applicable Qualified Bidder shall be the Successful Bidder.

**Time and Place for Auction.**

The Auction shall take place on _____, 2026, commencing at 10:00 a.m. (Central Standard Time) at the office of counsel for the Debtor, Thompson Burton, PLLC, 200 Clinton Avenue West, Suite 1000, Huntsville, Alabama, 35801, or virtually at such time and place as the Debtor shall notify all Qualified Bidders and their counsel. The Auction shall be conducted according to the following procedures:

**Participation in Auction.**

Only the Debtor and any Qualified Bidder, in each case, along with their representatives and counsel, or such other parties as the Debtor shall determine, shall participate at the Auction and only such Qualified Bidders will be entitled to make any Bids at the Auction. Subject to the foregoing participation limitations, the Auction will be conducted openly and all creditors of the Debtor will be permitted to attend.

**The Debtor Shall Conduct the Auction.**

The Debtor and its professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Debtor may conduct the Auction in the manner it reasonably determines will result in the highest or otherwise best offer for any of the Debtor's assets. The Debtor shall use its best efforts to provide each Qualified Bidder participating in the Auction with the highest or otherwise best Qualified Bid received before the Bid Deadline (such highest or otherwise best Qualified Bid the "Auction Baseline Bid"). In addition, at the start of the Auction, the Debtor shall describe the terms of the Auction Baseline Bid. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures and (c) has consented to the core jurisdiction of the Bankruptcy Court.

6

**Terms of Overbids.**

An "<u>Overbid</u>" is any bid made at the Auction subsequent to the Debtor's announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a) <u>Minimum Overbid Increments</u>: Any Overbid shall be made in increments of Ten Thousand and No/100 Dollars ($10,000.00) at the Auction (the "<u>Minimum Overbid</u>"). The Debtor reserves the right to announce reductions in the Minimum Overbids at any time during the Auction.

(b) <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions and requirements (including the time that such Bid must be irrevocable) for a Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline and any additional deposit shall not apply. Any Overbid must include a Minimum Cash Down Payment at least equal to the Minimum Cash Down Payment required for Qualified Bids.

At the Debtor's discretion, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) reasonably demonstrating such Bidder's ability to close the Transaction proposed by such Overbid.

**Announcement and Consideration of Overbids.**

(a) <u>Announcement of Overbids</u>: The Debtor shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, the Minimum Cash Down Payment component, and any structured payment terms, and such other terms as the Debtor reasonably determines will facilitate the Auction.

(b) <u>Consideration of Overbids</u>: Subject to the deadlines set forth herein, the Debtor reserves the right, in its reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussion between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount.

(c) <u>Closing the Auction</u>: The Auction shall continue until there is one Qualified Bid for the Offered Assets that the Debtor determines in its reasonable business judgment is the highest or best Qualified Bid at the Auction. Thereafter, the Debtor shall select such Qualified Bid which produces the highest or best recovery to the estate, as the overall highest or best Qualified Bid (such Bid, the "<u>Successful Bid</u>", and the Bidder submitting such Successful Bid, the "<u>Successful Bidder</u>"). In making this decision, the Debtor shall consider the total net recovery to the estate, the Minimum Cash Down Payment, the ability of the Bidder to perform all Plan obligations (including semiannual Net Profits payments to SFB, FTA, and the Liquidating Trust), and all other relevant criteria and information.

7

(d) The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.

(e) Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder. The Successful Bidder shall have the Bid Price (including the full Minimum Cash Down Payment) delivered to the Debtor's Counsel by wire on or before _____, 2026, at 3:00 p.m. (Central Standard Time).

**Backup Bidder.**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid at the Auction, as determined by the Debtor, in the exercise of its business judgment, will be designated as the backup bidder (the "Backup Bidder").

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, the Backup Bidder will be deemed to have the new prevailing bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Bidder, and the Backup Bidder shall consummate the transaction described in the Plan. The Backup Bidder shall have the Bid Price (including the full Minimum Cash Down Payment) delivered to the Debtor's Counsel by wire on or before the next Business Day after notice by the Debtor, by 3:00 p.m. (Central Standard Time).

The Debtor, on its behalf and on behalf of its estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

**Additional Procedures.**

The Debtor may announce at the Auction procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures.

**Consent to Jurisdiction and Authority as Condition to Bidding.**

Each Qualified Bidder shall be deemed to have (a) consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the Bidding Procedures, its Asset Purchase Agreement, the Auction or the construction and enforcement of documents relating to any Transaction, (b) waived any right to a jury trial in connection with any disputes relating to the Debtor, the Bidding Procedures, its Asset Purchase Agreement, the Auction or the construction and enforcement of documents relating to any Transaction and (c) consented to the entry of a final order or judgment in any way related to the Debtor, the Bidding Procedures, its Asset Purchase Agreement, the Auction or the construction and enforcement of documents relating to any Transaction if it is determined that the Bankruptcy

8

Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

**Reservation of Rights of the Debtor**

Except as otherwise provided in the Bidding Procedures or the Plan and Disclosure Statement, the Debtor further reserves the right to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, (3) does not include the required Minimum Cash Down Payment, (4) attempts to credit bid any claim against the Equity Interest, or (5) contrary to the best interest of the Debtor and its estate; (e) waive terms and conditions set forth herein with respect to any or all Bidders; (f) impose additional terms and conditions with respect to any or all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (i) modify the Bidding Procedures and implement additional procedural rules that the Debtor determines, in its reasonable business judgment, will better promote the goals of the bidding process and discharge the Debtor's fiduciary duties and are not inconsistent with any Bankruptcy Court order.

*/s/ Stuart M. Maples*
STUART M. MAPLES
(ASB-1974-S69S)

THOMPSON BURTON PLLC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
smaples@thompsonburton.com
Tel: (256) 489-9779
Fax: (256) 489-9720

[1] All capitalized terms not specifically defined herein shall have the defined meaning outlined in the Debtor's Plan.

9

**EXHIBIT B**

**<u>Liquidating Trust Agreement</u>**

43

**ACQUISITION INTEGRATION, LLC**

**LIQUIDATING TRUST AGREEMENT**

This Liquidating Trust Agreement (the "Trust Agreement"), dated as of _____-, 2026] (the "Effective Date"), by and among Acquisition Integration, LLC (the "Debtor") and [*Name of Liquidating Trustee*], as Liquidating Trustee, provides for the establishment of a liquidating trust evidenced hereby (the "Liquidating Trust") to resolve, liquidate and realize upon the Trust Assets as successor to and representative of the Estate of the Debtor pursuant to the Debtor's Plan of Liquidation under Chapter 11 of the Bankruptcy Code dated and filed in the United States Bankruptcy Court for the Northern of Alabama (the "Bankruptcy Court") on _____, 2026, as the same may be further amended (the "Plan).

A. The Liquidating Trust is created pursuant to, and to effectuate, the Plan, which was confirmed by order of the Bankruptcy Court on _____, 2026.

B. Except with respect to the terms defined in this Trust Agreement, all capitalized terms contained herein shall have the meanings ascribed to them in the Plan.

C. The Liquidating Trust is created on behalf of, and for the benefit of, the Holders of Allowed Secured Claims, Allowed Priority Unsecured Claims, and Allowed Unsecured Claims (the "Beneficiaries" also referred to herein as "Holders of Liquidating Trust Interests") (whether or not such Claims are Allowed as of the Effective Date).

D. The Liquidating Trust is established for the sole purpose of liquidating the Trust Assets, resolving Disputed Claims and making distributions to the Beneficiaries in accordance with the Plan, this Trust Agreement and Section 301.7701-4(d) of the Treasury Regulations, and with no objective to continue or engage in the conduct of a trade or business.

E. The Liquidating Trust is intended to qualify as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations.
NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the above-noted parties agree as follows:

**ARTICLE I**

**ESTABLISHMENT OF THE LIQUIDATING TRUST**

1.1 Transfer of Property to Liquidating Trust; Assignment and Assumption of Claims.

Pursuant to the terms of Plan, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Liquidating Trust free and clear of all liens, Claims and Interests, except as specified in the Trust Agreement or the Plan. The Liquidating Trustee hereby agrees to accept and hold the Trust Assets in trust for the Beneficiaries, subject to the terms of this Trust Agreement and the Plan. Upon the transfer of the Trust Assets, the Liquidating Trustee shall succeed to all of the Debtor's right, title and interest in the Trust Assets and the Debtor will have no further interest in or with respect to the Trust Assets or this Liquidating Trust.

1.2 Treatment of Transfer of Liquidating Trust Assets.

For federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Beneficiaries) shall treat the transfer of the Trust Assets to the Liquidating Trust as: (i) a transfer of the Trust Assets directly to the Beneficiaries immediately followed by (ii) the transfer of the Trust Assets to the Liquidating Trust by the Beneficiaries. Accordingly, the Beneficiaries shall be treated as the grantors and owners of their allocable portion of the Liquidating Trust for federal income tax purposes.

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 53 of 62

1.3 <u>Valuation of Liquidating Trust Assets.</u>

As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith determination of the fair market value of the Trust Assets as of the Effective Date.

1.4 <u>Appointment of the Liquidating Trustee.</u>

The Liquidating Trustee shall be [**_Name of Liquidating Trustee_**].

## ARTICLE II

## <u>LIQUIDATING TRUST INTERESTS</u>

2.1 <u>Identification of Beneficiaries.</u>

The Beneficiaries shall be identified and set forth in a register maintained by the Liquidating Trustee expressly for such purpose. All references in this Trust Agreement to the Beneficiaries shall be read to mean Holders of Allowed Secured Claims, Allowed Unsecured Priority Claims, and Allowed Unsecured Claims of record as set forth in the official register maintained by the Liquidating Trustee and shall not mean any beneficial owner not recorded on such official registry.

2.2 <u>Transferability of Liquidating Trust Interests.</u>

The Liquidating Trust Interests of the Beneficiaries shall not be transferable; <u>provided</u>, <u>however</u>, that Liquidating Trust Interests shall be assignable or transferable by will, intestate succession, operation of law, or as otherwise set forth in this Trust Agreement.

2.3 <u>Holders of Liquidating Trust Interests Have Limited Rights in Connection with Administration of the Liquidating Trust.</u>

This Trust Agreement grants exclusive authority over administration of the Liquidating Trust to the Liquidating Trustee, except as otherwise expressly provided in this Trust Agreement or the Plan.

## ARTICLE III

## <u>THE LIQUIDATING TRUSTEE</u>

3.1 <u>Generally.</u>

The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Liquidating Trust and not otherwise.

3.2 <u>Authority and Responsibilities of Liquidating Trustee.</u>

(a) In connection with the administration of the Liquidating Trust, except as set forth in this Trust Agreement, the Liquidating Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Liquidating Trust as set forth herein and in the Plan.

(b) The Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Trust Assets, resolve Disputed Claims, make timely distributions to Beneficiaries, and not unduly prolong the duration of the Liquidating Trust. In so doing, the Liquidating Trustee will exercise reasonable business judgment in liquidating the Trust Assets.

(c) The Liquidating Trustee is authorized to perform necessary and appropriate acts to effectuate the terms and purposes of the Trust Agreement, including but not limited to: (1) Liquidate Trusts Assets, (2) establish reserves for Disputed Claims, (3) establish a reserve for the administrative expenses of the Liquidating Trust pursuant to a budget approved by the Plan Advisory Committee, (4) at such times as the Liquidating Trustee and the Plan Advisory Committee determines, make interim distributions to Beneficiaries, (5) retain professionals as necessary to assist in the liquidation of Trust Assets and administration of the Liquidating Trust, (6) file appropriate tax returns,

(7) file periodic reports with the Bankruptcy Court.

3.3 Limitation of Liquidating Trustee's Authority.

(a) Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be authorized to and shall not engage in any trade or business. Except as otherwise allowed by this Trust Agreement, the Liquidating Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations or inconsistent with Section 345 of the Bankruptcy Code.

(b) The Liquidating Trustee shall not commingle any of the Liquidating Trust Assets with his or her own property or the property of any other person.

3.4 Books and Records.

The Liquidating Trustee shall maintain books and records relating to the Trust Assets and income of the Liquidating Trust and the payment of expenses of, and liabilities or claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. A Beneficiary may request information relating to the management of the Trust Assets as long as access is reasonably exercised during normal business hours and is not detrimental to the Liquidating Trust. Nothing in this Trust Agreement provides any Beneficiary with a right to review, inspect, seek discovery of or otherwise obtain any information that is privileged or subject to a third party's rights of privacy or confidentiality.

3.5 Distributions; Withholding.

The Liquidating Trustee shall make distributions pursuant to the Plan, in accordance with Beneficiaries' relative beneficial interests in the Liquidating Trust, of all net proceeds from the liquidation of Liquidating Trust Assets; provided, however, that any such distribution shall only be made if: (i) the Claims Reserve Account is fully funded, and (ii) the Liquidating Trustee retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Liquidating Trust in accordance with the Plan or this Trust Agreement.

3.6 Compliance with Laws.

Any and all distributions of Trust Assets shall be in compliance with applicable laws.

3.7 Reliance by Liquidating Trustee.

Except as otherwise provided in this Trust Agreement, the Liquidating Trustee may rely, and shall be fully protected in acting, or refraining from acting, on any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document ("Document") that the Liquidating Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles or emails, to have been sent by the proper party or parties, and the Liquidating Trustee may rely as to the truth of the statements and correctness of the opinions expressed in any Document. The Liquidating Trustee may consult with counsel and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken by the Liquidating Trustee in accordance therewith.

3.8 Investment and Safekeeping of Trust Assets.

The right and power of the Liquidating Trustee to invest Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust, within the meaning of Section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations and to the investment guidelines of Bankruptcy Code Section 345.

3.9 Expense Reimbursement and Compensation.

(a)  The Trust Assets shall be subject to the claims of the Liquidating Trustee and Trust Expenses, and the Liquidating Trustee shall be entitled to reimburse itself out of any available cash in the Liquidating Trust, for its actual out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Liquidating Trustee may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Liquidating Trustee under this Trust Agreement.  As compensation for the performance of its duties, the Liquidating Trustee shall be compensated at the rate of $[*insert amount*] per annum. Notwithstanding the foregoing, the Plan Advisory Committee shall have authority in the exercise of its sole and reasonable discretion to enter into such modifications of the Liquidating Trustee's compensation terms as it deems desirable and necessary to further the intent and purpose of this Trust Agreement and the Plan.

(b) If the cash in the Liquidating Trust shall be insufficient to compensate and reimburse the Liquidating Trustee, including reasonable fees and expenses of any professionals and third parties retained by the Liquidating Trustee and including reimbursement for any amounts to which they are entitled hereunder, then the Liquidating Trustee may reduce to cash that portion of the Trust Assets necessary so as to effect such compensation and reimbursement.

3.10 Insurance; Bond.

The Liquidating Trustee shall obtain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee and the Plan Advisory Committee under this Trust Agreement (in the form of an errors and omissions policy or otherwise). Unless otherwise agreed to by the Plan Advisory Committee, the Liquidating  Trustee shall serve with a bond, the cost and expense of which shall be paid by the Liquidating Trust.

3.11 Confidentiality.

The Liquidating Trustee shall, during the period that it serves as Liquidating Trustee under this Trust Agreement  and for a period of twelve (12) months following the earlier of the termination of this Trust Agreement or removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Assets relates or of which it has become aware in its capacity as Liquidating Trustee.

**ARTICLE IV**

**THE PLAN ADVISORY COMMITTEE**

4.1 Formation.

The Plan Advisory Committee is established pursuant to the terms of the Plan and shall function consistent with the Plan. The Plan Advisory Committee's role shall be to advise and approve the actions of the Liquidating Trustee. As of the Effective Date, the initial members of the Plan Advisory Committee shall be:

(**Name 1**)

(**Name 2**)

4.2 Duties and Powers.

The Plan Advisory Committee shall represent the interests of the Beneficiaries during the existence of the Liquidating Trust, and shall have the obligation to undertake in good faith each of the acts and responsibilities set forth for the Plan Advisory Committee in this Trust Agreement and in the Plan, for the benefit of the Beneficiaries. The Plan Advisory Committee shall have such powers, rights and duties, as set forth in this Trust Agreement and in the Plan, including but not limited to the following:

(a) to terminate by supermajority vote the Liquidating Trustee with or without cause and upon such termination or upon the resignation, death, incapacity or removal of the Liquidating Trustee, to appoint a successor Liquidating Trustee;

(b) to approve any release or indemnity in favor of any third party granted or agreed to by the Liquidating Trustee

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 56 of 62

other than as set forth in the Plan;

(c) to authorize the Liquidating Trustee to commence or continue to prosecute any Litigation;

(d) to approve the settlement or other disposition of any Litigation if the amount sought to be recovered by the Liquidating Trustee in the complaint or other document initiating or evidencing such Litigation exceeds [*$_____* ];

(e) to approve the allowance of any Disputed Unsecured Claim if the final Allowed amount of such Claim exceeds [*$_____*]

(f) to approve the sale or other disposition of any Assets by the Liquidating Trustee;

(g) to approve any budget for the Liquidating Trust prepared by the Liquidating Trustee in respect of the Trust Expenses and in connection with the Litigation and to approve any additional funding of the Claims Reserve Account;

(h) to review and object to fees and expenses of professionals retained by the Liquidating Trust;

(i) to approve of any investment of Cash or other Trust Assets pending distributions to holders of the Liquidating Trust Interests; and

(j) except to the extent otherwise set forth in this Article, to approve any and all other actions that the Liquidating Trustee reasonably anticipates to: (i) have a material effect on the Liquidating Trust or (ii) reduce in any material respect the distributions to the Beneficiaries.

4.3 <u>Vacancies.</u>

Vacancies on the Plan Advisory Committee shall be filled by a Person designated by the remaining members of the Plan Advisory Committee from among the Holders of Unsecured Claims. The Plan Advisory Committee shall use reasonable efforts to maintain such composition of the members of the Plan Advisory Committee as existed prior to the resignation of such member. Upon appointment of a successor member of the Plan Advisory Committee, notice of such appointment will be filed with the Bankruptcy Court. Unless and until such vacancy is filled, the Plan Advisory Committee shall function with such reduced membership.

4.4 <u>Voting.</u>

The Plan Advisory Committee shall create such by-laws (if any) as it deems necessary or convenient. The passage of such by-laws, and all other decisions and actions of the Plan Advisory Committee, except as otherwise set forth in this Trust Agreement, shall be by majority vote of the Plan Advisory Committee. The Plan Advisory Committee may meet and vote in person or telephonically and each member shall be entitled to receive reasonable notice of any such meeting. A majority of the members of the Plan Advisory Committee shall constitute a quorum for all purposes.

4.5 <u>Objections to Trust Asset Dispositions, Claim Allowance and Litigation Dispositions.</u>

If the Plan Advisory Committee, acting in quorum or by its Chair, notifies the Liquidating Trustee of any objection it has regarding disposition of a Trust Asset or Litigation disposition or Claim or expense allowance that is subject to notice requirements, the Liquidating Trustee must obtain Bankruptcy Court approval of such disposition/allowance if the Trustee concludes the action is in the best interests of the Trust notwithstanding the opposition of the Plan Advisory Committee.

4.6 <u>Compensation.</u>

Each member of the Plan Advisory Committee shall be entitled to receive from the Liquidating Trust reimbursement for its necessary out-of-pocket expenses reasonably incurred in connection with the performance of his, her or its duties with respect to the Liquidating Trust or the Trust Assets.

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 57 of 62

## ARTICLE V

## SUCCESSOR LIQUIDATING TRUSTEE

5.1 Removal.

The Liquidating Trustee may be removed with or without cause, at any time by supermajority vote of the Plan Advisory Committee. Supermajority shall mean one less than the then existing number of Plan Advisory Committee members.

5.2 Resignation.

The Liquidating Trustee may resign by giving not less than forty-five (45) days prior written notice thereof to the Plan Advisory Committee.

5.3 Appointment of Successor.

In the event of the Liquidating Trustee's removal, resignation, death or in the event the Liquidating Trustee otherwise becomes incapable of serving as Liquidating Trustee (including incompetency in the case of a Liquidating Trustee that is a natural person, dissolution, in the case of a Liquidating Trustee that is a corporation or other entity, or bankruptcy or insolvency), the Plan Advisory Committee may appoint a successor Liquidating Trustee by majority vote. Upon appointment of a successor Liquidating Trustee, notice of such appointment shall be filed with the Bankruptcy Court. If a successor Liquidating Trustee is not appointed or does not accept its appointment within thirty (30) days after the Liquidating Trustee no longer serves in such capacity, any Beneficiary may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

Acceptance of Appointment by Successor Liquidating Trustee.

Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and shall file such acceptance with the Bankruptcy Court. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all the properties, rights, powers, trusts and duties of its predecessor in the Liquidating Trust with like effect as if originally named herein.

5.4 Continuance of the Liquidating Trust.

The death, incapacity, resignation, or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust created by this Trust Agreement or revoke any existing agency (other than the agency of the former Liquidating Trustee as Liquidating Trustee) created pursuant to the terms of this Trust Agreement or invalidate any action taken by the Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trustee shall promptly (i) execute and deliver by the effective date of resignation or removal such documents, instruments, and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the resigning or removed Liquidating Trustee's capacity under this Trust Agreement; (ii) deliver to the successor Liquidating Trustee all documents, instruments, records, and other writings relating to the Liquidating Trust as may be in the possession or under the control of the resigning or removed Liquidating Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of the resigning or removed Liquidating Trustee's obligations and functions by the successor Liquidating Trustee. The resigning or removed Liquidating Trustee hereby irrevocably appoints the successor Liquidating Trustee as his or her attorney-in-fact and agent with full power of substitution for and in his or her name, place and stead to do any and all such acts that such resigning or removed Liquidating Trustee is obligated to perform. Such appointment shall not be affected by the subsequent disability or incompetence of the Liquidating Trustee making such appointment.

## ARTICLE VI

## REPORTS TO HOLDERS OF LIQUIDATING TRUST INTERESTS

6.1 Reports to Holders of Liquidating Trust Interests.

(a) Quarterly Reports. Beginning with the first full month following the Effective Date, and as soon as practicable upon commencement of the Liquidating Trust, the Liquidating Trustee shall prepare and file with the Bankruptcy Court on a timely basis, and shall serve on the Plan Advisory Committee and the Bankruptcy Administrator the quarterly post-

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 58 of 62

confirmation reports required by Bankruptcy Code Section 1106(a)(7) and Bankruptcy Administrator Guidelines. Such quarterly reports shall be served and filed until such time as the Liquidating Trust has been terminated or in accordance with an order of the Bankruptcy Court.

(b) <u>Federal Income Tax.</u> Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

(c) <u>Other Reporting.</u> The Liquidating Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental authority.

(d) <u>Tax Reporting.</u> Promptly following the end of each calendar year, the Liquidating Trustee shall submit to the Beneficiaries a separate statement setting forth such Beneficiary's share of items of income, gain, loss, deduction or credit in accordance with applicable tax rules and regulations.

(e) <u>Detailed Reports.</u> The Liquidating Trustee shall prepare, file and/or distribute any additional reports as directed by the Plan Advisory Committee or otherwise required under this Trust Agreement or the Plan.

## ARTICLE VII

## <u>TERMINATION OF LIQUIDATING TRUST</u>

7.1 <u>Termination of Liquidating Trust.</u>

The Liquidating Trust will terminate on the earlier of: (a) the liquidation, administration and distribution of the Trust Assets in accordance with the terms of this Trust Agreement and the Plan, and the Liquidating Trustee's full performance of all other duties and functions set forth herein or in the Plan; and (b) the fifth (5th) anniversary of the Effective Date, unless such term is extended pursuant to section 7.2 of this Trust Agreement.

7.2 <u>Extension of Term of Liquidating Trust.</u>

Any extension of the term of the Liquidating Trust set forth in section 7.1 hereof must be (i) for a finite period of time, (ii) preceded by the Liquidating Trustee's receipt of a favorable ruling from the IRS that the Liquidating Trust's continued existence beyond such period would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations for U.S. federal income tax purposes, and (iii) approved by the Bankruptcy Court prior to the beginning of the extended term.

## ARTICLE VIII

## <u>AMENDMENT AND WAIVER</u>

8.1 <u>Amendment and Waiver.</u>

Any substantive provision of this Trust Agreement may be amended or waived by the Liquidating Trustee in writing, with the prior approval of the Plan Advisory Committee provided such amendment or waiver does not substantially impair the rights or interests of the Beneficiaries. Upon approval by the Plan Advisory Committee, technical amendments to this Trust Agreement may be made by the Liquidating Trustee, as necessary, to clarify this Trust Agreement or enable the Liquidating Trustee to effectuate the terms of this Trust Agreement. Any amendments to this Trust Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust.

Case 25-81168-CRJ11   Doc 155   Filed 02/27/26   Entered 02/27/26 14:07:04   Desc
Main Document      Page 59 of 62

**ARTICLE IX**

**MISCELLANEOUS PROVISIONS**

9.1 Preservation of Privilege and Defenses.

In connection with the rights, claims, and Litigation that constitute the Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trustee and its representatives, and the Debtor and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

9.2 Liability of Liquidating Trustee and Plan Advisory Committee; Indemnification.

Neither the Liquidating Trustee, the Plan Advisory Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Liquidating Trustee or the Plan Advisory Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Liquidating Trustee or Plan Advisory Committee, nor shall such Liquidating Trustee, or any member of the Plan Advisory Committee, be liable for any act or omission taken or omitted to be taken in its capacity as Liquidating Trustee, or as a member of the Plan Advisory Committee, respectively, other than for specific acts or omissions resulting from such Liquidating Trustee's or such member's willful misconduct, gross negligence or fraud. The Liquidating Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee and the Plan Advisory Committee shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors. The Liquidating Trustee, or the Plan Advisory Committee, may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidating Trustee nor the Plan Advisory Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or Plan Advisory Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud.

The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee, the Plan Advisory Committee and their members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud. Persons dealing with the Liquidating Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Liquidating Trustee or the Plan Advisory Committee to such person in carrying out the terms of this Trust Agreement, and neither the Liquidating Trustee nor the Plan Advisory Committee shall have any personal obligation to satisfy any such liability.

9.3 Cooperation and Further Assurances of the Debtor.

The Debtor shall, upon reasonable request of the Liquidating Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Liquidating Trustee any portion of the Trust Assets intended to be conveyed in the form and manner provided for in the Plan and to vest in the Liquidating Trustee the powers, instructions, or funds in trust hereunder. To the extent that it has remaining personnel available, the Debtor shall also, upon reasonable request of the Liquidating Trustee, provide additional documentation or information necessary to resolve Claims and resolve and prosecute all Litigation. The Debtor, for itself and any predecessor or successor entity, hereby disclaims and waives any and all rights to any reversionary interests in any of the Trust Assets. The Debtor shall provide the Liquidating Trustee with copies of such of its  books and records as the Liquidating Trustee shall reasonably require for the purpose of performing its duties and exercising its powers hereunder and as set forth in the Plan.

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 60 of 62

9.4 <u>Laws as to Construction.</u>

This Trust Agreement shall be governed and construed in accordance with the laws of the State of Alabama, without giving effect to rules governing the conflict of law.

9.5 <u>Severability.</u>

If any provision of this Trust Agreement or the application thereof to any person or circumstance shall be  determined finally by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

9.6 <u>Notices.</u>

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended:

**[*Enter Notice Parties' Contact Information*]**

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document      Page 61 of 62

9.7 Headings.

The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

9.8 Relationship to the Plan.

The principal purpose of this Trust Agreement is to aid in the implementation of the Plan. This Trust Agreement, together with the Plan and related instruments expressly referred to herein, shall be construed as integrated and complimentary of each other and intended to carry out the terms of the Plan. To that end, the Liquidating Trustee shall have full power and authority, except as otherwise set forth in this Trust Agreement, to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Trust Agreement. If any provisions of this Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of this Trust Agreement and the Confirmation Order shall control.

9.9 Exclusive Jurisdiction and Standing.

As provided in Article X of the Plan, the Bankruptcy Court has exclusive jurisdiction over all controversies, suits and disputes that may arise under this Trust Agreement. The Liquidating Trustee shall have standing in any such proceeding to enforce the rights of the Liquidating Trust or of the Beneficiaries arising under this Trust Agreement or the Plan, and the Plan Advisory Committee shall have standing in any such proceeding to enforce the rights of the Beneficiaries arising under this Trust Agreement or the Plan. Any and all claims and disputes, if any, asserted against the Liquidating Trustee or the Plan Advisory Committee are subject to the exclusive jurisdiction of the Bankruptcy Court.

IN WITNESS WHEREOF, the Debtor and the Liquidating Trustee have either executed or acknowledged this Trust Agreement, or caused it to be executed or acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Debtor and Debtor in Possession

By: _____

Name: _____

Title: _____

The Liquidating Trustee hereby accepts the Liquidating Trust imposed by this Trust Agreement upon the terms and conditions set forth herein.

_____

[*Name of Liquidating Trustee*],
as Liquidating Trustee

Case 25-81168-CRJ11    Doc 155    Filed 02/27/26    Entered 02/27/26 14:07:04    Desc
Main Document    Page 62 of 62